2014-5032, -5033

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SUFI NETWORK SERVICES, INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

---

Appeals from the United States Court of Federal Claims
in Case No. 11-CV-0453, Judge Thomas C. Wheeler

---

# SUFI'S BRIEF IN OPPOSITION TO THE GOVERNMENT'S APPEAL AND IN SUPPORT OF SUFI'S CROSS-APPEAL

Frederick W. Claybrook, Jr.
Brian T. McLaughlin

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorneys for SUFI Network Services, Inc.

March 7, 2014

Certificate of Interest

Counsel for the Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

SUFI Network Services, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners and associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Crowell & Moring LLP; Frederick W. Claybrook, Jr.;
Brian T. McLaughlin.

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.

March 7, 2014

# Table of Contents

Table of Authorities ........ iii

Statement of Related Cases ........ 1

Jurisdictional Statement ........ 1

Counter-Statement of Issues ........ 1

Counter-Statement of Facts and Proceedings Below ........ 2

Summary of Opposition Argument ........ 4

Opposition Argument ........ 5

I. The CO's Breach of the Disputes Clause Gave SUFI the Option to Go Directly to the CFC ........ 5

II. The CFC Properly Ruled on the Merits for SUFI ........ 11

- A. The Award Is Identical Whether Denominated "Damages" or an "Equitable Adjustment" ........ 11
- B. In Any Event, Issue Preclusion Resolves the Merits in SUFI's Favor ........ 16
  1. The ASBCA Litigated the Identical Merits in the Context of Employee/Consultant Costs ........ 16
  2. What the ASBCA Decided Has Collateral Estoppel Effect in This Action ........ 17

III. The CFC Properly Set the Date Interest Accrued ........ 21

- A. The Government Untimely Raised the Issue of When Interest Begins to Run ........ 21
- B. The Damage Was Incurred As the Work Was Done ........ 25

IV. The CFC Properly Found the Rates Charged Reasonable ........ 28

- A. The CFC Did Not Rely on the Evidence, and So the Issue Is Immaterial ........ 28

B. The Government Did Not Preserve Its Objection Below and Elicited the Very Same Evidence About Which It Complains ....................31

C. Even If the Government Had Timely Objected, the Objection Would Not Have Been Well Founded ........................................................34

Statement of Cross-appeal Issues..........................................................................37

Statement of Cross-appeal Facts ..........................................................................37

Summary of Cross-appeal Argument ..................................................................40

Cross-Appeal Argument .......................................................................................41

I. Issue Preclusion Requires Overhead and Profit................................................41

II. The CFC Erred in Applying a FAR Regulation Inconsistent with Breach Law ..........................................................................43

III. In Any Event, the CFC Misapplied the Pass-Through Charges Clause ...........46

Conclusion ............................................................................................................51

Table of Authorities

Page(s)

**CASES**

*Ace Constructors, Inc. v. U.S.*,
70 Fed. Cl. 253 (2006) .......... 45

*Alliant Techsys., Inc. v. U.S.*,
178 F.3d 1260, *rehearing denied*, 186 F.3d 1379 (Fed. Cir. 1999) .......... 15

*Allstate Ins. Co. v. Swann*,
27 F.3d 1539 (11th Cir. 1994) .......... 34

*Avera v. Sec'y of HHS*,
515 F.3d 1343 (Fed. Cir. 2008) .......... 29

*Banner v. U.S.*,
238 F.3d 1348 (Fed. Cir. 2001) .......... 11

*Bill Strong Enters., Inc. v. Shannon*,
49 F.3d 1541 (Fed. Cir. 1995), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) .......... 19, 20

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 29, 36

*C. J. Langenfelder & Son, Inc. v. U.S.*,
341 F.2d 600 (Ct. Cl. 1965) .......... 6, 7

*Carolina Power & Light Co. v. U.S.*,
573 F.3d 1271 (Fed. Cir. 2009) .......... 45

*Chiu v. U.S.*,
948 F.2d 711 (Fed. Cir. 1991) .......... 27

*Cities Serv. Helex, Inc. v. U.S.*,
543 F.2d 1306 (Ct. Cl. 1976) .......... 10

*Clauss Constr.*,
ASBCA No. 53953, 04-1 BCA ¶ 32,627 (2004) .......... 45

*Commercial Contractors, Inc. v. U.S.*,
154 F.3d 1357 (Fed. Cir. 1998) ....................29, 31, 32

*Energy Nw. v. U.S.*,
641 F.3d 1300 (Fed. Cir. 2011) ....................12, 45, 51

*Eureka Inv. Corp. v. Chicago Title Ins. Co.*,
743 F.2d 932 (D.C. Cir. 1984)....................36

*Ginsberg v. Austin*,
968 F.2d 1198 (Fed. Cir. 1992) ....................15

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ....................22

*Greenhill v. U.S.*,
96 Fed. Cl. 771 (2011)....................26

*H. B. Zachry Co. v. U.S.*,
344 F.2d 352 (Ct. Cl. 1965)....................8

*Hubbard v. U.S.*,
480 F.3d 1327 (Fed. Cir. 2007) ....................27

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360 (Fed. Cir. 2000) ....................18

*Karno-Smith Co. v. U.S.*,
84 Ct. Cl. 110 (1936) ....................8

*Kattan by Thomas v. D.C.*,
995 F.2d 274 (D.C. Cir. 1993)....................36

*Laffey v. Nw. Airlines, Inc.*,
746 F.2d 4 (D.C. Cir. 1984), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1984)...........36

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
719 F.3d 1367 (Fed. Cir. 2013) ....................18

*Mass. Bay Transp. Auth. v. U.S.*,
129 F.3d 1226 (Fed. Cir. 1997) ....................12

*Mech-Con Corp. v. West*,
61 F.3d 883 (Fed. Cir. 1995) ....................................................................45

*Missouri v. Jenkins*,
491 U.S. 274 (1989)....................................................................................27

*Montana v. U.S.*,
440 U.S. 147 (1979)....................................................................................18

*N.Y. Shipbldg. Corp. v. U.S.*,
385 F.2d 427 (Ct. Cl. 1967)........................................................6, 8, 9, 10

*New Valley Corp. v. U.S.*,
119 F.3d 1576 (Fed. Cir. 1997) ................................................6, 7, 9, 10

*Nitro-Lift Techs., L.L.C. v. Howard*,
133 S. Ct. 500 (2012)..................................................................................15

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ..........................................................41, 43

*Oliver-Finnie Co. v. U.S.*,
279 F.2d 498 (Ct. Cl. 1960)..........................................................................6

*Phillips v. GSA*,
924 F.2d 1577 (Fed. Cir. 1991) ..................................................................26

*Propellex Corp.*,
ASBCA No. 50203, 02-1 BCA ¶ 31,721 (2001), *aff'd*, 342 F.3d 1335
(Fed. Cir. 2003)............................................................................................20

*R&R Assocs., Inc. v. Visual Scene, Inc.*,
726 F.2d 36 (1st Cir. 1984)...................................................................35, 36

*Rockies Express Pipeline LLC v. Salazar*,
730 F.3d 1330 (Fed. Cir. 2013) ..................................................................10

*Simas v. First Citizens' Fed. Credit Union*,
170 F.3d 37 (1st Cir. 1999)..........................................................................35

*S. Nuclear Operating Co. v. U.S.*,
637 F.3d 1297 (Fed. Cir. 2011) ..................................................................45

Case: 14-5032 Document: 13 Page: 8 Filed: 03/11/2014

*S. Pac. R.R. v. U.S.*,
168 U.S. 1 (1897) .......... 18, 42

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
264 F.3d 1344 (Fed. Cir. 2001) .......... 36

*Sys. Fuels, Inc. v. U.S.*,
666 F.3d 1306 (Fed. Cir. 2012) .......... 45, 51

*Tip Top Constr., Inc. v. Donahoe*,
695 F.3d 1276 (Fed. Cir. 2012) .......... 45

*U.S. v. Anthony Grace & Sons, Inc.*,
384 U.S. 424 (1966) .......... 7

*U.S. v. Blair*,
321 U.S. 730 (1944) .......... 7

*U.S. v. Finielstain*,
718 F. Supp. 1187 (S.D.N.Y. 1989) .......... 34

*U.S. v. Joseph A. Holpuch Co.*,
328 U.S. 234 (1946) .......... 7

*U.S. v. Utah Constr. & Mining Co.*,
384 U.S. 394 (1966) .......... 9, 12, 14, 18

*United Partition Systems, Inc. v. U.S.*,
95 Fed. Cl. 42 (2010) .......... 26

*Universal Ecsco Corp. v. U.S.*,
385 F.2d 421 (Ct. Cl. 1967) .......... 6, 7, 8

*Veridyne Corp. v. U.S.*,
107 Fed. Cl. 762 (2012) .......... 45

*W. Alaska Contractors, J.V.*,
ASBCA No. 46033, 95-1 BCA ¶ 27,392 (1994) .......... 45

*West v. Potter*,
717 F.3d 1030 (D.C. Cir. 2013) .......... 27

Case: 14-5032 Document: 13 Page: 9 Filed: 03/11/2014

**STATUTES, REGULATIONS, AND RULES**

48 C.F.R.

§ 31.205-33 ....................................................................................51

§ 31.205-42(g)..................................................................................51

§ 52.215-23 ........................................................................... 40, 44-51

§ 52.243-1 ....................................................................................13, 14

74 Fed. Reg. 52854 (Oct. 14, 2009)........................................................47

Fed.R.Evid.

103(a)(1) ..........................................................................................31

1002...........................................................................................34, 35

1002, Notes of Advisory Comm. ........................................................34, 35

RCFC

16(f)(1)(C).........................................................................................22

37(b)(2)(A)(ii).....................................................................................23

S. Rep. No. 109-254, 109th Cong., 2d Sess. (2006).....................................47

28 U.S.C.

§ 1295(a)(3) ........................................................................................1

§ 2111..................................................................................................29

§ 2412(d)..............................................................................................26

§ 1988..................................................................................................27

**OTHER AUTHORITIES**

Brian A. Garner, *Black's Law Dict.* 771 (7th ed. 1999) .................................25

Kenneth S. Broun, *McCormick on Evid.* § 234 (7th ed. 2013)...........................35

Case: 14-5032    Document: 13    Page: 10    Filed: 03/11/2014

Michael H. Graham, *Handbook of Fed. Evid.* § 1001:0 at 1053 (7th ed. 2012) ....................................................35

*Restatement (Second) of Judgments* § 27 (1982)....................................................17

Richard Lord, *Williston on Contracts* § 63:8 (4th ed. 2013)....................................10

Case: 14-5032 Document: 13 Page: 11 Filed: 03/11/2014

## Statement of Related Cases

The pending case of *SUFI Network Services, Inc. v. U.S.*, Nos. 2013-5039, 2013-5040, for which the Court heard oral argument on February 4, 2014, is related to this matter, but the Court's decision in that case will not affect the resolution of this appeal.

## Jurisdictional Statement

28 U.S.C. § 1295(a)(3) provides jurisdiction for SUFI's cross-appeal. SUFI filed within 14 days of the government's appeal. (JA71.)

## Counter-Statement of Issues

1. Whether a contractor is excused from pursuing administrative remedies when the contracting officer ("CO") has breached the Contract's disputes clause.

2. Whether the government even states an appeal issue when it does not contest that, for the breaches of the Air Force ("AF"), the Court of Federal Claims ("CFC") could properly grant SUFI its claim preparation attorney costs, or, alternatively, whether the Board's prior grant of other claim preparation costs precludes the government from challenging liability for SUFI's claim preparation attorney costs.

3. Whether the government untimely raised its defense as to when interest accrued on SUFI's claim when it raised the issue for the first time post-

trial, and, if not untimely, whether the CFC properly held that SUFI's costs were incurred when the work was performed.

4. Whether the government even states an appeal issue about evidence on which the CFC did not rely; if so, whether it waived its challenge to the evidence about which it now complains; and, if not, whether its objection on appeal is well founded.

Counter-Statement of Facts and Proceedings Below

SUFI submits the following additional facts to those recounted by the government in its opening brief, keyed to the government's appeal issues. Other relevant facts will be recounted in the argument section.

1. On December 29, 2010, SUFI submitted to CO Henson its claim for attorney fees and expenses for non-litigation work related to SUFI's successful, underlying claims as determined by the Board. CO Henson had continuously served as the CO for all of SUFI's underlying claims and had attended the hearing before the Board in 2007 regarding those claims. (JA60-61.)

CO Henson never issued a final decision on the December 2010 claim. He did not respond to multiple requests from SUFI for a formal status report, and he failed to provide any informal indication as to the claim's status. After more than six months had passed with no decision or update of any kind, agency counsel responded to an email from SUFI and noted only that SUFI "could consider the

Case: 14-5032    Document: 13    Page: 13    Filed: 03/11/2014

claim deemed denied in its entirety"—in other words, that the CO would never issue a final decision. (JA61, 63.) To date, CO Henson has neither issued a final decision nor contacted SUFI in any way regarding the December 2010 claim.

2. The Board in *SUFI ASBCA VIII*[1] granted SUFI's claim preparation fees and expenses for employees and consultants relating to SUFI's successful, underlying breach claims. (JA3326-28.) While the Board expressly declined to decide whether SUFI was also due claim preparation fees and expenses for its attorneys, as SUFI had not yet presented its costs in that regard, it acknowledged that the legal issue on the merits was identical to that with respect to employees and other consultants. (JA3326.) In *SUFI CFC II*, the CFC declined to apply issue preclusion, but ruled on the merits that the Air Force owed SUFI these amounts due to its material breaches of contract on the underlying claims. (JA42-47.)

3. SUFI is owed interest on its claim pursuant to the parties' Partial Settlement Agreement ("PSA") from "the date damages [we]re actually incurred, until payment." (JA1979-80.) To quantify its reasonable fees, SUFI used the lodestar method (rate times hours), in lieu of its actual contingent fee. Under the lodestar method, SUFI calculated the interest due from when the work was performed. The government never challenged SUFI's starting point for interest

---

[1] SUFI uses for this brief the naming conventions for the ASBCA and CFC decisions adopted by the CFC. (JA40 at n.1.)

Case: 14-5032 Document: 13 Page: 14 Filed: 03/11/2014

before or during trial, raising its challenge for the first time in its Post Trial Brief. (JA478-79.)

4. At the trial before the CFC, SUFI introduced a plethora of evidence demonstrating that its standard rates claimed were reasonable. The CFC expressly relied on much, but not all, of that evidence, and not on the portion the government now challenges. (JA20.)

## Summary of Opposition Argument

1. The government does not contest that the CO breached his obligation under the Disputes clause to issue a timely final decision. Under longstanding precedent on which the CFC relied but the government ignored in its briefing, this breach relieved SUFI from appealing to the ASBCA and permitted it to file directly at the CFC.

2. The government does not contest that SUFI is entitled to recover claim preparation costs due to the AF's multiple breaches, but argues that the CFC improperly found SUFI entitled to an equitable adjustment under the Changes clause. This argument has no substance, as the amounts due are the same whether called "damages" or an "equitable adjustment." In any event, the merits of SUFI's entitlement to claim preparation costs were already decided in SUFI's favor by the Board, which ruling is binding as a matter of law.

Case: 14-5032 Document: 13 Page: 15 Filed: 03/11/2014

3. The government untimely raised its issue about when interest begins to run. In any event, both a plain reading of the term "incurred" and uniform case law confirm that SUFI incurred damage when the work was performed and is, therefore, owed interest from that date pursuant to the PSA.

4. Overwhelming evidence supported the CFC's determination that SUFI's rates were reasonable, and the government's evidentiary objection on appeal is harmless, waived, and wrong.

## Opposition Argument

### I. The CO's Breach of the Disputes Clause Gave SUFI the Option to Go Directly to the CFC

The government frames a very narrow "exhaustion" issue. It does not challenge the CFC's determination that the CO "materially breached the Disputes clause by failing to issue a final decision within a reasonable timeframe." (JA63.) Instead, the government simply argues, without any support, that because SUFI could still have pursued an appeal at the ASBCA, despite the CO's breach, SUFI was required to have done so. That is flatly contradicted by the controlling law on which the CFC relied and the government completely ignores.

The government rests its entire argument (at 8-10) on the notion that a contractor must normally exhaust its administrative remedies prior to seeking judicial relief. This was not in dispute before the CFC, nor is it in dispute now. (*See*, *e.g.*, JA62.) However, the longstanding exception to this rule is that a

Case: 14-5032 Document: 13 Page: 16 Filed: 03/11/2014

contractor is excused from pursuing its administrative remedy, or may be considered to have exhausted that remedy, when the agency breaches the disputes clause's prescribed administrative process.

The CO "cannot wait indefinitely before making a decision [on a contractor's claim], but must act within a reasonable time under the existing facts and circumstances." *Universal Ecsco Corp. v. U.S.*, 385 F.2d 421, 425 (Ct. Cl. 1967). Failing to do so is a breach of the government's "implied covenant to render a timely and appropriate decision." *Id*. (quoting *N.Y. Shipbldg. Corp. v. U.S.*, 385 F.2d 427, 436 (Ct. Cl. 1967) (citing cases)). Thus, "when the contracting officer unreasonably delays action on a contractor's claim, or refuses entirely to take action, the exhaustion requirement will be excused and the contractor may bring suit directly in [the CFC]." *C. J. Langenfelder & Son, Inc. v. U.S.*, 341 F.2d 600, 605 (Ct. Cl. 1965)(emphasis added).

This precedent controls here, and it has been followed in case after case by the former Court of Claims, as well as by this Court.[2] As the Court of Claims has repeatedly held, this rule is entirely consistent with Supreme Court precedent that, when the administrative remedy is "inadequate or unavailable," a contractor is not

---

2 *See, e.g.*, *New Valley Corp. v. U.S.*, 119 F.3d 1576, 1581-82 (Fed. Cir. 1997); *Universal Ecsco*, 385 F.2d at 425-26; *C. J. Langenfelder*, 341 F.2d at 604-05; *Oliver-Finnie Co. v. U.S.*, 279 F.2d 498, 503 (Ct. Cl. 1960).

Case: 14-5032 Document: 13 Page: 17 Filed: 03/11/2014

required to exhaust even mandatory administrative remedies but, instead, may bring suit directly in court.[3] The CFC relied on this precedent in holding that SUFI was permitted to file suit directly in the CFC. (JA62-63.) The government's failure even to address this precedent or the CFC's reasoning manifests the fundamental weakness of its appeal. Nevertheless, out of an abundance of caution, SUFI recounts briefly why that precedent supported the CFC's decision here.

The CFC correctly held that this case is directly analogous to *New Valley*, in which this Court held that, when the contractor for almost three months had received no indication of when the agency would provide it administrative action mandated in the contract, it had exhausted its administrative remedies and suit could be filed in the CFC for initial resolution of the matter. 119 F.3d at 1581-82. Here, the refusal to act was over twice as long when SUFI filed at the CFC. And this situation is even more compelling than in *New Valley*, because the CO's counsel informed SUFI, in effect, that a final decision would never be forthcoming. (JA63.) Simply put, the CO's "refusal to issue a final decision excuses plaintiff from any duty it may have had to pursue the administrative remedies provided by

---

[3] *Universal Ecsco*, 385 F.2d at 426 (citing *U.S. v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 429-30 (1966); *U.S. v. Joseph A. Holpuch Co.*, 328 U.S. 234, 239-40 (1946); *U.S. v. Blair*, 321 U.S. 730, 736-37 (1944)); *C.J. Langenfelder*, 341 F.2d at 605 (citing *Holpuch*).

the contract." *H. B. Zachry Co. v. U.S.*, 344 F.2d 352, 357 (Ct. Cl. 1965)(emphasis added).

*N.Y. Shipbuilding* is also directly on point. There, a "final decision" was issued, but not by the CO, and so it was a nullity. The court went on to hold that, with the elapsed time then being over a year (in this case, now over three years since SUFI filed its claim without any final decision ever), "[t]here is no good reason to allow the administrative process, so long delayed, to start now." 385 F.2d at 437. When the CO "fails to perform the duties imposed upon him by the contract, it is the duty of the court to perform this service and pass on the legal rights of the plaintiff." *Id*. (emphasis added)(quoting *Karno-Smith Co. v. U.S.*, 84 Ct. Cl. 110, 124 (1936)). Like in *N.Y. Shipbuilding*, "the parties originally contemplated an administrative hearing but the defendant, not the contractor, has circumvented that provision of the contract by breaching the agreement to render a proper and timely initial determination. By this rupture of the contract defendant has lost its right to insist upon administrative findings and an administrative decision." *Id*. at 438(emphasis added).[4]

---

[4] Indeed, even had the CO issued a final decision at any time since SUFI filed suit in the CFC two and one-half years ago, SUFI would not be required to return to the Board. *See Universal Ecsco*, 385 F.2d at 426 ("After the plaintiff properly filed this suit, it was not required to abandon its case and proceed with an administrative appeal merely because in the meantime the (Continued...)

Case: 14-5032 Document: 13 Page: 19 Filed: 03/11/2014

The government's reliance (at 9) on the Disputes clause in the Contract as "prohibiting" appeal to the CFC in the first instance, irrespective of the unchallenged finding that the CO breached the Disputes clause, misses the point altogether. The very line of cases relied on by the CFC and discussed above had disputes clauses that were just the same, requiring an administrative remedy as "final" agency action and contemplating judicial action only for limited review of the administrative decision (in the absence of a breach of the disputes clause). For instance, in *New Valley*, the disputes clause required resolution of disputes by the NASA Associate Administrator, with written appeal to the NASA Administrator that was to be "final and conclusive."[5] 119 F.3d at 1578. That the Disputes clause of the SUFI Contract similarly required appeal to the ASBCA, the decision of

contracting officer had issued a final decision."). This rule is all the more applicable here, as the entire claim has now been resolved as to both liability and damages. (*E.g.*, JA47, 22.)

[5] *See also N.Y. Shipbldg.*, 385 F.2d at 429(disputes clause required any dispute to be decided by the Nuclear Projects Officer with any appeal to the Maritime Administrator); *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 399 n.2 (1966)(quoting standard disputes clause language requiring decision by the contracting officer "subject to written appeal by the contractor . . . to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto").

Case: 14-5032 Document: 13 Page: 20 Filed: 03/11/2014

which was to be final and conclusive, does not distinguish this situation from *New Valley* or the other precedent on which SUFI and the CFC relied.[6]

The government has no leg to stand on. Just because SUFI could have availed itself of the ASBCA after the CO breached his Disputes clause obligations does not mean that SUFI was required to do so. Instead, the Air Force by its breach was no longer able to rely on the clause, and SUFI was free to opt for its remedies under the Tucker Act in the CFC, without exhausting its administrative remedy. All the controlling precedent says exactly that.[7]

---

6 It is ironic that the government (at 9) quotes the language of the Disputes clause stating that, "if no such appeal is filed, the decision of the Contracting Officer shall be final and conclusive" given that, here, it is undisputed that there was never a decision by the CO in the first place, a fact which provided the grounds for the CFC's unchallenged finding that the CO had breached the Contract's administrative remedy process. *Cf. N.Y. Shipbldg.*, 385 F.2d at 437 (holding that, when "[n]o proper initial decision has been rendered administratively, there is nothing from which to appeal, and there is nothing for the appeal board to consider").

7 Of course, this precedent is simply an application of the principles that (1) one who breaches a contract provision cannot then enforce it, *see* 23 Richard Lord, *Williston on Contracts* § 63:8 (4th ed. 2013); and (2) the innocent party has the option whether to waive the breach (in this case, still file with the ASBCA) or consider the breached provision void (in this case, file with the CFC). *See Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330, 1341 (Fed. Cir. 2013); *Cities Serv. Helex, Inc. v. U.S.*, 543 F.2d 1306, 1313 (Ct. Cl. 1976).

II. The CFC Properly Ruled on the Merits for SUFI

The government's attack on the CFC's merits ruling in *SUFI CFC II* is semantics without substance. Even then, issue preclusion principles require a merits ruling in SUFI's favor.

A. The Award Is Identical Whether Denominated "Damages" or an "Equitable Adjustment"

The government raises a quibble about whether the CFC's award of attorney costs for claim preparation is appropriately described as (a) breach damages or (b) an equitable adjustment under the Changes clause. It does not matter, because the amount is the same under either formulation—*i.e.*, SUFI's out-of-pocket costs (including overhead and profit)—and the government does not contest that SUFI can recover its attorney costs. Thus, there is no need to go further: "An appellate court 'may affirm the district court on a ground not selected by the [trial] judge so long as the record fairly supports such an alternative disposition of the issue.'" *Banner v. U.S.*, 238 F.3d 1348, 1355 (Fed. Cir. 2001)(citation omitted)). But even assuming the government raises a proper appeal argument, it fails on several levels.

First, the CFC repeatedly held in *SUFI CFC II* that SUFI's recovery is, at bottom, for breach: for instance, it observed that "AFNAFPO materially breached" (JA44); it noted that, "[u]nder the common law, attorneys' fees are compensable if they are 'a direct and foreseeable consequence of the Government's breach of its

Case: 14-5032 Document: 13 Page: 22 Filed: 03/11/2014

contractual undertakings'" (JA47, quoting *Mass. Bay Transp. Auth. v. U.S.*, 129 F.3d 1226, 1232-33 (Fed. Cir. 1997); and it then concluded that it was granting SUFI's attorney claim preparation costs as a direct and foreseeable consequence of the AF's "material breach." (JA47.) In *SUFI CFC IV*, the CFC expressly reiterated that, in *SUFI CFC II*, it had decided that SUFI was entitled to recovery for the AF's breach. (JA18.) Thus, it is for good reason that the government concedes (at 13 & n.2) that its forced reading that the CFC's decision was bottomed on the Changes clause is not the only permissible reading of the CFC's decision; indeed, that the CFC grounded its ruling on breach is indisputable.

Second, the Government fails to recognize the significance of the fact that SUFI's Disputes clause covered "any disputes," rather than only those "arising under" the Contract. Technically, a breach claim results in "damages" while a changes claim, an "equitable adjustment." The difference between a breach claim, that by definition does not "arise under" the contract, and a changes claim that does used to have jurisdictional consequences when the standard disputes clause only covered claims "arising under" the contract. If a dispute "arose under" a remedy-providing provision of the contract, the board process had to be exhausted; if it were a breach, the claim was filed directly in the Court of Claims.[8] With the

[8] *See generally Utah Constr.*, 384 U.S. at 403-18; *Energy Nw. v. U.S.*, 641 F.3d 1300, 1312 (Fed. Cir. 2011).

Case: 14-5032 Document: 13 Page: 23 Filed: 03/11/2014

Contract Disputes Act of 1978 providing contractors a choice of forum, the standard disputes clause was changed to cover all disputes "relating to" or "concerning" the contract, making the disputes clauses applicable to all contract disputes—whether they are breach claims or claims "arising under" the Contract —requiring both types first to be presented administratively to the CO via the disputes clause methodology.

With this merger, courts and commentators sometimes now state that a government breach entitles the contractor to an "equitable adjustment" under the contract. Recognizing this, and because SUFI's Disputes clause is not an "arising under" clause but covers "any dispute or claim concerning this Contract" (JA748), SUFI sought the identical damages as breach "damages" in Count I and, in the alternative, as an "equitable adjustment" in Count II. (JA42.)

Third, even on its own terms, the government's Changes clause argument fails—in part because the government cites the wrong clause. SUFI's contract was for services, not supplies. The government (at 15) quotes the supplies Changes clause, which deals with "[d]rawings, designs, or specifications." 48 C.F.R. § 52.243-1. While the Contract in its standard-form portion called out this clause by reference (JA755), the Contract also specified for services contracts like this that "ALT I" to the clause would apply. (JA757.) Alternate I replaced the "supplies"

Case: 14-5032 Document: 13 Page: 24 Filed: 03/11/2014

language the government quoted with "services" language, allowing changes to the "[d]escription of services to be performed." *Id*.

In such a circumstance, breach damages can also properly be described as an equitable adjustment under the combined working of the Changes and Disputes clauses, as follows: (a) the Disputes clause requires "any claim" to be prepared for the CO's negotiation and resolution as a predicate to litigation; (b) as such, claim preparation is part of the "services to be performed" of the Contract; (c) the government's specific actions in breach triggered this required claim preparation activity, which is a constructive change to the Contract; and (d) constructive changes are compensable as equitable adjustments under the Changes clause. While SUFI does not believe this "constructive change" theorizing is necessary to support damages for a breach claim, SUFI recognized its potential applicability by requesting an "equitable adjustment" in the alternative.

Fourth, both breach damages and equitable adjustments flow from a contract which contains "any disputes" language like the SUFI Contract's Disputes clause. *See Utah Constr.*, 384 U.S. at 403-18. Not only does this Court require contractors to comply with the procedures of such a Disputes clause when pursuing a claim

Case: 14-5032 Document: 13 Page: 25 Filed: 03/11/2014

despite the invalidity of the underlying contract,[9] but SUFI expressly reserved its claims in the Partial Settlement Agreement for prosecution pursuant to the Contract's Disputes clause. (JA1980.)

In summary, the government does not contest that SUFI can recover its attorney costs for claim preparation. Thus, there is no reason to parse whether its recovery is properly described as "breach damages," or an "equitable adjustment," or both.[10] The CFC did not err in describing it in both ways—and, if it did err, mox nix.

---

[9] In *Alliant Techsystems, Inc. v. U.S.*, 178 F.3d 1260, *rehearing denied*, 186 F.3d 1379 (Fed. Cir. 1999), this Court found that the agency's option exercise was defective, resulting in no contract being formed. *Id*. at 1275. Nevertheless, the Court found the contractor in material breach because it had not obeyed the disputes clause's continue-to-work provision pending resolution of its claim that the option exercise was defective, finding that "Alliant's obligations under the disputes clause are independent of its obligations under the option clause." *Id*. at 1275-77. In other words, the disputes clause survived the termination of the contract. *Cf. Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012)(arbitration clauses are enforceable even if rest of the contract is not).

[10] The government (at 17) cites *Ginsberg v. Austin*, 968 F.2d 1198, 1200 (Fed. Cir. 1992), for the proposition that a decision based on an unsupportable legal interpretation should be vacated or reversed, but it fails to inform the court of that case's qualifying language, in the very same sentence cited by the government, that that should be done only if "no other grounds exist upon which to uphold the decision." *Id.*

Case: 14-5032 Document: 13 Page: 26 Filed: 03/11/2014

### B. In Any Event, Issue Preclusion Resolves the Merits in SUFI's Favor

Any alleged error in the CFC's treatment of the merits is also made irrelevant by the fact that the issue was resolved by the ASBCA. The Board granted SUFI recovery of its claim preparation expenses related to its employees and other consultants. The claim preparation effort was a combined effort between them and SUFI's attorneys, and, in ruling in SUFI's favor on the identical issue with respect to its employees/consultants, the ASBCA necessarily ruled in SUFI's favor with respect to the same attorney effort.

#### 1. The ASBCA Litigated the Identical Merits in the Context of Employee/Consultant Costs

In making its claim as part of its breach damages for its costs for preparing the claims and presenting them to the CO for potential resolution and negotiation, SUFI made clear from the outset that, while it was not itemizing its attorney's fees and expenses related to claim preparation prior to resolution of which claims were successful on the merits, it was claiming those costs in addition to the same type of costs of employees and consultants. (JA3326-28.) The ASBCA in *SUFI ASBCA VIII*, noting that SUFI had not itemized any damages for attorneys, stated, "[W]e need not rule on the allowability of their legal fees and expenses." (JA3326.) The CFC relied on this statement to hold in *SUFI CFC II* that the Board's judgment on the claim preparation expenses did not establish the AF's liability for claim

preparation attorney costs. (JA43). While the CFC also identified the employee claim as "analogous" (JA46), in fact, it presented the identical issue, as the Board recited in *SUFI ASBCA VIII*:

> The parties dispute whether and to what extent SUFI employee claim preparation costs prior to prosecuting this appeal may be recovered. SUFI addresses the claim preparation costs of its employees . . . stating: ["]For the reasons more fully stated in SUFI's initial brief (at 423-33) as to why claim preparation attorney's fees and expenses are recoverable, these work hours for SUFI personnel are also recoverable["] (app. reply br. at 35). SUFI urges the Board to apply a clear-cut line provided by the common law—legal fees directly related to the breach and foreseeable are recoverable; legal fees incurred in the actual litigation before the appropriate tribunal are not (app. br. at 428).

(JA3326.)

2. What the ASBCA Decided Has Collateral Estoppel Effect in This Action

Because the issue for employee/consultant efforts and attorney efforts for claim preparation is identical, the doctrine of collateral estoppel controls the merits of this action. The doctrine, one branch of "issue preclusion," is articulated in the *Restatement (Second) of Judgments* § 27 (1982)(hereinafter "*Restatement*") as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and

Case: 14-5032 Document: 13 Page: 28 Filed: 03/11/2014

> the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

(Emphasis added.) This Court has accepted the *Restatement*'s formulation, as enumerated in a four-part test, in multiple decisions.[11] Furthermore, the Supreme Court has made clear that collateral estoppel applies to Board findings of fact and conclusions of law in contract cases before this Court.[12] Obviously, the same parties are involved in this proceeding as in the ASBCA, the government was represented in the other action, and the ASBCA's ruling was not dicta. The only question remaining, then, is what was "litigated and determined" by the ASBCA.

In *SUFI ASBCA VIII*, the Board found, as a matter of fact and law, that SUFI was entitled to recover its claim preparation costs and that those costs, including the negotiation of its claims with the CO, were not litigation costs, but recoverable damages under SUFI's breach claims. (JA3327-28.) In deciding whether or not to

---

[11] The Court's formulation is (1) identity of issues, (2) actually litigated, (3) not dicta and (4) full opportunity for the defending party to litigate the issues. *E.g.*, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000)(citing numerous authorities).

[12] *See Utah Constr.*, 384 U.S. at 418-22; *see also Montana v. U.S.*, 440 U.S. 147, 152-54 (1979)(applying collateral estoppel against federal government); *S. Pac. R.R. v. U.S.*, 168 U.S. 1, 48-52 (1897)(collateral estoppel applies even if different causes of action are involved).

Case: 14-5032 Document: 13 Page: 29 Filed: 03/11/2014

grant SUFI's request for claim preparation costs, the ASBCA followed this analysis:

1. It recognized that SUFI relied on a common-law breach cause of action, with SUFI only requesting such costs and expenses for claims which would be found successful on the merits. (JA3326.)

2. The Board observed that the FAR cost principles did not apply to the Contract. (JA3326.)

3. It noted that the ASBCA "has held that the FAR criteria for the allowability of costs are useful in the absence of other guidance." (JA3326.)

4. The Board then applied the FAR criteria for recovery of professional and consultant service costs as construed by this Court in *Bill Strong*,[13] concluding, "In applying the *Bill Strong* rule to SUFI's Counts, the foregoing facts adequately show that the objective reason SUFI incurred claim preparation costs and consulting fees prior to such claim submission was for the purpose of furthering the negotiation process." (JA3327.)

---

[13] *Bill Strong Enters., Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 (Fed. Cir. 1995).

5. Finally, the Board granted "recovery of SUFI's claim preparation costs and consulting fees," but only on those counts for which the Board had granted other relief on SUFI's breach claims, rather than for all claims, as the FAR would have allowed.[14] (JA3328.)

The CFC in *SUFI CFC II* repeated the ASBCA's analysis of the analogous FAR provision as interpreted in *Bill Strong* (JA45-47), but in doing so it only underscored that the Board had already resolved exactly the same issue.

The CFC's redo of the merits was foreclosed. The ASBCA performed that analysis and found in SUFI's favor. Then, using that analysis as guidance, the Board ruled that the claimed costs associated with the preparation and negotiation of the claims as presented to the CO were not litigation costs but recoverable damages under SUFI's breach theory. These rulings apply with the same force to the claim preparation costs of SUFI's attorneys as to its employees and other consultants; there is no way to distinguish them. Thus, SUFI prevails as a matter of law on the merits.

---

[14] *See, e.g.*, *Propellex Corp.*, ASBCA No. 50203, 02-1 BCA ¶ 31,721 at 156,730-31 (2001)(granting attorneys' fees and expenses involved in claim preparation and negotiation under the FAR, even though the claims were denied on the merits), *aff'd*, 342 F.3d 1335 (Fed. Cir. 2003).

## III. The CFC Properly Set the Date Interest Accrued

The government asserts the CFC improperly adopted the date C&M performed the work for the date interest began to accrue. This argument is both untimely and meritless.

### A. The Government Untimely Raised the Issue of When Interest Begins to Run

The government raised this "accrual" argument for the very first time in its Post Trial Brief. (JA478-79.) That was too late.

The government was on notice of the way SUFI calculated interest long before SUFI filed its complaint in this matter, but failed to challenge it. Beginning with its claim to the CO, SUFI demanded interest as calculated from the date of the time entries by C&M. (JA812, 897-906 (interest calculation chart).) Later, in its Complaint at the CFC, SUFI requested interest accrued in the same way. (JA76.) The government generally denied SUFI's entitlement to interest, but it did not dispute the date from which interest accrued. (JA108.) Nor did it raise the accrual argument as an affirmative defense in its answer. (JA108.)

The CFC mandated each party to file a pretrial Statement of Issues to include a "statement of the issues to be tried, with a brief summary of the facts that Defendant expects to prove at trial" (JA297), but the government's only defense as to interest was the general assertion that SUFI was "not entitled to recover interest," not that it did not accrue as SUFI had claimed. (JA317.) By failing to

raise the issue and put SUFI on notice of this defense prior to the trial, the government waived it.

The government committed a second waiver by not raising the accrual issue at the trial itself. Rather, the government simply repeated in its opening statement that "SUFI maintains its entitlement to interest, the government disagrees." (JA2751.) This, despite the fact that, at trial, SUFI introduced and admitted its claim to the CO, including the interest calculation chart showing accrual from when the work was done, without objection from the government. (JA897-906(PX1 interest calculation chart), 2724, 2752-53(admission of PX1), 3151-52(government expert did not opine on interest calculations).) By failing to raise the issue of the accrual of interest before trial, failing to raise the issue during trial, and failing to object to the admission of SUFI's interest calculations at trial, the government waived this defense thrice. "[N]ew arguments will not be decided in the first instance on appeal." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008).

While the CFC did not address SUFI's waiver argument below and, instead, ruled for SUFI on the merits, this Court can and should refuse to consider the government's belatedly raised defense. The CFC should have considered the defense waived because the government did not raise it as required in its Statement of Issues prior to trial. RCFC 16(f)(1)(C) authorizes the CFC to sanction a party or

its attorney that "fails to obey a scheduling or other pretrial order," while RCFC 37(b)(2)(A) provides potential sanctions, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses." RCFC 37(b)(2)(A)(ii). The government's failure to comply clearly prejudiced SUFI, making such a sanction mandatory.

Raising this defense for the first time post-trial, the government left SUFI without the ability to introduce any evidence to rebut. While the government's argument as to when the interest obligation was incurred by SUFI is wrong as a matter of law and inconsistent with the facts of record (as discussed below), had SUFI been on notice of the government's accrual argument, it could have introduced evidence at trial of its fee and expense payments pursuant to the contingency agreement that would have countered the government's argument that SUFI did not actually "incur" any damage as defined by the government (by paying fees to C&M) prior to filing its claim with the CO in December 2010.

Even so, the record evidence demonstrates the prejudice to SUFI. SUFI entered into a contingency with C&M beginning in late 2004, shortly after the declaratory action before the Board was resolved. (JA2862-63, 2764-65, 2947.) Pursuant to that agreement, SUFI was paying all expenses as charged during the 2004 to 2006 time period (JA2868, 2876, 2765-66) and also made at least one fee payment in 2005, part of which was misapplied toward expenses until Mr.

Case: 14-5032 Document: 13 Page: 34 Filed: 03/11/2014

Claybrook noticed the mistake sometime later. (JA2875-76.) Thus, the government's assertion (at 18) that SUFI never paid its attorneys prior to December 2010, when it filed its claim with the CO, is false.

SUFI could have introduced fuller evidence of its fee payments during that time had it been on notice of the government's new defense. This would have included both testimony and documentary evidence, such as PX24, one of SUFI's trial exhibits, which implicitly supports the fact of SUFI paying fees on a contingent basis back in 2005 and shows the accounting error about which Mr. Claybrook testified. (JA3331.) SUFI did not introduce this exhibit into evidence only because there was no argument or defense raised by the government necessitating it. Thus, SUFI was obviously prejudiced and the government foreclosed from its untimely assertion of this "accrual" defense after the close of the evidentiary record.[15]

[15] The government's opening brief only crystallizes the prejudice to SUFI from the government's untimely argument. For instance, the government for the first time in its appellate brief (at 19) raises the factual question of whether "the parties to the PSA intended an identical interpretation of 'incurred' to determine interest accrual under the PSA." The government also posits for the first time (at 20) that the PSA's language "suggest[s] a heightened regard for the immediacy of damages." Similarly, the government then asserts (at 21) that "[i]t is beyond comprehension that the Air Force would have agreed to pay SUFI interest . . . when SUFI lost no time [sic] all." Not one of these untimely assertions includes a citation to the record evidence because the government did not raise the issue at or before trial and, hence, did not introduce evidence concerning these issues. Had the government wished to
(Continued...)

Case: 14-5032 Document: 13 Page: 35 Filed: 03/11/2014

B. The Damage Was Incurred As the Work Was Done

The government's argument also goes nowhere on the merits. The PSA provides for the government "to pay interest on any amounts paid or recovered by settlement or judgment from the earlier of (i) the date of receipt of the claim or (ii) the date damages are actually incurred, until payment." (JA1979-80 (emphasis added).) The government argues (at 17-21) that the applicable "earlier" date here is the date of the receipt of the claim because SUFI did not actually "incur" damage for its attorneys' work at the time the work was performed, as it had negotiated a contingency fee that was paid later. This misapprehends when an attorneys' fees obligation is "incurred" by a party.

When SUFI actually paid C&M for the time incurred pursuant to its contingency agreement is beside the point. What is relevant is that SUFI incurred the obligation for payment of the fees at the same time as the hours were worked. That is when the damages were incurred, and that is the date the PSA specifies from which interest runs. (JA1979-80.) *Incur* means "to suffer or bring on oneself (a liability or expense)." Brian A. Garner, *Black's Law Dict.* 771 (7th ed. 1999).

---

challenge the accrual of interest as it suggests in its appellate brief, it should have endeavored to introduce such evidence at trial. Moreover, by failing to identify the issue, the government foreclosed SUFI's negotiators of the PSA from testifying to the contrary.

The Federal Circuit and this Court have faced an analogous issue when interpreting the Equal Access to Justice Act, which provides for the government to reimburse fees "incurred" by certain prevailing parties. *See*, *e.g.*, 28 U.S.C. § 2412(d) (2012). The government has repeatedly argued in other cases that attorneys' fees under contingent fee arrangements are not "incurred" and so need not be reimbursed. Just as repeatedly, this argument has been rejected, because "the existence of an attorney-client relationship . . . is sufficient to demonstrate that plaintiff has incurred fees and expenses." *Greenhill v. U.S.*, 96 Fed. Cl. 771, 776 (2011); *accord Phillips v. GSA*, 924 F.2d 1577, 1582-83 (Fed. Cir. 1991). In *United Partition Systems, Inc. v. U.S.*, 95 Fed. Cl. 42 (2010), the court summarized, "A plaintiff 'incurs' fees and expenses . . . if there is an 'express or implied agreement that the fee award will be paid over to the legal representative.'" *Id*. at 53(quoting *Phillips*, 924 F.2d at 1583). Indeed, courts when calculating EAJA cost-of-living adjustments do not look to the date the services were (or will be) paid, but to the date the legal services were actually performed. *Id*. at 58-59. The Supreme Court has similarly recognized under other fee-shifting statutes that contingency fees are "incurred" as of the time the work is performed and that trial courts may award interest or use current market rates to

Case: 14-5032 Document: 13 Page: 37 Filed: 03/11/2014

account for a lengthy delay in payment to the attorneys.[16] The CFC correctly applied these rules in awarding interest from the date the work was performed by SUFI's attorneys. (JA21.)

The government's argument also has a conceptual problem. SUFI is claiming its legal fees, not on the amounts actually incurred under its contingency agreement, but on the basis of the lodestar method. While contingency arrangements do not require the client to pay until the money is in hand, the lodestar method is based on the hours worked and the rate to be applied. Because the lodestar method is a construct that relies on the actual hours worked, it necessarily relies on the dates those hours were worked. Thus, the date the work was performed is the only reasonable, logical date to use in calculating interest under this construct, and courts uniformly calculate cost-of-living increases in EAJA recoveries under non-contingency fee agreements using when the work is performed, not when the fee is paid. *E.g.*, *Hubbard v. U.S.*, 480 F.3d 1327, 1334 (Fed. Cir. 2007); *Chiu v. U.S.*, 948 F.2d 711, 719-22 (Fed. Cir. 1991). As the

---

[16] *E.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [42 U.S.C. § 1988]"); *see also West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013)("courts may . . . compensate for delay by adding interest to the historic rate so that the amount paid today reflects the approximate value of the historical rates charged at the time services were rendered"(emphasis added)).

Case: 14-5032 Document: 13 Page: 38 Filed: 03/11/2014

government is not paying based on the contingent fee actually paid by SUFI to C&M, it cannot base a defense on assuming that it is.

In sum, for purposes of calculating interest, SUFI's damage was incurred as C&M performed. Every item of work by C&M on SUFI's behalf that is claimed here was performed as a result of the AF's material breaches, and SUFI actually incurred damages, *i.e.*, an obligation to compensate its counsel for that work, as it was performed. Therefore, interest is to be applied from those dates.

## IV. The CFC Properly Found the Rates Charged Reasonable

The government complains that SUFI put in only oral testimony about the fact that it had paid C&M's standard rates in the first phase of the board litigation—the phase before the work claimed here was performed. This raises an evidentiary point not relied upon by the CFC in its decision, not preserved for appeal below, and not required to prove the reasonableness of SUFI's claimed rates. On top of all that, the government is simply wrong about the rule of evidence.

### A. The CFC Did Not Rely on the Evidence, and So the Issue Is Immaterial

As an initial matter, even if there were any substance to the government's complaint—which there is not—it could not result in reversal because the CFC did not rely upon it in its decision. Instead, the CFC relied on others of the manifold

Case: 14-5032 Document: 13 Page: 39 Filed: 03/11/2014

ways that SUFI had proven that C&M's customary, standard hourly rates were reasonable as measured by those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008)(quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The asserted error, then, is, by definition, harmless. *See* 28 U.S.C. § 2111 (2012); *e.g.*, *Commercial Contractors, Inc. v. U.S.*, 154 F.3d 1357, 1367 (Fed. Cir. 1998)(harmless error when court "did not rely significantly" on evidence in question).

The CFC first observed that SUFI presented evidence of "the rates typically charged and collected by C&M during the relevant time period."[17] Then, the CFC proceeded to analyze the mountain of evidence SUFI presented in support of the reasonableness of those claimed billing rates. It held that SUFI "presented substantial evidence supporting the reasonableness of those rates" (JA20), and it summarized the evidence it specifically relied on in making its reasonableness determination, to wit:

---

17 JA20 (citing JA2862-63); *see also* JA 815-16(Claybrook decl. of C&M customary rates from Aug. 2004-Jan. 2007), JA910-40("Rate" col. showing C&M billing rates for claimed entries), JA2914-17(Claybrook testimony re C&M claimed billing rates for relevant periods), JA1678-91(surveys showing C&M billing rates).

Case: 14-5032 Document: 13 Page: 40 Filed: 03/11/2014

(a) the expert report of an experienced practitioner in government contracts and partner in the D.C. office of Jones Day, who declared that the C&M rates were comparable to those his firm charged and stated that C&M "is one of the best known law firms in the field of government contracts [and] consistently receives the highest ratings from peers and rating organizations" (JA20(citing JA1961-62, 1969));

(b) "evidence of the substantial experience, education, and credentials of Mr. Claybrook and his associates" (JA20(citing JA2824-27, 1901-11)); *see also* JA818-21(Claybrook resume), 82887-91); and

(c) "evidence of the market conditions in the Washington, D.C. area, both through Mr. Claybrook's testimony and through private media surveys, such as those conducted by *The National Law Journal*, *Chambers USA*, and *Of Counsel*." (JA20(citing JA2917-25, 1666-765, 1786-87).)

The government did not challenge <u>any</u> of this evidence below, and the CFC did not rely on any other evidence in reaching its conclusion that "[t]his evidence, viewed as a whole, amply demonstrates that the claimed rates are presumptively

Case: 14-5032 Document: 13 Page: 41 Filed: 03/11/2014

reasonable." (JA20.) Because the CFC did not rely on the evidence about which the government complains, the government cannot prevail in its appeal about it.[18]

B. The Government Did Not Preserve Its Objection Below and Elicited the Very Same Evidence About Which It Complains

This issue also fails to get to the starting line because the government did not preserve it below. To raise an evidentiary issue on appeal, the party must have objected in the trial court. Fed.R.Evid. 103(a)(1); *Commercial Contractors*, 154 F.3d at 1367. Not only did the government not do so, but it also introduced the very evidence about which it complains.

SUFI, for its part, presented evidence that SUFI had paid C&M's standard rates prior to entering into a contingency arrangement (not during the period for which SUFI was awarded its fees in this action) through SUFI's Managing

---

[18] If the Court were to consider the evidence about which the government complains, even though it was not relied on by the CFC in its ruling, it would also have to consider the other record evidence, admitted without objection, that further supports the CFC's finding that the claimed rates were reasonable and that the alleged error is harmless. This included, but is not limited to, evidence that (1) the rates claimed by SUFI were C&M's standard "B" rates, which were lower than its standard "A" rates, which higher rates would normally have been charged in a litigation of this nature (JA2914-17); (2) fee awards by other tribunals affirming the reasonableness of C&M's standard rates for work performed by its government contract attorneys and paralegals (JA2933, 1766-73, 1774-85); and (3) another government agency's acceptance of C&M attorney and paralegal standard billing rates, including that of Mr. Claybrook, in a government contract matter (JA2930-32, 1798-1833, 1899-900).

Case: 14-5032 Document: 13 Page: 42 Filed: 03/11/2014

Director, Stephen Myers, and C&M's Claybrook. (JA2758, 2861-63.) If government counsel had wished to raise an objection related to the best evidence (or any other) rule, the time to do so was during their testimony. However, it did not. It is too late to do so after the testimony has been taken. *Id.*

Rather than object, the government itself elicited testimony from Mr. Myers confirming SUFI's payment of C&M's standard, hourly rates prior to the contingency arrangement governing the work claimed, including testimony concerning the hourly rates themselves. (JA2799-800.) Moreover, as Mr. Claybrook testified without rebuttal at trial, government counsel questioned him at his deposition concerning SUFI's hourly-rate agreement, he answered those questions, and he did not refuse to answer any such questions. (JA3036-39.) Thus, the government's waiver is at least two-fold: it failed to object to the introduction of the testimony by SUFI, and then it chose to elicit similar testimony itself.

Furthermore, it is not sufficient to preserve an objection to complain, as the government now does on appeal, that related documents were requested during discovery but not produced; nor were any type of evidentiary sanctions appropriate. Document Request 9, on which the government relied during cross-examination of Mr. Claybrook at trial, was so broad as literally to cover every document within C&M's possession, and SUFI had objected to its overbreadth,

Case: 14-5032 Document: 13 Page: 43 Filed: 03/11/2014

while nevertheless producing many responsive documents. (JA3014-16, 770.) If the government had wanted other documents in response, it had the obligation, first, to request them specifically and, second, to file a motion to compel if SUFI declined to produce them, but the government did neither. As a result, it was limited to doing only what it did, attempting to impeach Mr. Claybrook's testimony by SUFI's failure to produce some arguably requested documents. (JA3014-16.)

In its brief (at 22), the government eschews further reliance on Request 9 and now bases its argument on its Document Requests 5, 7, and 8. (JA769.) In addition to it being too late to change horses now, none of those three requests sought documents related to the hourly-rate agreement that was in place before the relevant claim period or bills under that agreement; to the contrary, those requests were aimed at the contingent-fee agreement, which was in place during the claim preparation time period at issue. (JA769.) In short, the discovery requests the government now relies on to assert that it asked for documents concerning SUFI's earlier, hourly-rate agreement did not cover that document by their own terms, and the government's argument must be rejected for this independent reason.

As matters resolved themselves, the CFC did not rely on the testimony SUFI presented on SUFI paying C&M's standard rate in the earlier phase of the litigation. This was tantamount to having the CFC excluding the testimony

altogether. The "adverse inference" sanction that the government improperly suggests the CFC should have taken could have required no more than exclusion of the testimony, which is effectively what happened. The government has nothing to complain about, on many levels.

C. Even If the Government Had Timely Objected, the Objection Would Not Have Been Well Founded

Even had the government timely objected at trial, there was nothing wrong with SUFI putting in evidence through testimony that it had paid C&M's standard rates in a prior phase of the litigation. Just because one or more documents might have confirmed that fact does not mean that it had to be proven by those documents.

The "best evidence" rule reflected in Federal Rule of Evidence 1002 does not reach so far. Rule 1002 recognizes that "an event may be proved by nondocumentary evidence, even though a written record of it was made." Fed.R.Evid. 1002, Notes of Advisory Committee on Proposed Rules. It only requires, subject to exceptions, a document to be provided if the content of that document is to be proved. "It does not, however, 'require production of a document simply because the document contains facts that are also testified to by a witness.'" *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994)(quoting *U.S. v. Finielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989)). "For example, payment may be proved without producing the written receipt which was given."

Case: 14-5032 Document: 13 Page: 45 Filed: 03/11/2014

Fed.R.Evid. 1002, Notes of Advisory Committee on Proposed Rules. There "is no general rule of evidence that a party must produce the best evidence which the nature of the case permits." Michael H. Graham, *Handbook of Fed. Evid.* § 1001:0 at 1053 (7th ed. 2012)(citing *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 51 (1st Cir. 1999)); *see* 2Kenneth S. Broun, *McCormick on Evid.* § 234 (7th ed. 2013)("*McCormick*")(may prove events by testimony when writings of those events also exist).

An analogous case is *R&R Associates, Inc. v. Visual Scene, Inc.*, 726 F.2d 36 (1st Cir. 1984). In *R&R*, the plaintiff proved by testimony the cost of procuring a product from the defendant, and the defendant complained that plaintiff should instead have introduced documentary proof. The flaw in the defendant's argument, the First Circuit observed, was that the witness "was in no way attempting 'to prove the contents of a writing.'" Rather, he was attempting by his own direct testimony to prove a particular fact: what it cost R&R to procure the merchandise." *Id.* at 38(quoting Fed.R.Evid.1002). Similarly here, SUFI was not trying to prove the content of any document, but to demonstrate the fact that it had paid C&M's standard rates prior to entering into a contingency agreement.[19] Thus, even if the government had lodged a "best evidence" objection at the trial, it would

[19] The writings were also "collateral" and, thus, excepted from the rule. *See McCormick* § 239.

Case: 14-5032 Document: 13 Page: 46 Filed: 03/11/2014

not have been well taken: "No evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation." *Id.*; *see Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1352 (Fed. Cir. 2001).[20]

---

In summary, the government's appeal about SUFI's proof that it paid C&M's standard rates in a prior phase of the case is frivolous. The CFC did not rely on the evidence in question; the government did not preserve its objection to it below; the government solicited the same evidence at trial and in deposition; the government in its briefing has abandoned the discovery request on which it based

[20] The government also makes an argument (at 23-24) regarding *Blum* that SUFI cannot follow. As an initial point, cases like *Blum* applying fee-shifting statutes are only analogous, as breach damage cases such as this have lower standards of proof. *See Eureka Inv. Corp. v. Chicago Title Ins. Co.*, 743 F.2d 932, 941-42 (D.C. Cir. 1984). In any event, the CFC acted wholly consistently with the *Blum* guidelines, which require application of prevailing rates whatever the fee arrangement. 465 U.S. 886 n.11. *See also, e.g., Kattan by Thomas v. D.C.*, 995 F.2d 274, 278 (D.C. Cir. 1993)("an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'"); *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984)("In almost every case, the firms' established billing rates will provide fair compensation."(emphasis added)), 17(citing cases approving customary billing rates as within the prevailing market), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988)(prevailing market rate method to apply irrespective of nature of attorneys' billing practice).

Case: 14-5032 Document: 13 Page: 47 Filed: 03/11/2014

its attempted impeachment at trial and now relies on unrelated discovery requests; and the government's basic, "best evidence" objection, which it tries to hide by not expressly naming it in its briefing, is manifestly wrong.

## Statement of Cross-appeal Issues

The CFC declined to award overhead and profit on SUFI's direct cost of attorney's fees and expenses, despite doing so in a related case for other SUFI expenses for the same tasks. This raises the issues of:

1. whether issue preclusion principles required the CFC to apply overhead and profit,

2. whether the CFC erred by applying as "guidance" a concededly inapplicable FAR clause when the clause is inconsistent with the applicable law, and

3. if it were permissible to apply the FAR clause, whether the CFC properly did so on this record.

## Statement of Cross-appeal Facts

The Board awarded SUFI damages for 22 out of its 28 monetary claims. As part of each of those 22 awarded claims, the Board granted SUFI all of the hours its employees and full-time consultant spent on claim preparation and transition and shutdown activities due to the breaches, plus related out-of-pocket costs, such

Case: 14-5032    Document: 13    Page: 48    Filed: 03/11/2014

as a computer to perform the damages calculation work and fees of a temporary consultant. (JA41, 3312-13(¶¶ 272, 275), 2000.)

At the Board, SUFI requested a 25% combined overhead and profit rate ("gross profit" rate) based on a 25% net profit rate maximum negotiated by the parties for extra work during performance and incorporated by modification into the Contract. (JA575-76, 598-603, 1971-73, 2782-84, 3028-29.) The Board in *SUFI ASBCA VIII* awarded a "10% profit" rate on all SUFI's out-of-pockets, except on SUFI's consultant fees, on which it awarded 25% on two claims and none on three others. The Board did not explain its rejection of the 25% rate or why it adopted 10%, other than to say 10% was "reasonable." (JA3261.) For other such damages, including employee hours, the Board did not award any overhead or profit, ruling that profit was unavailable on incurred breach damages (JA3293), which the government concedes was error.

In its related Wunderlich Act action (CFC No. 11-804C), SUFI challenged the ASBCA's failure to apply overhead and profit. The CFC in *SUFI CFC III* ruled for SUFI on this issue, finding that overhead and profit should be applied consistently to SUFI's labor hours and out-of-pocket costs, with the latter to be compensated at the 25% rate, rather than at the Board's inconsistently applied 10%:

> A failure to award overhead as part of damages does not make the non-breaching party whole; therefore

Case: 14-5032 Document: 13 Page: 49 Filed: 03/11/2014

> reimbursement of salary alone is insufficient. If the innocent party does not recover its allocable overhead, it simply means that some other business activities of the contractor must absorb a disproportionately higher amount of overhead. *See Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1277 (Fed. Cir. 2009)(if contractor had not recovered overhead as part of a contract breach, "other activities would have assumed a disproportionate amount of the total overhead costs"). The same is true for a reasonable profit element. . . .
>
> The above reasoning also applies to SUFI's claims for out-of-pocket expenses, where SUFI is entitled to recover 25 percent for overhead and profit. The Board denied, or allowed only ten percent (depending on the claim), for overhead recovery on out-of-pocket expenses.

108 Fed. Cl. at 300-01.[21]

In the proceedings below, SUFI argued that issue preclusion principles required application of the 25% rate to SUFI's out-of-pocket costs of attorney's fees and expenses. (JA373-74.) The CFC did not address issue preclusion in its decision in *SUFI CFC IV*. (JA21-22.)

The government below argued that applying overhead and profit would be an "excessive pass-through charge" as defined by the "Limitations on Pass-Through Charge" clause in FAR 52.215-23 because SUFI's counsel "was running the show" on the relevant tasks and so SUFI itself provided no "added value," as

---

[21] In its appeal of *SUFI CFC III*, the government argues that the CFC committed improper fact-finding on rates for the out-of-pocket costs and should have, instead, remanded to the Board for further consideration.

Case: 14-5032 Document: 13 Page: 50 Filed: 03/11/2014

defined in that clause. (JA477.) That clause, however, was not incorporated into the Contract. SUFI argued that the clause was inapplicable and that, in any event, it satisfied the clause on the uncontested evidence, both factual and expert. (JA576-77.)

The CFC in *SUFI CFC IV* found that SUFI had not met the burden to provide "adequate justification" for overhead and profit. While acknowledging that the FAR does not apply, the CFC used FAR 52.215-23 as "guidance" to find (contrary to the uncontroverted evidence) that SUFI added no material value to the work for which the CFC permitted recovery. (JA21-22.)

## Summary of Cross-appeal Argument

The CFC in *SUFI CFC III* applied a 25% combined overhead and profit rate to SUFI's expenses, including those incurred for claim preparation and transition costs, including consultant fees. Issue preclusion principles required the same treatment for SUFI's related attorney fees and expenses.

The CFC ignored issue preclusion in its opinion and, instead, while conceding the FAR does not apply to this Contract, used the Pass-Through Charges clause that prohibits the government from paying overhead or profit on subcontractor work when the prime "adds no or negligible value" to it. 48 C.F.R. § 52.215-23 (2013). The FAR provision was not incorporated into the Contract, did not apply as a matter of law, and deviates from the applicable common law.

Even if it were appropriately used under the rubric of "guidance," the CFC misapplied it under the uncontested facts of this case. SUFI's personnel and facilities were directly involved in, and thus "added value" to, the efforts otherwise compensated by the CFC. The CFC erred, therefore, in not applying SUFI's overhead and profit rate to SUFI's attorney costs.

## <u>Cross-Appeal Argument</u>

### I. <u>Issue Preclusion Requires Overhead and Profit</u>

Issue preclusion principles required the CFC to award SUFI the same overhead and profit it had applied in *SUFI CFC III* to other direct charges for the identical type of work on the identical claims. In failing to do so, the CFC erred as a matter of law.

All parts of the test for issue preclusion (recited above) are met here. The same parties were involved in *SUFI CFC III*, in which the government was represented by counsel, and the CFC's decision in *SUFI CFC III* was necessary to the judgment. The only potential defense to the application of issue preclusion, then, is that the same issue was not litigated in *SUFI CFC III*. But that fails, because SUFI and the government litigated the <u>identical</u> issue. It matters not that it was for a separate claim. *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)(collateral estoppel not limited to identical claims; rather, "it is the identity of the *issues* that were litigated that determines whether

Case: 14-5032 Document: 13 Page: 52 Filed: 03/11/2014

collateral estoppel should apply"); *see also S. Pac. R.R.*, 168 U.S. at 48-52 (collateral estoppel applies even if different causes of action are involved).

In the case on appeal here, at issue is whether overhead and profit should be applied to SUFI's out-of-pocket costs of non-litigation attorney's fees and expenses related to the 22 successful claims at the Board ("claim preparation" costs). At the Board, SUFI claimed its direct-charged hours and its out-of-pockets for claim preparation, which included professional fees for a former employee, Carl Stephens, who assisted as a part-time consultant on some of the claims. (*E.g.*, JA3261.) The Board in *SUFI ASBCA VIII* refused to apply overhead and profit to the hours of SUFI employees and a full-time consultant and applied varying profit rates to SUFI's out-of-pockets, sometimes applying none, most often 10%, and sometimes 25% (as SUFI had requested and the Contract supported), without explanation of the difference in treatment, other than by expressing its legally fallacious view that profit is not permitted for breach claims. (JA3293, 3328.)

SUFI challenged the Board's decision under the Wunderlich Act, and the CFC in *SUFI CFC III* found that the Board had acted contrary to law in not allowing overhead and profit for claim preparation and other breach damages. Thus, the CFC corrected the hourly rates for SUFI's direct-charged employees and full-time consultant to their rates negotiated with the AF for extra work (which

Case: 14-5032 Document: 13 Page: 53 Filed: 03/11/2014

rates included overhead and profit) and found a combined 25% rate was due for all out-of-pockets. 108 Fed. Cl. at 300-01.

Attorney's fees and expenses are out-of-pocket expenses for SUFI. They are exactly the same in kind and subject matter as Mr. Stephens' consultant services already granted by the Board and burdened by the CFC (and in some instances by the Board) at a 25% rate. They are also the same in substance as the employee/consultant claim preparation and related transition and shutdown expenses the CFC determined in *SUFI CFC III* should be recovered at a rate including overhead and profit. Thus, all the elements of issue preclusion are present, and the CFC erred as a matter of law in not also awarding SUFI overhead and profit at 25% for its out-of-pocket, attorney claim preparation costs. *See Ohio Willow Wood Co.*, 735 F.3d at 1342.

## II. The CFC Erred in Applying a FAR Regulation Inconsistent with Breach Law

The CFC noted in *SUFI CFC IV* what all concede—the FAR does not apply to this NAFI contract. (JA21; *see also* JA39-40.) However, it then proceeded to apply a FAR clause relating to "excessive" pass-through charges, a clause not incorporated in the Contract, purportedly as "guidance." (JA21.) Using an inapplicable FAR clause as guidance may sometimes be appropriate, but a necessary predicate to such use is that the clause be consistent with an analogous

Case: 14-5032 Document: 13 Page: 54 Filed: 03/11/2014

principle under the applicable law. Otherwise, using the FAR as "guidance" becomes semantic slight-of-hand, resulting in the court applying a provision that is concededly inapplicable. Under the rubric of "guidance," a FAR provision cannot be applied if it is inconsistent with otherwise applicable law. "Guidance" only goes so far as to help a tribunal apply the applicable law correctly in the particular situation.

The CFC did not specify in its decision any applicable principle under breach of contract law to which the FAR Pass-Through Charges clause was analogous. That is hardly surprising, because there is none. The "excessive pass-through" restriction in the FAR is a product of recent statutes and regulations for federal contracts that override the common law. It places the burden on the contractor to convince the CO that it "added value" to the subcontractor's efforts if the sub performs more than 70% of the total contract work; if the prime cannot meet that burden, the normal overhead and profit allocations will be denied on certain types of contracts. 48 C.F.R. § 52.215-23. This reverses the presumption the common law requires in favor of the innocent party (SUFI in this situation) once it has shown that its extra work is a result of the breach, and it is inconsistent with the breach law the CFC correctly cited in *SUFI CFC III* that all out-of-

Case: 14-5032 Document: 13 Page: 55 Filed: 03/11/2014

pockets the prime incurred as a result of the breach must presumptively be burdened with overhead and profit.[22]

There is no special "supplier" or "subcontractor" exception in the common law analogous to that articulated in the Pass-Through Charges clause. "Once a plaintiff has proved that certain work was undertaken because of the breach . . ., he is entitled to prove the amount of the associated cost (including both direct and indirect costs) by whatever reasonable techniques are available." *Energy Nw.*, 641 F.3d at 1309. Moreover, once the aggrieved party has made its *prima facie* case, such as SUFI did by proof of an applicable overhead rate on its direct costs negotiated in its Contract, the "burden then shifts to the government to present rebuttal evidence or argument showing that the contractor did not suffer . . . any loss . . . ." *Mech-Con Corp. v. West*, 61 F.3d 883, 886-87 (Fed. Cir. 1995); *see also S. Nuclear Operating Co. v. U.S.*, 637 F.3d 1297, 1304 (Fed. Cir. 2011).

---

[22] *See, e.g., Tip Top Constr., Inc. v. Donahoe*, 695 F.3d 1276, 1279-80, 1285 (Fed. Cir. 2012)(granting overhead on a contractor's consultant's claim preparation costs); *Energy Nw.*, 641 F.3d at 1308-10(entitlement even when overhead costs benefit all operations); *Veridyne Corp. v. U.S.*, 107 Fed. Cl. 762, 766-769 (2012)(accepting a DCAA 22% overhead burden); *see also Sys. Fuels, Inc. v. U.S.*, 666 F.3d 1306, 1312 (Fed. Cir. 2012); *Carolina Power & Light Co. v. U.S.*, 573 F.3d 1271, 1277 (Fed. Cir. 2009); *Ace Constructors, Inc. v. U.S.*, 70 Fed. Cl. 253, 281 (2006)(gross profit (overhead plus net profit) of 27%); *Clauss Constr.*, ASBCA No. 53953, 04-1 BCA ¶ 32,627 at 161,437 (2004)(gross profit on out-of-pocket costs of 24%); *W. Alaska Contractors, J.V.*, ASBCA No. 46033, 95-1 BCA ¶ 27,392 at 13,724 (1994)(39%).

Case: 14-5032 Document: 13 Page: 56 Filed: 03/11/2014

The CFC erred as a matter of law by applying FAR 52.215-23 as "guidance" when it ran counter to the applicable law that overhead and profit are to be applied on all expenses. It also erred by adopting the regulation's burden on the prime contractor—holding that "SUFI does not . . . provide adequate justification . . ." (JA21)—when the regulation in that respect also counters the common law. The CFC misused FAR 52.215-23 to override the applicable law.

## III. In Any Event, the CFC Misapplied the Pass-Through Charges Clause

Even if it were assumed *arguendo* that FAR 52.215-23 applied in full force to this non-FAR contract, the CFC still misapplied it. This was not a situation in which SUFI, the prime, provided "no or negligible value" to the total Contract work, or even the claim preparation and related transition, auditing, and negotiation tasks. To the contrary, SUFI and its personnel provided "added value" in multiple respects, as the uncontradicted record shows. Thus, adding overhead and profit is not just permitted, but required, under the clause, as well as under other FAR principles that are fully analogous to breach law.

The Pass-Through Charges clause is a special clause first required by a 2007 statute, over ten years after execution of the SUFI Contract.[23] It is designed to police a situation in which a prime's subcontractor basically serves as an

---

[23] It first applied only to DoD contracts and the clause appeared only in the DFARS. In 2009, it was applied by statute and FAR government-wide.

independent entity, performing without the prime's management or resources, either of personnel or facilities. *See* S. Rep. No. 109-254, 109th Cong., 2d Sess. at 363-64 (2006). To even come into play, the regulators require the subcontractor to do at least 70% or more of the total contract work. *See* 74 Fed. Reg. 52854 (Oct. 14, 2009); 48 C.F.R § 52.215-23 (clause § (c)). If the subcontractor is performing 70% or more of the contract work independently, without the prime's assistance or oversight, the clause disallows the prime's overhead and profit that would typically apply on a sub's charges. Here, C&M as the purported "subcontractor" did not perform 70% of the total contract work and, therefore, the clause is inapplicable.

The CFC ignored that the clause requires a "total contract" analysis, under which the clause obviously would require overhead and profit for SUFI because SUFI itself, not its attorneys, performed the large majority of the Contract effort, including administration. Instead, the CFC adopted the government's asserted test under the Pass-Through Charges clause as being whether the subcontractor, C&M in this instance, was "running the show" with regard to only the subcontracted effort, which was miniscule compared to the total effort. Even accepting the CFC's overly narrow program focus, "running the show" is decidedly not the standard of FAR 52.215-23; it obviously cuts much too wide a swath. Subcontractors are invariably retained by primes to "run the show" with respect to their assigned tasks; they are normally expert in what they have been asked to do,

Case: 14-5032    Document: 13    Page: 58    Filed: 03/11/2014

typically in ways the prime is not. It is not enough, therefore, that the subcontractor is "running the show" on its assigned tasks; the situation the clause deals with is when (a) the prime has taken a completely hands-off position, such that the subcontractor effectively serves as a prime contractor itself; (b) the titular prime has added zero material effort to effectuate the sub's tasks; and (c) the sub does at least 70% of the total contract work. The CFC erred as a matter of law in applying a laxer standard of a subcontractor "running the show" regarding only its assigned tasks.

In addition, the Pass-Through Charges clause proscribes overhead and profit on the subcontractor's charges only when the prime has provided "no or negligible value," which the clause defines as a prime not having provided "added value." 48 C.F.R. § 52.215.23. "Added value," in turn, "means that the Contractor performs subcontract management functions that the [CO] determines are a benefit to the Government (e.g., processing orders of parts or services, maintaining inventory, reducing delivery lead times, managing multiple sources for contract requirements, coordinating deliveries, performing quality assurance functions)." *Id*. The clause expressly states that "the costs of managing subcontracts and any applicable indirect costs and associated profit/fee based on such costs" do not qualify as an "excessive pass-through charge." *Id.* (emphasis added). Although the clause is not written with professional services providers such as lawyers in

Case: 14-5032 Document: 13 Page: 59 Filed: 03/11/2014

mind, the record is undisputed that SUFI did not simply stand on the sidelines and let C&M handle all the relevant tasks without assistance or oversight. Rather, the record shows that SUFI cooperated in performing the claim preparation and related negotiation and transition tasks, provided work facilities, and managed and supervised the overall effort.

Here is what the uncontested record shows, *inter alia*:

1. C&M's Claybrook traveled to SUFI's offices in Germany to do much of the work. (JA2833; *see also, e.g.*, JA 942-56 (expense reports).)

2. SUFI's employees and full-time consultant stationed in Germany provided many hours of assistance to Mr. Claybrook in preparing the claims. They did significant amounts of the damages presentations for the various claims, including running data queries, estimating extra work hours, and assembling backup information. They also worked directly with the AF on transition activities. (*E.g.*, JA2832-35, 2844-46, 2859; *see also, e.g.*, JA2000, 2559-61 (example of extra work and claim preparation time entries for calling card claim); JA2078-83 (overview of transition and shutdown activities).)

3. Mr. Myers, the Managing Director of SUFI who was stationed in New Jersey and not direct-charged, provided frequent oversight of C&M's efforts. He traveled to Germany and personally attended meetings with AF personnel discussing transition and shutdown activities. (JA2755-62, 1977.) Mr. Myers also

personally assisted in the claim preparation efforts. He testified without contradiction that he "worked closely with Mr. Claybrook" and "went through many drafts of the claims." (JA2758-59, 22.)

4. C&M gave Mr. Myers and Mr. Pearson, SUFI's CEO who was also stationed in New Jersey and not direct-charged, a final, full-day overview of the claim materials prior to C&M shipping them to the CO. They approved the final version before it was sent. (JA2761-62.)

5. Mr. Myers, along with Mr. Claybrook, met with the DCAA auditors assigned to the claims in SUFI's New Jersey offices to provide them an overview of the claims and to answer their questions. (JA2855, 936.)

6. C&M expenses were paid by check signed by Mr. Pearson and processed in SUFI's New Jersey headquarters. (JA1186-98, 2763-64, 2817-18, 2876-77.)

This undisputed record simply does not allow a conclusion that SUFI "added no or negligible value" as the term is defined in the Pass-Through Charges clause. It was clear error for the CFC to hold otherwise. That being the case, the normal rule of breach law that overhead and profit must be allowed on <u>all</u> costs applies here. This rule is reflected in the FAR, both in the Pass-Through Charges clause itself, which recognizes that its stated limitations are an <u>exception</u> to that normal rule, and in the FAR provisions that permit recovery of professional fees directly

Case: 14-5032 Document: 13 Page: 61 Filed: 03/11/2014

related to contract and claim work. *See id.* §§ 31.205-33(professional fees recoverable when not litigation-related), 31.205-42(g)(legal fees recoverable for "preparation and presentation" of termination claim). Indeed, SUFI's accounting expert at the trial testified, without contradiction, that SUFI's attorney's fees and expenses were appropriately direct-charged under the Contract and that generally accepted accounting principles as embodied in the FAR require overhead and profit to be added to all direct charges.[24] (JA1955, 3064-65, 3228-32.)

The CFC incorrectly applied the Pass-Through Charges clause, even if it were properly considered. For this additional reason, the ruling of the CFC that SUFI is not entitled to overhead and profit must be reversed.

## Conclusion

For the reasons stated above, the government's allegations of error are not well founded, but the CFC should have applied overhead and profit to the award. The CFC's decisions should be affirmed in all respects except for its failure to award overhead and profit. The Court should remand for the CFC to apply SUFI's 25% combined overhead and profit rate to the awarded fees and expenses.

---

24 *See, e.g.*, *Sys. Fuels*, 666 F.3d at 1312(ruling proof of overhead based on generally accepted accounting principles is adequate as a matter of law); *Energy Nw.*, 641 F.3d at 1309(same).

Respectfully submitted,

/s/ Frederick W. Claybrook, Jr.

Frederick W. Claybrook, Jr.
Brian T. McLaughlin
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorneys for SUFI Network Services, Inc.

March 7, 2014

CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I certify that I have this 7th day of March 2014 electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the appellate CM/EDCF system. I certify that all participants in the case are registered CM/EDCF users and that service will be accomplished by the CM/EDCF system upon the following individual:

Douglas T. Hoffman, Trial Attorney
Civil Division, Commercial Litigation Branch
United States Department of Justice
1100 L Street, N.W., Room 12036
Washington, D.C. 20005

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.

## CERTIFICATE OF COMPLIANCE

I, Frederick W. Claybrook, Jr., certify that the foregoing Brief for SUFI Network Services, Inc., complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B) and contains 12,227 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point.

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel: (202) 624-2695
Fax: (202) 628-5116

March 7, 2014

26156981.2