2014-5032, -5033

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SUFI NETWORK SERVICES, INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

---

Appeals from the United States Court of Federal Claims
in Case No. 11-CV-0453, Judge Thomas C. Wheeler

---

# SUFI'S REPLY BRIEF IN SUPPORT OF ITS CROSS-APPEAL

Frederick W. Claybrook, Jr.
Brian T. McLaughlin

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorneys for SUFI Network Services, Inc.

May 8, 2014

# Certificate of Interest

Counsel for the Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

   SUFI Network Services, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners and associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Crowell & Moring LLP; Frederick W. Claybrook, Jr.;
   Brian T. McLaughlin.

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.

May 8, 2014

Table of Contents

Table of Authorities……………………………………………………………iii

Summary of Argument ........................................................................................1

Argument..............................................................................................................3

I. The Attorney Work on Claim Preparation Was Not Different in Kind Than That of SUFI's Employees and Other Consultants and, Therefore, Issue Preclusion Applies ........................................................3

II. Burdens Are Due on Breach Damages, and, in Any Event, the Claim Preparation Work Is Properly Understood As Both Contract Performance and Administration .............................................6

III. The Pass-Through Charges Clause Was Inapplicable and, in Any Event, Was Misapplied.........................................................................8

IV. SUFI Met Its *Prima Facie* Burden to Prove a 25% Rate ...............................14

Conclusion ..........................................................................................................20

Table of Authorities

**Page(s)**

**Cases**

*Acme Process Equip. Co. v. U.S.*,
347 F.2d 509 (Ct. Cl. 1965), *rev'd on other grounds*, 385 U.S. 138 (1966) ....... 7

*Bill Strong Enterprises, Inc. v. Shannon*,
49 F.3d 1541 (Fed. Cir.), *rev'd in part on other grounds*, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) ....... 6, 7, 18

*Envtl. Safety Consultants, Inc.*,
ASBCA No. 53485, 05-1 BCA ¶ 32,903 (2005) ....... 18

*Hansen Bancorp, Inc. v. U.S.*,
367 F.3d 1297 (Fed. Cir. 2004) ....... 7

*Hydrothermal Energy Corp. v. U.S.*,
26 Cl. Ct. 1091 (1992) ....... 17

*Mech-Con Corp. v. West*,
61 F.3d 883 (Fed. Cir. 1995) ....... 19

*SUFI Network Servs., Inc.*,
ASBCA No. 55306, 09-1 BCA ¶ 34,018 (2008) ....... 15, 17

*SUFI Network Servs., Inc.*,
ASBCA No. 55306, 09-2 BCA ¶ 34,201 (2009) ....... 17

*SUFI Network Servs., Inc. v. U.S.*,
105 Fed. Cl. 184 (2012) ....... 19

*SUFI Network Servs., Inc. v. U.S.*,
108 Fed. Cl. 287 (2012) ....... *passim*

*Sys. Fuels, Inc. v. U.S.*,
666 F.3d 1306 (Fed. Cir. 2012) ....... 18

*Tip Top Construction, Inc. v. Donahoe*,
695 F.3d 1276 (Fed. Cir. 2012) ....... 18

Case: 14-5032    Document: 19    Page: 5    Filed: 05/08/2014

*Veridyne Corp. v U.S.*,
107 Fed. Cl. 762 (2012) ........................................ 18, 19

*W.F. Magann Corp. v. Diamond Mfg. Co.*,
775 F.2d 1202 (4th Cir. 1985) ........................................ 7

**Other Authorities**

48 C.F.R.

§ 15.404-4 ........................................ 19

§ 15.405 ........................................ 19

§ 31.205-33 ........................................ 13

§ 52.215-23 ........................................ 9

## Summary of Argument

The issue on SUFI's cross-appeal is framed by two, uncontested facts:

(1) companies are generally entitled to "burden" their direct costs with overhead and net profit (sometimes together called "gross profit"), and

(2) SUFI's non-litigation attorney fees and expenses involved in this case—for claim preparation, transition, and shutdown efforts (usually collectively called "claim preparation" by the CFC and the parties)—are direct costs.

From this, it follows that SUFI's award of the cost of its attorney fees and expenses should be burdened with an overhead and profit rate. To these uncontested facts, there is another of relevance:

(3) the CFC in a related case (currently on appeal)[1] held that SUFI was entitled to a 25% burden for overhead and profit on its direct costs, including claim preparation.

Assuming this ruling is not overturned on appeal (and SUFI does not believe that issue is even properly before the Court on appeal), the appropriateness of the 25% burden is established as a matter of law.

---

[1] The related, pending appeal is *SUFI Network Services, Inc. v. U.S.*, Nos. 2013-5039, 2013-5040. Oral argument was heard on February 4, 2014.

The CFC did not address issue preclusion or the general, common-law rule allowing a burden on direct costs. These failures were both in error, the second of which was compounded by a third error. Instead of applying the common law, the CFC relied on the newly minted Pass-Through Charges clause of the FAR as "guidance," in spite of its admitted inapplicability here, to find that SUFI's attorneys "ran the show" of the claim preparation efforts. Even assuming the clause's applicability, "running the show" is not the proper legal standard under it, a fact which the government does not rebut. Instead, the government attempts to justify those challenged rulings by assertions that

- issue preclusion should not apply because the claim preparation work of the attorneys was different in kind than that of SUFI's employees and consultants;
- the claim preparation work was not contract performance, and so no burden could be applied to the direct costs resulting from the AF's breaches;
- SUFI managers did not supervise its attorneys at all, and SUFI otherwise provided no added value to the claim preparation efforts; and
- SUFI did not make a *prima facie* case to support the 25% rate.

These defenses are all inconsistent with the uncontested facts, not to mention the applicable law. The government cannot avoid either issue preclusion or a proper application of the common law by alleging that the claim preparation work by SUFI's attorneys was somehow qualitatively different than the same work by its employees and consultants. Even were issue preclusion inapplicable here, SUFI proved its *prima facie* case for an applicable burden rate, and the government did not rebut it. SUFI is entitled to the same overhead and profit burden on its direct costs of attorney fees and expenses for claim preparation as it is on every other direct cost it incurred due to the AF's breaches.

## Argument

### I. The Attorney Work on Claim Preparation Was Not Different in Kind Than That of SUFI's Employees and Other Consultants and, Therefore, Issue Preclusion Applies

The government tries to deflect application of the CFC's prior ruling in *SUFI CFC III* that SUFI is entitled to a 25% burden on its direct costs by arguing (at 38-40) that the attorney work on claim preparation was different in kind and amount than that of SUFI's employees and consultants (the difference in amount is irrelevant and needs no further response). The whole argument misses the mark. The issue is not what kind of direct costs the attorney fees and expenses were and whether they were exactly the same as other direct costs. The issue is whether they were direct costs *vel non*, and the government concedes that they were. That is the

Case: 14-5032 Document: 19 Page: 9 Filed: 05/08/2014

issue that controls, as that was the issue decided by the CFC in *SUFI CFC III*. *SUFI Network Servs., Inc. v. U.S.*, 108 Fed. Cl. 287, 300-01 (2012) ("*SUFI CFC III*").

The government tries to granulate the issue by arguing that the attorney claim preparation work is different in kind than the other claim preparation work SUFI performed. This not only misidentifies the relevant issue; it also misstates the record.

In support of its argument, the government (at 38) fabricates a distinction between the claims preparation work by noting that it was performed by different actors, with the work at issue here performed by SUFI's attorneys while that addressed by the CFC in *SUFI CFC III* performed by its employees, a full-time consultant, and a claims consultant. This so-called distinction is legally meaningless. At the same time, the government fails to provide any real factual difference between the attorney and non-attorney work, the reason being that there is none.

The claim preparation work was a collaborative effort between SUFI's employees, consultants, and attorneys. They worked together to identify, describe, and monetize the claims. Obviously, SUFI's attorneys could not do this claims work out of whole cloth by themselves, and the record unambiguously shows that

they did not.[2] The attorneys did not do one type of claim preparation work and the employees and consultants another; they together performed the claim preparation tasks that were needed due to the AF's breaches, administrative work required by the Contract's Disputes clause. For the claim preparation efforts of SUFI's employees and consultant, the CFC applied the negotiated, market rates, which included overhead and profit burdens.[3] *Id*.

Last, the government points out (at 37), as did SUFI in its opening brief, that the decision in *SUFI CFC III* is currently on appeal before this Court in No. 2013-

---

[2] Examples from the work descriptions in Crowell & Moring time sheets at JA910-40 demonstrate the collaborative efforts. *See, e.g.*, JA912 (entries on Nov. 15, 16, 17, 18, and 19, 2004, re "Conferences with Ms. Ansola and Messrs. Smith and Broyles re various claims and calculation of damages"); JA913 (12/6/2004 entry re "Telephone conference with Ms. Ansola re schedules and claim damages"; 12/8/2004 entry re "telephone conference with Ms. Ansola re damages calculation tasks"); JA917 (2/10/2005 entry re "Preparation for and attendance at meeting with Mr. Stephens re claims."; 2/12/2005 entry re "Preparation of claims document, incorporating input from Mr. Stephens."); JA919 (entries on March 6, 7, 8, 9, 10, and 11, 2005, re "Meetings in Germany with Messrs. Myers, Smith, Broyles, and Congalton and Ms. Ansola re transition and claims."); JA923 (entries on April 19, 20, 21, and 22, 2005, re "Meetings re claims with Messrs. Smith, Congalton, and Broyles and Ms. Ansola."); *see also* JA1912-49 (SUFI extra work entries). SUFI notes for the Court that Ms. Ansola and Messrs. Smith and Broyles were SUFI employees; Mr. Congalton, a full-time consultant; and Mr. Stephens, a claims consultant (and former employee).

[3] Contrary to the government's assertion otherwise (at 39), SUFI expressly relied below on the CFC's award with respect to employee costs. (JA370("[T]hese costs are for the same type of work as the employee and consultant costs the ASBCA has already reimbursed for the very same claim preparation work in issue."))

Case: 14-5032 Document: 19 Page: 11 Filed: 05/08/2014

5039. While SUFI does not agree that the government has adequately raised the issue of the appropriateness of the 25% rate in that appeal, SUFI freely concedes that, if this Court reverses the CFC on that issue in No. 2013-5039, issue preclusion will not lie on it. But by the same token, if this Court does not reverse on that issue in No. 2013-5039, issue preclusion does lie.

## II. Burdens Are Due on Breach Damages, and, in Any Event, the Claim Preparation Work Is Properly Understood As Both Contract Performance and Administration

The government (at 43-44), citing to the inapplicable Federal Acquisition Regulation ("FAR"), asserts that profit can only be granted on contract performance, based on this faulty syllogism:

(a) contractors may receive profit for contract performance;

(b) SUFI's damages for claim preparation work were not for contractor performance; and

(c) therefore, SUFI may not receive profit.

This syllogism collapses at its first prong. For the conclusion to be sound, it must be true that contract performance is the only reason for which contractors may receive profit. But that is decidedly not true. Even assuming *arguendo* the applicability of FAR principles, contractors are also entitled to recover claim preparation costs (and applicable burdens) for contract administration, which includes claim preparation activities—even if they occur after completion of

Case: 14-5032 Document: 19 Page: 12 Filed: 05/08/2014

contract performance—as this Court explicated in *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541, 1549-51 (Fed. Cir.), *rev'd in part on other grounds*, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). And even more to the point for this non-FAR situation, contractors are also entitled to overhead and profit on breach damages, either as part of the market value of the goods and services or as part of the alternative measure of costs incurred, plus profit. *See Hansen Bancorp, Inc. v. U.S.*, 367 F.3d 1297, 1314-15 (Fed. Cir. 2004); *W.F. Magann Corp. v. Diamond Mfg. Co.*, 775 F.2d 1202, 1208 (4th Cir. 1985); *SUFI CFC III*, 108 Fed. Cl. at 300-01. The government's argument at its core is just a repackaging of the Board's assertion that profit is not allowed on breach damages—an assertion that the government confessed was error in related appeal No. 2013-5039.

The second prong of the government's syllogism is also faulty. The purpose of claims preparation work is to avoid the costs of litigation, for the benefit of both the government and contractors. *See Bill Strong*, 49 F.3d at 1549-50. It is work required by the Contract under the Disputes clause, and, thus, is appropriately categorized as "contract performance," as well as "contract administration" and "breach damages." *See Acme Process Equip. Co. v. U.S.*, 347 F.2d 509, 530 (Ct. Cl. 1965) (equating restitutionary breach damages to costs of performance), *rev'd*

Case: 14-5032 Document: 19 Page: 13 Filed: 05/08/2014

*on other grounds*, 385 U.S. 138 (1966). The government's syllogism holds no water.

## III. The Pass-Through Charges Clause Was Inapplicable and, in Any Event, Was Misapplied

The government does not contest that the Pass-Through Charges clause is a recent addition to the Federal Acquisition Regulation ("FAR"); that the clause is not included in the parties' Contract; that the clause is only an optional clause that the government, without support, proffers as necessary guidance; and that the clause was added to override, in specified situations, the common-law principle that all direct costs of the prime contractor are entitled to be burdened by overhead and profit.[4] Because this unincorporated clause is in contravention of the common law which applies here, it cannot properly be applied, even as "guidance," and the CFC erred in doing so. Even then, the CFC also erred as a matter of law in reading the clause to deny an overhead and profit burden to the prime if the subcontractor was "running the show" on its assigned tasks. This proves overmuch, as a subcontractor almost always "runs the show" with its assigned work, a fact the government does not dispute.[5]

---

4 The government does not identify any common law embracing the exclusions attendant to the Pass-Through Charges clause.

5 As SUFI noted in its opening brief (at 46-47), the Pass-Through Charges clause on its face is not applicable here because SUFI's "subcontractor,"
(Continued...)

Case: 14-5032 Document: 19 Page: 14 Filed: 05/08/2014

To mask this obvious flaw in the legal standard the CFC applied, the government makes unsubstantiated claims that SUFI personnel "added nothing to the work of its attorneys" (at 51), with the government even going so far as to assert that SUFI "abrogat[ed] . . . any role in supervising its attorneys" (at 46). Such assertions, while they might be necessary for the government to justify the CFC's ruling, have zero support in the record. Far from "abrogating" any role in supervising and assisting their attorneys, Mr. Claybrook's timesheets alone show no less than 75 entries relating to conversations, meetings, and correspondence with SUFI's Managing Director, Steve Myers, and 25 with SUFI's CEO, James Pearson, who are both indirect personnel.[6]

---

Crowell & Moring, did not perform 70% or more of the total contract work. 48 C.F.R. § 52.215-23(c). The government denies this plain reading of the clause and responds (at 51) that the 70% test focuses solely on the subcontract. In essence, the government sets up a straw man and knocks it down, arguing that the test is whether SUFI's subcontractor performed more than 70% of its subcontract, which is no test at all. To the contrary, the relevant test is whether the subcontract work constitutes more than 70% of the total work under the overall prime contract (or task or delivery order) to which the subcontract relates. Application of the government's approach would characterize all indirect costs of a prime contractor as excessive pass-through charges.

[6] JA910-40; *see, e.g.*, JA910 (8/30/2004 entry re "preparation of memoranda to Mr. Myers re [outline for breach related to calling cards]"); JA911 (11/4/2004 entry re "telephone conference with Messrs. Pearson and Myers re claims"); JA914 (Dec. 13 and 14, 2004, entries re "Meetings with Messrs. Pearson and Myers . . . re damages claims and transition"); JA917 (Feb. 7 and 8, 2005, entries re "meetings with Messrs. Pearson and Myers" re

(Continued...)

The uncontroverted evidence also shows that SUFI provided ample support to the claim preparation efforts of the type that satisfies the Pass-Through Charges clause. While the examples listed in the clause for the types of indirect activity that entitles a prime to apply an overhead and profit burden to the direct costs of its subcontractor are tailored more to a supply than a services contract, the analogies are not hard to draw to this situation (we emphasize that the clause only identifies examples for supply contracts and is not by any means an exhaustive list):

- "processing orders of parts or services": SUFI obviously requested its attorneys to supply assistance, and SUFI received and reviewed the services of its attorneys (*e.g.*, JA1186-98, 2757-66, 2817-18, 2829-30, 2862-63, 1186-98);

---

"meeting with Air Force" and "strategy"); JA919 (March 7-11, 2005 entries re "meetings in Germany" with Mr. Myers and SUFI employees and consultants "re transition and claims"); JA919 (3/12/2005 entry re "meeting with Mr. Myers re shutdown and claims"); JA929 (6/1/2005 entry re "telephone conferences with Mr. Pearson re status and shutdown activities"); JA 933 (6/27/2005 entry re "telephone conferences with . . . [Mr.] Pearson" re "preparation of damages charts" and "review of documents for support"); JA934 (6/29/2005 entry re "meeting with Messrs. Pearson and Myers" re "finalization of claim document and damages charts"); JA 935 (9/19/2005 entry re "telephone conference with Mr. Pearson" re "DCAA audit request"); JA936 (9/28/2005 entry re "Preparation for and attendance at meetings in NJ with DCAA auditors and Mr. Myers re claims"); JA937 (10/19/2005 entry re "Correspondence with Mr. Myers re response to Air Force").

Case: 14-5032 Document: 19 Page: 16 Filed: 05/08/2014

- "maintaining inventory": SUFI made its employees available to provide the information needed to produce the services required for the claim preparation and other activities; the attorney work could not have been done without that inventory of needed information supplied by SUFI itself (*e.g.*, JA910-40 (Crowell time entries showing collaboration with SUFI employees), 1912-49 (SUFI extra work charts), 2755-62, 2832-35, 2844, 2846, 2860-62, 3009);
- "reducing delivery lead times": by working as a team, SUFI's employees performed much of the work that attorneys or other consultants would otherwise have had to perform and reduced the time needed by outside consultants and the duration to complete the effort (JA1912-49, 2762-63, 2832-35, 2844 (preparing source data), 2846, 2859, 2864, 3056-64, 1953-55; *see also, e.g.*, JA2000, 2559-61 (example of extra work and claim preparation entries for calling card claim); JA2078-83 (overview of transition and shutdown activities));
- "managing multiple sources for contract requirements": SUFI prepared 22 claims concerning which the Board awarded damages (out of 29 claims in total); SUFI's direct-charged and indirect personnel assisted in working those multiple claims simultaneously and provided needed facilities for performing the work, including by

Case: 14-5032 Document: 19 Page: 17 Filed: 05/08/2014

the attorneys (JA41, 912, 919, 940, 942-56, 1014-50 (showing travel to Germany and New Jersey), 1912-49, 2758-62, 2832-35, 2869);

- "coordinating deliveries": SUFI direct and indirect personnel assisted with the claim preparation activities; met, communicated, and coordinated with the attorneys to perform the efforts, and also worked the multiple claims largely simultaneously (JA910-40, 1912-49, 2758-62, 2832-35, 2844, 2846, 2855, 2860);
- "performing quality assurance functions": SUFI's direct and indirect employees reviewed attorney work product and assisted attorneys to revise, improve, and supplement that work product, based on their firsthand information; SUFI's direct and indirect employees also reviewed the work for accuracy and approved the claims in their final, submitted form; and SUFI's indirect employees provided oversight of its attorneys on a regular basis (JA22, 910-40, 1912-49, 1977, 2755-62, 2832-35, 2844, 2846).

From this overview, it is obvious that SUFI was not an idle, hands-off prime contractor when it came to the claim preparation and transition and shutdown activities. SUFI employees, both direct-charged and indirect, contributed significantly to the effort and worked hand-in-glove with SUFI's attorneys. SUFI also provided the workspace for much of the work that was done. The record

Case: 14-5032 Document: 19 Page: 18 Filed: 05/08/2014

permits no conclusion other than that SUFI "added value" to the efforts as that term is defined in the Pass-Through Charges clause. The government cannot just wish away this evidence with unsupported, contrary bottom-liners.

The Pass-Through Charges clause, an exception to the common law, is also an exception to the normal rule of the FAR, which generally tracks the common law that direct costs should be burdened with overhead and profit. SUFI supported this with the accounting expert testimony of Mr. Calhoon. He testified, uncontested by the government, including by its own accounting expert, that SUFI's attorney fees for claim preparation were direct costs of a type similar to all of SUFI's other direct costs and should, similarly, have overhead and profit applied to them under normal accounting procedures. (JA1955, 3064-65, 3092, 3182-83, 3228-29, 3236-37.) He explained that this was consistent with the FAR, which is more restrictive than the common law, but expressly allows for non-litigation attorney and other consultant fees to be recovered as direct costs subject to burdening. *See* 48 C.F.R. § 31.205-33. (JA3092, 3228-29.) Mr. Calhoon's testimony is not undermined by the government quoting its own question of him out of context and not including Mr. Calhoon's response, which gives the proper context.[7]

---

[7] The full transcript passage of relevance, with the material quoted by the government (at 53) in italics, is as follows:

(Continued...)

IV. SUFI Met Its *Prima Facie* Burden to Prove a 25% Rate

Finally, the government adds a diversion, claiming (at 40-43) that SUFI did not put on sufficient proof to support its 25% combined overhead and profit rate. The short answer is that SUFI did not have to do so in the proceedings below. The CFC in related Case No. 11-804C had already set the 25% rate as what should be applied to SUFI's out-of-pocket costs. *SUFI CFC III*, 108 Fed. Cl. at 301.

---

> Q. Your opinion does not distinguish between attorney's fees incurred pursuant to a contingent fee relationship with outside counsel and other types of attorney's fees, does it?
>
> A. No, I'm just treating them as incurred costs.
>
> Q. You presumed a time and materials type fee arrangement between SUFI and its attorneys, is that correct?
>
> A. Yes.
>
> Q. And you presumed a time and material type fee arrangement *based on the discussion that you had with Mr. Claybrook on how you should think of the attorney's fees as if they were incurred just like any other service provider in preparation of claims like a consultant or SUFI employees' travel costs, et cetera*, is that correct?
>
> A. Yes. They were incurred costs and I thought of them as if they were incurred on a time and materials basis.

(JA3096-97.)

Case: 14-5032 Document: 19 Page: 20 Filed: 05/08/2014

Nonetheless, there was more than adequate evidence of record on which the CFC could have relied and which satisfied SUFI's *prima facie* case for the 25% combined rate. For example:

- the Board applied the 25% rate to some of Mr. Stephen's claim preparation consultant work that was a direct, out-of-pocket cost to SUFI, *SUFI Network Servs., Inc.*, ASBCA No. 55306, 09-1 BCA ¶ 34,018 at 168,291 (2008) ("*SUFI ASBCA VIII*");
- the Board in other instances applied a 10% rate to direct costs, *e.g.*, *id.* at 168,224;
- as the Board (errantly) declined to award net profit on breach damages, *id.* at 168,256, this 10% rate was necessarily a "gross profit" rate consisting entirely of overhead, as the CFC observed in *SUFI CFC III* 108 Fed. Cl. at 300-01 ("The Board . . . allowed only ten percent . . . for overhead recovery on out-of-pocket expenses.");
- the Board found that a 10% rate for overhead was reasonable in *SUFI ASBCA VIII*, 09-1 BCA at 168,224;
- the Contract required the parties after award to negotiate rates on a "time and materials" basis for SUFI's work to modify the system to meet future requirements (JA1973);

Case: 14-5032 Document: 19 Page: 21 Filed: 05/08/2014

- SUFI and the AF negotiated extra work rates and also negotiated a Contract section for "additional work requested," in which they agreed that SUFI could provide cost proposals "of no more than 25 percent over cost" (JA1971 (§3.11.1));
- SUFI Managing Director Myers testified, without contradiction, that he had negotiated the 25% rate in Contract §3.11.1 and it was for net profit only, *i.e.*, that it did not include a contribution for overhead costs[8] (JA2782-84);
- Mr. Calhoon, SUFI's accounting expert, testified unrebutted that combined overhead and profit rates are common among smaller government contractors not covered by the FAR cost principles or the Cost Accounting Standards; that a 25% combined rate is "very low"; and that a 15% profit rate "is common on a firm, fixed price contract where the contractor retains all performance and cost risk . . ." (JA3229-32);

[8] The government asserts (at 42)—wrongly and without support—that the 25% rate as negotiated in the Contract for additional work was a combined rate, including both overhead and net profit.

Case: 14-5032 Document: 19 Page: 22 Filed: 05/08/2014

- the market rates negotiated between the parties for the labor of the SUFI employees and a consultant averaged a combined burden of 138.86% (unweighted).[9]

The government put on no contrary evidence at trial.[10] Instead, its tack in its briefing (at 42-46) is a full-scale resort to the FAR standards for cost allowability and the FAR profit guidelines. But the FAR does not apply to this Contract, and this is a breach damages case. For that reason, the rulings in *Hydrothermal Energy Corp. v. U.S.*, 26 Cl. Ct. 1091 (1992), requiring a full cost build-up as support for a requested rate, do not apply here. There, the FAR did apply to the contract, and the case did not involve a breach for which market rates applied. Nor did the 70% overhead-only rate provisionally allowed in *Hydrothermal* have any independent confirmation in the record, *id.* at 1103-04, while the 25% combined rate SUFI requests has ample confirmation, as outlined above. Add to that, *Hydrothermal*'s

---

9 The calculations are made by taking the direct employee costs as found by the Board in *SUFI ASBCA VIII*, 09-1 BCA at 168,219, with Ms. Ansola's direct cost as adjusted in *SUFI ASBCA IX*, ASBCA No. 55306, 09-2 BCA ¶ 34,201 at 169,094 (2009), and dividing those rates into the market rates negotiated by the parties that included burdens, which were $90.00/hr. for Ansola, Stephens, Congalton, and Holzapfel and $68.00/hr. for Broyles and Smith. (*E.g.*, JA1912-14, 1923.)

10 The government does cite the DCAA report, but DCAA only provided a "no opinion" statement concerning the 25% rate; it did not question or reject it. (JA3093-95.)

stringent application of the FAR to disregard even provisional rates has never been followed by another judge of the CFC, much less this Court.

Agreed rates allow the parties to avoid a full cost build-up exercise. *See, e.g.*, *Envtl. Safety Consultants, Inc.*, ASBCA No. 53485, 05-1 BCA ¶ 32,903 at 153,022 (2005) (adopting net profit rate previously used by the parties). As Mr. Calhoon testified, combined rates are standard accounting practice for small companies such as SUFI with contracts not covered by the FAR cost principles. (JA3229-32.) *Cf. Sys. Fuels, Inc. v. U.S.*, 666 F.3d 1306, 1311-12 (Fed. Cir. 2012) (accepting overhead findings supported by standard accounting practices for the company). This is confirmed by the recent non-FAR decisions by this Court in *Tip Top Construction, Inc. v. Donahoe*, 695 F.3d 1276 (Fed. Cir. 2012), and by the CFC in *Veridyne Corp. v U.S.*, 107 Fed. Cl. 762 (2012). In the latter case, the CFC accepted a 22% overhead-only rate for DCAA based on nothing more than the agency's proffer of it (the FAR not applying to DCAA), *id*. at 766-69, and in *Tip Top* this Court accepted proffered rates on the direct costs of a subcontractor and claims consultant that accumulated to 18%. 695 F.3d at 1279-80, 1285.[11]

---

[11] The government attempts (at 48) to distinguish *Tip Top* on the basis that it involved contract administration costs. This is no distinction at all—as noted above (*see supra* at 6-7), the Federal Circuit in *Bill Strong*, 49 F.3d at 1549-50, held that claim preparation is a type of contract administration cost. And, applying that precedent to this case, the CFC expressly found that "SUFI's attorneys' fees claim involves compensable contract administration

(Continued...)

Case: 14-5032 Document: 19 Page: 24 Filed: 05/08/2014

Even applying the FAR's profit guidelines as "guidance" substantiates the reasonableness of SUFI's combined rate, which includes 15% for profit on top of the 10% for overhead costs that the Board found reasonable. The profit guidelines do not specify a maximum profit rate for fixed-price, no-cost contracts, 48 C.F.R. § 15.405, but the maximum rate specified for the closest analogous contract type, for "experimental, developmental, or research work performed under a cost-plus-fixed-fee contract," is 15%. *Id*. §15.404-4(c)(4)(i)(A). Obviously, SUFI had much greater risk on its no-cost Contract, under which it assumed the entire cost and performance risk on a new venture, and, thus, a greater profit rate than 15% would be acceptable per the FAR.

In sum, SUFI met its *prima facie* burden to establish the 25% combined rate. The burden then shifted to the Air Force to put forward rebuttal evidence, which it concededly did not. *See Mech-Con Corp. v. West*, 61 F.3d 883, 886-87 (Fed. Cir. 1995). Thus, as a matter of law, irrespective of issue preclusion, the 25% rate had to be applied. At a minimum, however, the CFC had discretion on this record

---

costs within the meaning of *Bill Strong*." *SUFI Network Servs., Inc. v. U.S.*, 105 Fed. Cl. 184, 195 (2012) ("*SUFI CFC II*"); JA47. The government did not appeal that ruling. Nor does the government's argument (at 48-49) that *Veridyne* involved only one level of overhead hold any water because there, the CFC awarded DCAA's billing rate plus the proffered overhead factor. 107 Fed. Cl. at 766. The government has not shown that DCAA's billing rate itself did not already include overhead or profit allowances before addition of the 22% proffered overhead rate on top of the billing rate.

Case: 14-5032 Document: 19 Page: 25 Filed: 05/08/2014

(which also contained additional evidence related to SUFI's indirect costs not recounted above) to set a profit and overhead rate, and, in the alternative, SUFI is entitled to a remand so that the CFC can make findings on the appropriate burden based on the record.

Conclusion

SUFI should be awarded its overhead and profit burden on the direct cost of its attorney fees and expenses. It is entitled to it under issue preclusion principles; it is entitled to it under the common law; and it is entitled to it under a proper reading of the (inapplicable) Pass-Through Charges clause. This Court should remand to the CFC with instructions to apply the 25% burden to the awarded damages (or, at a minimum, to make findings on the applicable rate to be applied based on the record evidence).

Respectfully submitted,

/s/ Frederick W. Claybrook, Jr.

Frederick W. Claybrook, Jr.
Brian T. McLaughlin
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500
Attorneys for SUFI Network Services, Inc.

May 8, 2014

CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I certify that I have this 8th day of May 2014 electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the appellate CM/EDCF system. I certify that all participants in the case are registered CM/EDCF users and that service will be accomplished by the CM/EDCF system upon the following individual:

Douglas T. Hoffman, Trial Attorney
Civil Division, Commercial Litigation Branch
United States Department of Justice
1100 L Street, N.W., Room 12036
Washington, D.C. 20005

/s/ Frederick W. Claybrook, Jr.
Frederick W. Claybrook, Jr.

CERTIFICATE OF COMPLIANCE

I, Frederick W. Claybrook, Jr., certify that the foregoing Brief for SUFI Network Services, Inc., complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(C) and contains 4,603 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point.

/s/ Frederick W. Claybrook, Jr.

Frederick W. Claybrook, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel: (202) 624-2695
Fax: (202) 628-5116

May 8, 2014