No. 2014-5032, -5033

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

SUFI NETWORK SERVICES, INC.,

Plaintiff – Cross-Appellant,

v.

THE UNITED STATES,

Defendant – Appellant.

_____

Appeal from the United States Court of Federal Claims
in 11-CV-453, Judge Thomas C. Wheeler

_____

BRIEF FOR DEFENDANT-APPELLANT, THE UNITED STATES - REPLACEMENT

_____

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

DOUGLAS T. HOFFMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-0547
Fax: (202) 514-8624

September 12, 2014          Attorneys for Defendant - Appellant

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW .......................................................................1

STATEMENT OF THE CASE..............................................................................2

SUMMARY OF THE ARGUMENT .......................................................................7

ARGUMENT ...................................................................................................8

I.    Standard Of Review And Legal Framework ...................................................8

II.   The Court Improperly Excused SUFI From Exhausting Its Administrative Remedies.................................................................................................8

III.  The Court Improperly Made Its Award Pursuant To The Changes Clause ..12

IV.  The Court Improperly Permitted Recovery Of Interest From When Work Was Performed ...........................................................................................17

V.   The Court Improperly Permitted Recovery Of Fees At SUFI's Attorneys' Standard Rates .........................................................................................22

CONCLUSION ...............................................................................................25

Cases

*American Airlines, Inc. v. United States*,
   77 Fed. Cl. 672 (2007) .........................................................................................21

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
   194 F.3d 1367 (Fed. Cir. 1999) ................................................... 17, 18

*Blum v. Stenson*,
   465 U.S. 886 (1984).......................................................................... 23, 24

*First Fed. Sav. & Loan Ass'n of Rochester v. United States*,
   88 Fed. Cl. 572 (Fed. Cl. 2009) ...........................................................24

*Ginsberg v. Austin*,
   968 F.2d 1198 (Fed. Cir. 1992) ................................................... 17, 21

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983).............................................................................22

*In Re Sufi Network Servs., Inc.*,
   ASBCA No. 54503, 04-2 B.C.A. ¶ 32714, 2004 WL 1856000 (Aug. 17, 2004)..3

*Jones v. United States*,
   371 F.2d 442 (Ct. Cl. 1967) ................................................................21

*L. L. Hall Constr. Co. v. United States*,
   379 F.2d 559 (Ct. Cl. 1966) ...............................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
   543 F.3d 710 (Fed. Cir. 2008).........................................................8, 9

*Maine Yankee Atomic Power Co. v. United States*,
   225 F.3d 1336 (Fed. Cir. 2000) ............................................. 4, 10, 11

*McKart v. United States*,
   395 U.S. 185 (1969)...............................................................................4

*Motion Picture Ass'n of Am., Inc. v. Oman*,
  969 F.2d 1154 (D.C. Cir. 1992) ...........................................................21

*Paccon, Inc. v. United States*,
  399 F.2d 162 (Ct. Cl. 1968) ...............................................................23

*Phillips v. Gen. Servs. Admin.*,
  924 F.2d 1577 (Fed. Cir. 1991) ........................................... 18, 19, 20

*Seaboard Lumber Co. v. United States*,
  308 F.3d 1283 (Fed. Cir. 2002) ...........................................................8

*SUFI Network Servs., Inc. v. United States*,
  108 Fed. Cl. 287 (2012) ...............................................................5, 12

*United Partition Sys., Inc. v. United States*,
  95 Fed. Cl. 42 (2010) ...................................................................18, 19

*United States v. Childs*,
  266 U.S. 304 (1924)............................................................................21

## Statutes

28 U.S.C. § 2412(f)..............................................................................20

41 U.S.C. §§ 321-22 (2006).....................................................................5

## Regulations

48 C.F.R. § 52.243-1.............................................................................15

48 C.F.R. Ch. 2, App. A.........................................................................11

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, a related appeal is presently before this Court. Specifically, the Court heard oral argument in SUFI Network Services, Inc. v. United States, 2013-5039, -5040, on February 4, 2014. In that case, the Government appealed the Court of Federal Claims's November 8, 2012 decision granting plaintiff's motion for judgment upon the administrative record and the corresponding November 8, 2012 judgment granting SUFI Network Services, Inc. recovery of $114,138,259.99, plus interest, and reasonable costs pursuant to Rule 54(d). The November 8, 2012 judgment previously appealed relates to the underlying claim, whereas the present appeal relates to the attorney fees and expenses that SUFI allegedly incurred to prepare the underlying claim.

## JURISDICATION

Defendant-appellant appeals from the Court of Federal Claims's October 16, 2013 decision awarding SUFI Network Services, Inc. $697,702.50 in attorney fees and $25,486.81 in expenses, plus cumulative interest at the Federal Reserve Board's prime rate, until payment, and the corresponding October 17, 2013 judgment. The United States filed a notice of appeal on January 6, 2014, that was timely pursuant to 28 U.S.C. § 2522, RCFC 58.1, and Fed. R. App. P. 4, and this Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

SUFI NETWORK SERVICES, INC.,

Plaintiff  - Cross-Appellant,

v.

THE UNITED STATES,

Defendant - Appellant.

_____

Appeal from the United States Court of Federal Claims
in 11-CV-453, Judge Thomas C. Wheeler
_____

BRIEF FOR DEFENDANT-APPELLANT, THE UNITED STATES
_____

ISSUES PRESENTED FOR REVIEW

1.      Whether plaintiff may be excused from its failure to exhaust

administrative remedies because the contracting officer issued a "deemed denial"

approximately six months after plaintiff filed its claim.

2.      Whether plaintiff may recover attorney fees and expenses to prepare a

claim, pursuant to its contract's Changes clause, when such costs are unrelated to

the changes encompassed by the Changes clause's explicit terms.

3. Whether plaintiff, that has a contingent-fee arrangement with its attorneys, "actually incurred" damages under the parties' Partial Settlement Agreement when its attorneys perform their work, or rather, when plaintiff pays for the work.

4. Whether plaintiff may recover attorney fees that have been calculated using the attorneys' standard rates after refusing to provide documentation that would establish the hourly rates that plaintiff actually paid its attorneys.

## STATEMENT OF THE CASE

SUFI Network Services, Inc. (SUFI) entered into a contract in 1996 with a non-appropriated fund instrumentality, the Air Force Nonappropriated Funds Purchasing Office (AFNFPO, or Air Force), under which SUFI was to install and operate telephone systems in Europe. Pursuant to the terms of the contract, SUFI installed its network at its own cost and attempted to recover those costs, along with any profit, by providing long-distance calling services. Disagreements arose throughout the contract's term. The most significant disagreement occurred when the Air Force determined that SUFI had to accept calling cards from competing long-distance providers for use over SUFI's network. The resulting administrative proceeding before the ASBCA led to an August 17, 2004 decision entering a declaratory judgment that the AFNAFPO was in material breach, entitling SUFI to cancel the contract, which it did eight days later. *In Re Sufi Network Servs., Inc.*,

ASBCA No. 54503, 04-2 B.C.A. ¶ 32714, 2004 WL 1856000 (Aug. 17, 2004); JA1974-76.

After SUFI cancelled the contract, on April 1, 2005, the parties executed a Partial Settlement Agreement (PSA) that provided for SUFI to stop work by May 31, 2005, and for the Air Force to assume the operation and ownership of the SUFI network at a cost of $2,275,000. JA1978-80. The PSA also provided for interest on SUFI's damages. JA1979-80. The Air Force assumed ownership of the SUFI network on June 1, 2005.

On July 1, 2005, SUFI submitted a $130,308,071.53 claim to the AFNAFPO. JA1981; JA2083. The claim did not include any claim preparation costs for SUFI's *attorneys* (attorney fee claim), though it did include claim preparation costs for SUFI *employees* (employee fee claim). *See* JA2000. Nevertheless, when SUFI appealed the deemed denial of its claim to the ASBCA in January 2006, it belatedly sought to resolve its attorney fee claim. Specifically, SUFI added the issue of liability for its attorney fee claim during post-hearing briefing at the ASBCA. JA3326 ("SUFI's brief discusses 'Claim Preparation Attorneys' Fees and Expenses (app. br. at 424-33)'").

In November, 2008, the ASBCA – in its eighth decision – awarded SUFI $3.8 million on its $130.3 million claim. SUFI filed three motions for reconsideration before the ASBCA that had a net result of raising SUFI's recovery

to just over $7.4 million.  In addition to its $7.4 million, SUFI also recovered $3.5 million in interest pursuant to the terms of the parties' PSA.  Although the ASBCA granted SUFI virtually its entire *employee* fee claim, it did not award SUFI any portion of its *attorney* fee claim.  Neither SUFI's three motions for reconsideration nor any of the ASBCA's three decisions on reconsideration referenced SUFI's attorney fee claim.

Undeterred, SUFI submitted its attorney fee claim to the AFNAFPO contracting officer on December 29, 2010.  JA809-812.  On July 7, 2011, Air Force counsel emailed SUFI that it could consider the claim deemed denied.  JA18.  SUFI filed a complaint in the United States Court of Federal Claims the following day (SUFI I).  JA72.

We filed a motion to dismiss that presented one basis relevant to this appeal.  Specifically, we maintained that SUFI failed to exhaust its contractually-required administrative remedies by not exercising its right to appeal to the ASBCA.  *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1340 (Fed. Cir. 2000) ("Where a federal contract contains such a [non-CDA] disputes clause, and also provides a specific administrative remedy for a particular dispute, the contractor must exhaust its administrative contractual remedies prior to seeking judicial relief.") (citing, *inter alia*, *McKart v. United States*, 395 U.S. 185, 193 (1969)).  Briefing on this motion was completed on November 21, 2011.  JA97; JA66 at 10.

Nine days after briefing on the Government's motion to dismiss the attorney fee claims was completed, SUFI filed a second complaint seeking review of the ASBCA's eighth decision (and its three reconsideration decisions) on 11 of the 28 counts under the Wunderlich Act, 41 U.S.C. §§ 321-22 (2006). After filing cross-motions for judgment upon the administrative record, the parties participated in a one-day hearing. The court awarded SUFI $114 million over the $7.4 million awarded by the ASBCA. *SUFI Network Servs., Inc. v. United States*, 108 Fed. Cl. 287 (2012) (SUFI II). We appealed that decision to this Court and oral argument was heard on February 4, 2014.

Not long after SUFI filed its complaint in SUFI II (the ASBCA appeal) the court denied our motion to dismiss in SUFI I – the attorney fee claim. JA57-64. Although conceding that SUFI had not exhausted its administrative remedies, the court excused the requirement reasoning that it "do[es] not apply where the agency has breached a contractual disputes clause or where no effective remedy existed in the first place." JA62. The court explained that "the contracting officer materially breached the Disputes clause by failing to issue a final decision within a reasonable timeframe." *Id*.

Following the court's denial of our motion to dismiss, we filed our answer. JA104; JA109. Twelve days later, SUFI filed a motion for summary judgment on liability and quantum of its attorney fee claim. JA110; JA121. Shortly thereafter,

the court accepted the parties' proposal to decide liability on cross-motions for summary judgment and stayed briefing on quantum.

Our cross-motion for summary judgment explained that SUFI could not recover its attorney fee claim because the fees were incurred after SUFI elected material breach, no contract clause permitted their recovery, and no contract clause made the fees a direct and foreseeable consequence of any Air Force breach. SUFI disagreed, arguing that its election to cancel the contract did not preclude it from relying upon the Disputes clause, and that such clause satisfied the required "foreseeability" element of a breach damages claim. The parties thoroughly briefed these issues. The parties did not brief the Changes clause as either a stand-alone basis of recovery or as indicating foreseeability. Despite the Changes clause receiving no attention, the court found SUFI entitled to an equitable adjustment under the Changes clause for the Air Force's material breach. JA44, 47. The court also held – without further explanation, but presumably based upon its Changes clause analysis – "that SUFI's attorneys' fees claim is 'a direct and foreseeable consequence' of the AFNAFPO's material breach." JA47.

After the court granted SUFI's cross-motion for summary judgment, the parties turned to the proper quantum of SUFI's attorney fee claim. After a three day trial, the court awarded SUFI $723,189.31 in damages, plus interest. JA22. The court found: all of SUFI's claimed hours and expenses reasonable, the

standard rates of SUFI's attorneys reasonable, but that SUFI was not entitled to a 25 percent markup for overhead and profit. JA18-22. Regarding interest, the court permitted recovery of interest from the date attorney work was performed. JA21. This appeal followed.

<h2 style="text-align:center">SUMMARY OF THE ARGUMENT</h2>

The court committed four errors. First, the court improperly denied our motion to dismiss by excusing SUFI from exhausting its administrative remedies, despite recognizing that SUFI was, in identical circumstances, able to exhaust its administrative remedies without receiving a contracting officer's final decision. Second, the court errantly granted SUFI's motion for summary judgment pursuant to the contract's Changes clause because that clause does not contemplate recovery of amounts unrelated to the specific changes contemplated by the clause's explicit terms. Third, the court permitted SUFI to recover interest from the date SUFI's attorneys performed the service at issue, contrary to the PSA provision that only permits the recovery of interest from when "damages are actually incurred[.]" Fourth, the court permitted SUFI to recover amounts based upon its attorneys' standard rates, despite SUFI's refusal to produce documents that would have established the hourly rates SUFI actually paid before entering into a contingent-fee arrangement.

<u>ARGUMENT</u>

I.    <u>Standard Of Review And Legal Framework</u>

The trial court's findings of fact are reviewed under the "clearly erroneous" standard, while its legal holdings are reviewed de novo. *Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1292 (Fed. Cir. 2002). Contract interpretation is a question of law. *Lucent Techs., Inc. v. Gateway, Inc.,* 543 F.3d 710, 717 (Fed. Cir. 2008) (citation omitted).

II.   <u>The Court Improperly Excused SUFI From Exhausting Its Administrative Remedies</u>

In its decision denying the Government's motion to dismiss, the trial court improperly excused SUFI from exhausting its administrative remedies because appeal to the ASBCA was inadequate or unavailable. JA62-63.

Review jurisdiction for SUFI's claim is provided by the contract's Disputes clause. That clause provides that SUFI's sole path for review is the ASBCA. The clause reads as follows:

2. DISPUTES (1979 DEC)

a.  Except as otherwise provided in this contract, any dispute or claim concerning this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall state his decision in writing and mail or otherwise furnish a copy of it to the Contractor. Within 90 days from the date of receipt of such copy, *the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Armed Services Board of*

8

> *Contract Appeals*, and the decision of the Board shall be final and conclusive; provided that *if no such appeal is filed, the decision of the Contracting Officer shall be final and conclusive*. The Contractor shall be affirmed an opportunity to be heard and to offer evidence in support of any appeal under this clause. Pending final decision on such a dispute, however, the Contractor shall proceed diligently with the performance of the contract and in accordance with the decision of the Contracting Officer unless directed to do otherwise by the Contracting Officer.
>
> b. This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph "a" above, provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

JA748 at ¶ 2 (emphasis added).

The clause contractually requires appeal to the ASBCA, and simultaneously prohibits appeal to the Court of Federal Claims. First, it provides that "[w]ithin 90 days from the date of receipt of such copy [of the contracting officer's decision], the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer *a written appeal addressed to the Armed Services Board of Contract Appeals*…." *Id*. (emphasis added). Second, it says that "if *no such appeal is filed*, the decision of the Contracting Officer shall be final and conclusive." *Id*. Thus, the clause only contemplates appeal to the ASBCA. There is no dispute that SUFI, by not appealing to the ASBCA, failed to exhaust its administrative remedies. JA87 ("SUFI concedes that the Disputes clause of the Contract typically requires

9

exhaustion of an administrative process that includes the CO issuing a final decision and the ASBCA, on behalf of the Secretary, then resolving the claims in the first instance."); *Maine Yankee Atomic Power Co.*, 225 F.3d at 1340 (citations omitted).

At issue is whether the trial court committed legal error by excusing SUFI from exhausting its explicit and exclusive administrative remedy – appeal to the ASBCA. The trial court did err, despite correctly holding that "[w]here the CDA does not apply and a cognizable disputes clause envisions a specific contractual remedy, a contractor generally must exhaust that remedy before seeking judicial redress[,]" and that "the Disputes clause provides for SUFI to appeal *only to the ASBCA*." JA62 (emphasis added) (citations omitted).[1] The trial court erred by rendering the parties' non-CDA Disputes clause a nullity by excusing SUFI from exhausting its explicit administrative remedy "because the contracting officer materially breached the Disputes clause by failing to issue a final decision within a reasonable timeframe." JA62; JA63 ("Mr. Henson did not respond to SUFI's multiple requests for a formal status report, and failed to provide even informal indications of claim status…."); *id*. ("Mr. Henson failed to provide a substantiated

---

[1] This Disputes clause is distinct from contracts that are subject to the Contract Disputes Act (CDA) because in CDA contracts a plaintiff may elect between the Court of Federal Claims and a board.

final decision on the *entire* attorneys' fees issue, not just an underlying element."); *id*. ("[A]gency counsel emailed SUFI a cryptic 'deemed denial' on attorneys' fees without any explanation of the bases…. Without knowledge of any basis for the agency's position, appeal to the ASBCA would have been needlessly burdensome for SUFI.").

Such excusal is legal error because it relies on the false premise that SUFI, lacking a decision, had no recourse. That is incorrect. SUFI could have exhausted its Disputes-clause-required remedy by appealing to the ASBCA without a contracting officer's final decision if – in its view – the contracting officer was taking an unreasonable amount of time to issue a decision. The ASBCA's rules explicitly contemplate such a situation in subparagraph (c) of Rule 1, "Appeals, How Taken," providing that

> (c) Where the contractor has submitted a properly certified claim over $100,000 to the contracting officer or has requested a decision by the contracting officer which presently involves no monetary amount pursuant to the Disputes clause, and the contracting officer has failed to issue a decision within a reasonable time, taking into account such factors as the size and complexity of the claim, the contractor may file a notice of appeal as provided in subparagraph (a) of this Rule, citing the failure of the contracting officer to issue a decision.

48 C.F.R. Ch. 2, App. A.

The trial court's premise is puzzling given its repeated recognition that SUFI could – and did – proceed directly to the ASBCA without a contracting officer's final decision. *SUFI Network Servs., Inc.*, 108 Fed. Cl. at 295 ("SUFI appealed to the ASBCA from the deemed denial of its claims, since the contracting officer had failed to issue a final decision."); JA46 ("SUFI … fil[ed] its Board appeal as a deemed denial."). Thus, the trial court's own decisions acknowledge that the parties' Disputes clause contemplates SUFI's remedy for a contracting officer failing to issue a timely final decision – SUFI may simply proceed to the ASBCA without a final decision. As such, failing to issue a final decision or deemed denial does not excuse SUFI's failure to exhaust.

Because SUFI had not exhausted its administrative remedies prior to filing its complaint with the trial court, it did not state a claim upon which the trial court could grant relief and the trial court improperly declined to dismiss pursuant to rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).

III. <u>The Court Improperly Made Its Award Pursuant To The Changes Clause</u>

In its decision denying the Government's cross-motion for summary judgment, the trial court improperly permitted SUFI recovery pursuant to the contract's Changes clause. JA44, 47.

This Court has long recognized the fundamental difference between two separate and distinct types of recoveries. Specifically, a contractor may make a

claim "under the contract[,]" or it may claim damages for "breach." *L. L. Hall Constr. Co. v. United States,* 379 F.2d 559, 561-62 (Ct. Cl. 1966). SUFI indisputably submitted its claim "under the contract" pursuant to the contract's Disputes clause. JA809 ("SUFI … submits this claim under the Disputes Clause of Contract No. F41999-96-D-0057 for reimbursement of reasonable attorneys' fees and expenses…."). The trial court's opinion, although far from clear on this point, appears to ultimately find liability "under the contract" – "SUFI is entitled to its attorneys' fees claim as an equitable adjustment[]" – but not pursuant to the Disputes clause, which the parties thoroughly briefed. JA47. Instead, the trial court seems to make its award under the contract's Changes clause.[2] JA47, 44.

---

[2] The trial court's opinion is unclear because – at SUFI's urging – it improperly conflates these two distinct theories of recovery. This confusion of breach theory with Changes clause theory echoes throughout the opinion, which toggles between breach rubric (that requires "foreseeability") and non-breach rubric (Changes clause recovery). For example, immediately prior to its "Conclusion[,]" the trial court holds "that SUFI's attorneys' fees claim is 'a direct and foreseeable consequence' of the AFNAFPO's material breach." JA47. Yet, earlier in its opinion, the trial court suggests that SUFI's recovery is not based upon breach – but instead based upon the contract. JA42 ("The Court need not address SUFI's first theory of entitlement because there is no genuine dispute that SUFI is *entitled* to its attorneys' fees claim as an *equitable adjustment under the Changes clause of the contract*.") (emphasis added). This earlier pronouncement is more consistent with the trial court's conclusion that "SUFI is entitled to its attorneys' fees claim as an equitable adjustment[,]" thus, we assume that is the trial court's basis for finding liability. JA47.

The trial court's reliance upon the Changes clause – rather than the Disputes clause – is odd because SUFI's briefing relied exclusively upon the contract's Disputes clause and did not even mention the Changes clause.[3]  JA259 at n.16.

Based upon SUFI's failure to assert the Changes clause as a basis for its recovery, we limited our briefing to whether the Disputes clause: (a) could be relied upon to demonstrate "foreseeability" (the contract having been canceled), and (b) did demonstrate "foreseeability."  Despite briefing focused exclusively on the Disputes clause, the trial court errantly found SUFI's attorney fee claim compensable as an equitable adjustment under the Changes clause.  JA44, 47.

Even assuming that the trial court could rely upon the Changes clause after SUFI elected material breach, the Court need not reach that issue because the Changes clause contemplates only "changes within the general scope of this contract[,]" and only in three limited and inapplicable circumstances:

---

[3] Specifically, and in direct contravention of the claim filed with the contracting officer, SUFI relied upon the Disputes clause to demonstrate the required "foreseeability" element of a breach damages claim.  JA114 ("[T]hat SUFI would incur fees related to preparing and negotiating its claims with the Air Force was manifestly foreseeable.  The Disputes clause of the Contract expressly mandated such effort….").  SUFI's briefing did not present the Disputes clause as an independent basis for recovery "under the contract."  JA269 ("SUFI reconfirms, once again, that it is requesting its claim preparation costs and expenses under a breach theory, not under the FAR (which is inapplicable under the Contract (*id.* at 168,218 (¶ 2), 168,289)) or under a specific remedial clause of the Contract.").

(1) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government….

(2) Method of shipment or packing.

(3) Place of delivery.

(b) If any *such change* causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract … the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

JA755 at Clause No. 26 (emphasis added); 48 C.F.R. § 52.243-1 (emphasis added).

SUFI's attorney fee claim is primarily for fees and expenses incurred to prepare its $130 million claim. For SUFI to recover pursuant to the Changes clause – whether pursuant to the clause itself or as an indication of foreseeability – SUFI must show that its claimed amounts were incurred pursuant to "changes within the general scope of this contract in … (1) Drawings, designs …. (2) Method of shipment …. (3) Place of delivery." *Id.*

Most fundamentally, SUFI cannot identify "changes within the general scope of this contract" because the entire contract was unraveling. Indeed, prior to SUFI incurring *any* of its claimed fees or expenses, the ASBCA held that the AFNAFPO was in material breach and SUFI elected to cancel the contract eight days later. Thus, as a matter of law, SUFI's attorney fees for claim preparation were not incurred pursuant to a "change[] within the general scope of this

contract….” *Id*. But even if the trial court had held otherwise, SUFI's claim-preparation amounts do not involve changes in drawings, shipment, or delivery. *Id*. Accordingly, there is no support – as further evidenced by SUFI exclusively arguing the Disputes clause – for the trial court finding that "the AFNAFPO materially breach[ing] the parties' contract, plausibly entitl[es] SUFI to an equitable adjustment under the Changes clause." JA44.

The trial court skirted the limited scope of the Changes clause by omitting any reference to part (a) of the regulation and also omitting the word "such" from its quotation of part (b). JA40-41. Later in its opinion, the trial court discussed the clause's broad purpose rather than its specific language. JA44 ("An 'equitable adjustment' is an adjustment to a contract's price or schedule under a Changes clause to compensate a contractor for adverse governmental action. *See* 4 John Cosgrove McBride & Thomas J. Touhey, *Government Contracts: Law, Administration, Procedure* § 28.280 (Walter Wilson ed., Matthew Bender 2009)."). Thus, the opinion critically – and repeatedly – omits the portions of the Changes clause that references the specific changes contemplated, and leaves the reader with the misimpression that "any … change" is contemplated by the contract's Changes clause. JA40.

In sum, SUFI sought recovery of its attorney fee claim, pursuant to breach, and argued that the Disputes clause satisfied the requirement for "foreseeability."

JA114.  Instead, the trial court granted recovery "under the contract[,]" relying on the Changes clause.  JA44, 47.  However, the trial court erred by omitting those portions of the Changes clause that make clear that it is inapplicable after material breach and SUFI cancellation, and inapplicable to amounts unrelated to changes in drawings, shipment, or delivery.  JA40-41.  Accordingly, the trial court should be reversed.  *Ginsberg v. Austin*, 968 F.2d 1198, 1200 (Fed. Cir. 1992) (holding that an unsupportable legal interpretation warrants vacatur or reversal of the decision).

## IV.  The Court Improperly Permitted Recovery Of Interest From When Work Was Performed

In its damages decision, the trial court improperly permitted SUFI to recover interest from the date SUFI's attorneys performed their work because such recovery is contrary to the Partial Settlement Agreement's (PSA) explicit terms.

The trial court's interpretation of the parties' PSA is a question of law that the Court reviews *de novo*.  *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999) (citation omitted).  The PSA provides that interest will accrue "from the earlier of (i) the date of receipt of the claim or (ii) the date damages are actually incurred, until payment."  JA1980.  The charges at issue were never "damages [that] are actually incurred" under the PSA because the hourly charges were subject to a contingent-fee arrangement.  JA1979-80 at ¶ 4; JA43 ("SUFI's contingent fee arrangement with outside counsel…."); JA2947 at

ll.13-20 ("After the first phase … we moved to a contingency arrangement.").  In other words, SUFI could not have "damages [that] are actually incurred" under the PSA until it paid its attorneys' their hourly charges, and SUFI indisputably *never* did so.  *Id*.  Consequently, the earliest date from which SUFI can recover interest under the PSA is "(i) the date of receipt of the claim[,]" or December 29, 2010. JA1980; JA809.

The trial court disagreed, holding that SUFI "actually incurred" damages on the date that SUFI's attorneys expended time to prepare SUFI's claim.  JA21.  For example, the first time entry by SUFI's attorneys occurred on August 27, 2004, and the court held that SUFI was entitled to interest on that entry from that date – the date SUFI's attorneys performed the work.  The trial court reasoned that

> fees are incurred either when they are paid or when "there is an 'express or implied agreement that the fee award will be paid over to the legal representative.'" *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 53 (2010) (quoting *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) (per curiam)). Following that rule, there can be no dispute that SUFI is entitled to interest from the date damage was actually incurred.

*Id*.  This reasoning – the trial court's entire analysis – fails on many fronts.

First, SUFI having a fee agreement before its attorneys began work is not the same as SUFI "agree[ing] that the fee award will be paid over to the legal representative[]" at any particular time or in any particular amount.  *United*

*Partition Sys., Inc.,* 95 Fed. Cl. at 53. For the trial court to have determined the contours of SUFI's fee agreement with its attorneys, SUFI would have had to produce that agreement in response to the Government's numerous requests. JA769 at ¶¶ 5, 7, 8. In fact, SUFI refused to provide its fee agreement – offering only its statement that it is a contingent-fee arrangement. *Id*.; JA3014 at ll.2-7; JA3016 at 12-19; JA2947 at ll.13-20. That offering, in stark contrast to *United Partition* and *Phillips,* leaves SUFI's fee arrangement a mystery. *United Partition Sys., Inc.*, 95 Fed. Cl. at 53 (noting the existence of a "two-step fee arrangement"); *Phillips*, 924 F.2d at 1582 (noting the "affidavit submitted with the application for attorney fees, [wherein] Phillips' attorney described the fee arrangement").

Second, neither *United Partition* nor *Phillips* advances the trial court's interpretation of the parties' PSA language. Both cases discuss recovery of attorney fees under the Equal Access to Justice Act (EAJA). *United Partition Sys., Inc.*, 95 Fed. Cl. at 53; *Phillips*, 924 F.2d at 1582. That courts have examined "incurred" to determine liability for attorney fees under EAJA does not establish that the parties to the PSA intended an identical interpretation of "incurred" to determine interest accrual under the PSA. Indeed, *United Partition* and *Phillips* are silent on when attorney fees are "incurred" for purposes of determining interest accrual because EAJA only contemplates awarding *interest* on attorney fees when "the United States appeals an award of costs or fees" – and neither case involved

that issue. *Id.*; 28 U.S.C. § 2412(f). Even more fundamentally, *United Partition* is facially inapplicable to resolving interest accrual based solely on the trial court's citation. JA21. The trial court reasoning that fees are incurred "when they are paid or when 'there is an … agreement'" cannot resolve when interest accrues because these two alternative events will almost always be on two different dates. JA21.

Third, even if the cases' discussions of "incurred" were applicable to interest accrual under the PSA – which they are not – they do not address "actually" incurred damages. JA1980. The trial court's inquiry cannot end after determining when SUFI "incurred" its attorney fees. The PSA requires that "damages are *actually* incurred," suggesting a heightened regard for the immediacy of damages. *Id*. (emphasis added). Black's law dictionary defines "actual" as "[e]xisting in fact; real[.]" Black's Law Dictionary (9th ed. 2009). SUFI alleges it "actually" incurred its fees for purposes of interest accrual (under the PSA) when work was performed. But SUFI's fees are calculated using an hourly basis that SUFI admits is not the true compensation arrangement. JA3016 at 12-19. SUFI's contingent-fee arrangement – even though its terms are unknown because SUFI refused to produce it – means SUFI could never "actually" incur its attorneys' hourly charges (for purposes of interest accrual) pursuant to the PSA's language.

Fourth, the trial court does not address that it is SUFI's "damages" that must be "actually incurred[.]" JA1980. SUFI's contingent-fee arrangement

contractually allocated the risk of any delay in SUFI recovering its claim-preparation attorney fees to its attorneys.  It is beyond comprehension that the Air Force would have agreed to pay SUFI interest (compensation for the time value of money) when SUFI lost no time all.[4]  If anyone went uncompensated for the time value of money, it was SUFI's attorneys.  But the PSA does not require the Air Force to reimburse for "damages" suffered by SUFI's attorneys.  JA1979-80.  At bottom, SUFI's interest claim (from the moment work was performed) relies upon a risk of delayed recovery that SUFI relinquished when it contractually allocated such risk to its attorneys with a contingent-fee arrangement.  It cannot reclaim such risk now in an effort to try and recover from the Air Force for such delay.

The trial court analyzed none of this.  Instead, it relied upon two inapposite EAJA cases to expansively interpret the "incurred" term of the PSA's interest accrual language while ignoring the clause's remaining terms and SUFI's failure to provide its fee agreement for the Court's analysis.  The trial court's interpretation of the PSA is reversible error.  *Ginsberg*, 968 F.2d at 1200.

---

[4] The requirement to pay interest is not a penalty.  *American Airlines, Inc. v. United States*, 77 Fed. Cl. 672, 684 (2007) (Interest "reimburses the Government for the time value of money and loss of use of amounts not paid when they are due.") (citing *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992)); *Jones v. United States*, 371 F.2d 442, 450 (Ct. Cl. 1967) ("[I]nterest is not a penalty but a charge for the use of money…."); *United States v. Childs*, 266 U.S. 304, 309-10 (1924) (interest is clearly intended to compensate for delay in payment and is not punishment).

## V. The Court Improperly Permitted Recovery Of Fees At SUFI's Attorneys' Standard Rates

In its damages decision, SUFI was permitted to recover amounts based upon its attorneys' standard hourly rates despite its refusal to produce documents that would have established hourly rates that SUFI actually paid its attorneys. JA20.

SUFI had the burden to establish the reasonableness of its claimed rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, SUFI should have easily met that burden by producing the hourly-rate agreement that existed between SUFI and its attorneys (before transitioning to a contingent-fee arrangement), and the bills SUFI paid under that agreement. SUFI, and its attorneys, admit that such documents exist. JA2764 at l.19-JA2765 at l.5 ("The first part of the case when we received the material breach, all that was done on an hourly basis."); JA2765 at ll.15-19 ("After 2004 it was all contingency-based. Prior to that we had paid on an hourly basis."); JA2946 at l.7-JA2947 at l.5; JA2763 at ll.9-14. In fact, we repeatedly requested such documents. JA769 at ¶¶ 5, 7, 8. Yet, SUFI produced no documentary evidence of paying its attorneys' their standard rates (or any other hourly rate) – claiming privilege, and undue burden. *Id*.; JA3016 at ll.12-19 ("I think we considered that part of the overly broad and unduly burdensome part.").

SUFI's refusal to produce these indisputably responsive and relevant documents went unchallenged because it was SUFI's burden, and SUFI's failure to "produc[e]

evidence peculiarly within its possession" should have been subject to an adverse inference. *Paccon, Inc. v. United States*, 399 F.2d 162, 172 (Ct. Cl. 1968).

The trial court, however, failed to even acknowledge SUFI's refusal to produce *any* document setting forth an hourly rate or its pre-contingency fee arrangement with its attorneys. Instead, it held that SUFI's claimed rates are "presumptively reasonable" so long as "the requested rates are 'in line with those prevailing in the community[.]'" JA20 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Then, relying upon testimony by SUFI's lead attorney, the expert report of a government-contracts practitioner, and private media surveys, the trial court found that SUFI's standard rates were entitled to a presumption of reasonableness. JA20.

The trial court's analysis is legally and factually flawed. Regarding legal error, *Blum* can only be read to afford a presumption when "there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Those are not the facts here. SUFI admitted to incurring and paying fees pursuant to hourly rates. JA2764 at l.19-JA2765 at l.4 (portion of case done on an hourly basis); JA2765 at ll.15-19 ("Prior to that we had paid on an hourly basis."); JA2946 at ll.7-11 ("SUFI was billed on an hourly basis for Crowell & Moring's work through the initial litigation"). Moreover, SUFI's lead attorney admitted that

an hourly-rate agreement existed.  JA3014 at ll.2-7 (agreement for non-contingent

portion of the ASBCA case is not part of the record); JA3016 at 12-19 (providing

the Government with its agreement was, in SUFI's view, "unduly burdensome");

JA2946 at l.7-JA2947 at l.5 (SUFI incurred hourly bills under an agreement that is

not part of the record).  Thus, *Blum's* presumption is inapposite.  *Blum*, 465 U.S. at

896 n.11 (relying upon presumption that standard rates are reasonable when "there

is no negotiation or even discussion with the prevailing client").

Under the facts of this case – SUFI admitting to the existence of documents

that would definitively establish *actual* market rates between SUFI and its

attorneys, but steadfastly refusing to produce them – our request that the *Laffey*

rates be applied was well-founded.[5]  The trial court, by declining to acknowledge

evidence of SUFI's outright refusal to produce the hourly rates it *actually* paid its

attorneys (on spurious grounds of privilege and undue burden), permitted recovery

using SUFI's attorneys' standard rates – despite a gaping hole in SUFI's proof.

JA769 at ¶¶ 5, 7, 8; JA3016 at 12-19.  Granting SUFI a presumption of

reasonableness after it flouted its burden of proof is reversible error.

---

[5] The Court of Federal Claims has described such rates as "provid[ing] a
reasonable guide to the prevailing market rates for lawyers prosecuting complex
federal litigation in the District of Columbia, including the lawyers representing
[plaintiff] in this [Government contract] action."  *First Fed. Sav. & Loan Ass'n of
Rochester v. United States*, 88 Fed. Cl. 572, 586 (Fed. Cl. 2009).

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the

Court of Federal Claims and remand with instructions to dismiss the complaint

pursuant to RCFC 12(b)(6).

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ Douglas T. Hoffman
DOUGLAS T. HOFFMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-0547
Fax: (202) 514-8624

September 12, 2014                    Attorneys for Defendant - Appellant

# In the United States Court of Federal Claims

No. 11-453 C

**SUFI NETWORK SERVICES, INC.,**

    **v.**

**THE UNITED STATES**

                                                         **JUDGMENT**

Pursuant to the court's June 18, 2012 Opinion granting plaintiff's motion for summary judgment on liability and the Opinion and Order, filed October 16, 2013,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the plaintiff recover of and from the United States damages in the amount of $697,702.50 in attorneys' fees and $25,486.81 in expenses, for a total of $723,189.31, plus cumulative interest at the Federal Reserve Board's prime rate, until payment.

Hazel C. Keahey
Clerk of Court

**October 17, 2013**          By:    s/Lisa L. Reyes

Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>.  Filing fee is $455.00.

Attachment





**The UNITED STATES, Defendant.**

**No. 11–453C**

United States Court of Federal Claims.

Filed: October 16, 2013

**SUFI NETWORK SERVICES,
INC., Plaintiff,**

**v.**

**Background:** Contractor filed suit against
United States, seeking recovery of attor-

ney fees, expenses, and interest, after prevailing on 22 of 28 monetary claims in litigation before Armed Services Board of Contract Appeals (ASBCA), pursuant to disputes clause of task order contract with Air Force Non-Appropriated Funds Purchasing Office (AFNAFPO) to provide telephone services on Air Force bases in Germany. The Court of Federal Claims, Wheeler, J., 105 Fed.Cl. 184, entered summary judgment in favor of contractor on issue of liability.

**Holdings:** In subsequent opinion as to amount of damages, the Court of Federal Claims, Wheeler, J., held that:

(1) government untimely asserted its affirmative defenses in post-trial brief;

(2) claimed hours worked by contractor's counsel were reasonable;

(3) rates charged by contractor's counsel were reasonable;

(4) contractor's expenses were reasonably incurred and properly valued;

(5) contractor could recover interest from date counsel's work was performed; and

(6) contractor was not entitled to requested overhead and profit multiplier.

Ordered accordingly.

**1. Public Contracts** ⟺414

**United States** ⟺74(9)

Government's arguments that contractor failed to exhaust administrative remedies on its claim for attorney fees and expenses, as required in parties' partial settlement agreement in underlying contract dispute before Armed Services Board of Contract Appeals (ASBCA), and that, under agreement's terms, contractor had released its claim as to transition and shutdown work, constituted untimely affirmative defenses in contractor's suit to recover attorney fees, expenses, and interest; government first raised those arguments in its post-trial brief, thus prejudicing contractor and adjudicatory process.

**2. Federal Courts** ⟺1111

Ordinarily, affirmative defenses are waived if not raised by motion or answer, and the rationale behind such waiver is strengthened where the defenses are raised for the first time after trial, as this delay prejudices both the plaintiffs and the adjudicatory process.

**3. Public Contracts** ⟺413

**United States** ⟺74(8)

Even if timely raised, government's affirmative defense that contractor failed to exhaust administrative remedies on its claim for attorney fees and expenses, as required in parties' partial settlement agreement in underlying contract dispute before Armed Services Board of Contract Appeals (ASBCA), failed on merits in contractor's suit to recover attorney fees, expenses, and interest, as court had previously considered and rejected exhaustion defense, noting that contractor's administrative exhaustion requirements were excused by contracting officer's failure to issue final decision within reasonable timeframe.

**4. Public Contracts** ⟺413

**United States** ⟺74(8)

Even if timely raised, government's affirmative defense that, under terms of partial settlement agreement in underlying contract dispute before Armed Services Board of Contract Appeals (ASBCA), contractor had released its claim as to transition and shutdown work, failed on merits in contractor's suit to recover attorney fees, expenses, and interest; although agreement provided that contractor could not seek further payments from government with respect to sale of its system, it also stated that contractor did not waive any rights it may have to collect all damages otherwise available for breach of contract.

**5. Federal Courts** ⟺1101

Party seeking attorney fees must document and submit evidence of the number of hours worked.

**6. Federal Courts ⬡1101**

In order to sufficiently document the number of hours worked for purposes of a request for an award of attorney fees, counsel are not required to record in great detail how each minute of their time was expended, but should at least identify the general subject matter of the time expenditures.

**7. Federal Courts ⬡1101**

Basic principle guiding the determination of reasonableness of the claimed hours worked for purposes of a request for an award of attorney fees is that hours that are not properly billed to one's client also are not properly billed to one's adversary; accordingly, the party seeking an award of fees is not entitled to recover fees for hours that are excessive, redundant, or otherwise unnecessary.

**8. Public Contracts ⬡416(1)**

**United States ⬡74(12.1)**

Contractor's claimed hours worked by its counsel were reasonable, thus supporting attorney fees award of $697,702.50 in relation to underlying contract dispute with government before Armed Services Board of Contract Appeals (ASBCA); contractor's counsel, consistent with its usual billing practice, tracked number of hours worked on daily basis and consolidated those entries in electronic billing system, assigned charge numbers indicated that these hours were all associated with Air Force's material breach, chart allocated claim preparation hours to specific claims, excluding hours allocated to those claims denied by ASBCA, and, in light of large and complex nature of contractor's claims, nothing indicated that hours were excessive, redundant, or otherwise unnecessary.

**9. Federal Courts ⬡1101**

Attorney fees applicant bears the burden of producing satisfactory evidence that its requested rates are reasonable.

**10. Federal Courts ⬡1101**

On a request for attorney fees, as long as the requested rates are in line with those prevailing in the community, they are presumptively reasonable.

**11. Federal Courts ⬡1101**

On a request for attorney fees, the "prevailing market rate" is the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

See publication Words and Phrases for other judicial constructions and definitions.

**12. Public Contracts ⬡416(1)**

**United States ⬡74(12.1)**

Rates charged by contractor's counsel were presumptively reasonable, thus supporting attorney fees award of $697,702.50 in relation to underlying contract dispute with government before Armed Services Board of Contract Appeals (ASBCA); contractor established rates that counsel typically charged during relevant time period, and then presented substantial evidence supporting reasonableness of those rates and as to market conditions in relevant area, both through counsel's testimony and through private media surveys.

**13. Public Contracts ⬡416(1)**

**United States ⬡74(12.1)**

Contractor's claimed expenses were reasonably incurred and properly valued, and thus it was entitled to recover entire amount of $25,486.81 in expenses related to underlying contract dispute with government before Armed Services Board of Contract Appeals (ASBCA); counsel had followed its usual billing practice for those expenses and clients had regularly accepted such practice as adequate, each event of computer library research, long-distance telephone, facsimile, and postage charges required attorney to enter charge number for specific client and itemize expenses on firm billing records, and counsel provided receipts from same time period for same types of costs to substantiate travel charges.

**14. Federal Courts ⬡1101**

As with attorney fees, the court will not second-guess counsel's decision to incur expenses it thought necessary to properly present its case.

**15. Public Contracts** ⟲416(1)

**United States** ⟲74(12.1)

Under parties' partial settlement agreement, contractor could recover interest from date work was performed, in suit to recover attorney fees, expenses, and interest stemming from underlying contract dispute with government before Armed Services Board of Contract Appeals (ASBCA); despite government's argument that contractor's contingency fee arrangement with counsel meant that charges were not actually incurred until, at earliest, when contractor submitted its claims for fees and expenses to contracting officer, general rule stated that fees were incurred either when they were paid or when contractor entered into express or implied agreement that fee award would be paid to counsel.

**16. Public Contracts** ⟲416(1)

**United States** ⟲74(12.1)

Contractor was not entitled to requested 25-percent "combined overhead and profit rate to be applied to its attorney fees and expenses," in its suit to recover attorney fees, expenses, and interest stemming from underlying contract dispute with government before Armed Services Board of Contract Appeals (ASBCA); contractor's counsel, rather than contractor, "was running the show," in that dispute related to contractor's first government contract while counsel had extensive experience with government contract litigation, contractor stated that counsel did great job in organizing claims and putting them together, and contractor's work with counsel added little more than negligible value its case.

---

Frederick W. Claybrook, Jr., with whom was Brian T. McLaughlin, Crowell & Moring LLP, Washington, D.C., for Plaintiff.

Douglas T. Hoffman, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Steven J. Gillingham, Assistant Director, and Jessica R. Toplin, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

---

Recovery of Attorneys' Fees, Expenses, and Interest; Lodestar Method; Attorneys' Reasonable Rates and Hours Expended; Overhead and Profit.

*OPINION AND ORDER*

WHEELER, Judge.

In this breach of contract case, the Court must now determine the proper amount owed to Plaintiff, SUFI Network Services, Inc. ("SUFI"), for attorneys' fees, expenses, and interest. The origins of this case lie in an April 26, 1996 contract between SUFI and the U.S. Air Force Nonappropriated Funds Purchasing Office ("AFNAFPO," or "Air Force") to provide telephone services on Air Force bases in Germany. *SUFI Network Servs., Inc. v. United States,* 102 Fed.Cl. 656, 658 (2012) (*"SUFI CFC I"*).[1] SUFI first litigated its underlying contract claims before the Armed Services Board of Contract Appeals ("ASBCA"), which found that the AFNAFPO had materially breached the contract. *SUFI CFC I,* 102 Fed.Cl. at 656. SUFI then filed a claim for attorneys' fees and expenses, but the contracting officer failed to issue a final decision within a reasonable time, and SUFI brought suit directly in this Court. *Id.* at 659–60.

In a prior opinion, the Court granted summary judgment in SUFI's favor as to the Government's liability for attorneys' fees and expenses, leaving only the issue of damages to be resolved. *SUFI CFC II,* 105 Fed.Cl. 184, 195 (2012). The Court conducted a trial on damages on April 24–26, 2013 in Washington, D.C. The parties subsequently filed post-trial briefs and response briefs, and the Court heard closing arguments on August 28, 2013. For the reasons explained below, the Court awards SUFI all of its claimed attor-

---

1. The previous opinions in this case, No. 11-453C, and its related case, No. 11-804C, are referred to, in chronological order, as *"SUFI CFC I"* through *"SUFI CFC III."* Likewise, the eleven reported decisions of the ASBCA are referred to as *"SUFI ASBCA I"* through *"SUFI ASBCA XI."* *See SUFI Network Servs., Inc. v. United States,* 105 Fed.Cl. 184, 188 n. 1 (2012) (*"SUFI CFC II"*).

neys' fees and expenses, plus interest, but denies the claim for overhead and profit.

*Background*

This case is one of many proceedings arising from a troubled contract to provide telecommunications services during "the dramatically changing telecommunications environment that existed" in the mid-1990s. *SUFI CFC III*, 108 Fed.Cl. 287, 294–96 (2012). On April 26, 1996, SUFI and the U.S. Air Force entered into a task order contract for the installation and operation of telephone systems for lodging facilities at Air Force bases in Germany. *SUFI CFC I*, 102 Fed.Cl. at 658. On August 17, 2004, after a series of disputes, the ASBCA entered a judgment declaring that the Air Force had breached the contract, and, consequently, entitling SUFI to stop performance and cancel the contract. *See SUFI ASBCA II*, ASBCA No. 54503, 04–2 BCA ¶ 32714 (Aug. 17, 2004). The period beginning immediately after that judgment is the period most relevant to this opinion. During that time, SUFI retained the law firm of Crowell & Moring to perform the work that generated the fees and expenses currently at issue.

Two of Crowell & Moring's tasks began immediately after the ASBCA's August 17, 2004 decision. First, SUFI began preparing monetary claims for submission to, and negotiation with, the contracting officer. Claybrook, Tr. 112. Frederick W. Claybrook, Jr., a partner at Crowell & Moring specializing in government contracts claims, took the lead and was assisted by other Crowell & Moring personnel, including his associate, Richard Zimmer, and various legal assistants. PX 1 (Attach. A ¶¶ 4–5, 10); Claybrook, Tr. 126–28, 168. Because of the complexity of the claims, Mr. Claybrook suggested that SUFI retain an accounting consultant for assistance in calculating damages. Claybrook, Tr. 143. Mr. Claybrook estimated that the cost of retaining a damages expert would be approximately $1,000,000. Claybrook, Tr. 144. SUFI decided that it could not afford such an expense. Myers, Tr. 42–43. As a result, Crowell & Moring, led by Mr. Claybrook, prepared all of the damages claims. *Id.* In addition, because SUFI had lost its revenue

stream from the contract, it could no longer afford to retain Crowell & Moring on a regular fee basis, and instead negotiated a contingency fee arrangement. Myers, Tr. 42–43. Despite these obstacles, Crowell & Moring's efforts bore first fruit on July 1, 2005, when SUFI submitted 28 individual claims to the contracting officer. *Id.*; *see also* PX 62 (SUFI's claims narrative).

The second task involved the process of canceling the contract. On August 25, 2004, one week after the ASBCA's decision, SUFI transmitted a letter to the Air Force canceling the contract. PX 59 at 1. However, understanding that an immediate cessation of services would inconvenience the guests at the lodging facilities, SUFI stated that it would continue performance while negotiating a transition period to the Air Force's operation of the telephone systems. *Id.*; PX 60. Once again, Mr. Claybrook led this effort, which culminated in an April 1, 2005 Partial Settlement Agreement ("PSA") between SUFI and the Air Force. PX 61. Under the PSA, SUFI agreed to sell its network to the Air Force for $1,200,000 and to receive $1,075,000 for its good will. *Id.* at 1. In return, SUFI continued to operate the network until May 31, 2005. *SUFI CFC III*, 108 Fed.Cl. at 295. On June 1, 2005, the Air Force took ownership and began operation of the telephone system at each base. *Id.* Crowell & Moring also negotiated consulting agreements for SUFI employees to continue working on the systems at the Air Force bases. Claybrook, Tr. 286.

In September 2005, two months after SUFI submitted its claims to the contracting officer, the Defense Contract Audit Agency ("DCAA") began to audit the claims. *See* PX 63. In response, Mr. Claybrook and Stephen Myers, Jr., the Managing Director of SUFI, first met with two DCAA auditors in late September 2005. PX 63. The audit continued until April 2006, and during that time, Mr. Claybrook and Crowell & Moring engaged in extensive discussions with the DCAA. PX 64; Claybrook, Tr. 134–36.

Finally, from October 12, 2006, through January 5, 2007, the parties attempted to settle the underlying claims. Pl.'s Post–Trial Br. (July 15, 2013), at 22 ("Pl.'s Br."). Al-

though they reached a tentative agreement on ten claims, that agreement ultimately failed to produce a binding document signed by the contracting officer. *SUFI CFC III*, 108 Fed.Cl. at 301–03.

Eventually, in a series of decisions issued between November 21, 2008, and April 5, 2010, the ASBCA ruled in SUFI's favor on 22 of its 28 monetary claims. *SUFI CFC I*, 102 Fed.Cl. at 659. Then, on December 29, 2010, SUFI filed a claim with the contracting officer for its attorneys' fees and expenses. *Id.* at 659. More than six months passed without a response from the contracting officer. *Id.* Instead, on July 7, 2011, Air Force counsel emailed SUFI that "it could consider the claim deemed denied in its entirety." *Id.* at 659–60. On July 8, 2011, SUFI filed the present action.

The Court has already granted summary judgment in SUFI's favor on the issue of liability for attorneys' fees and expenses. *SUFI CFC II*, 105 Fed.Cl. at 195. Thus, the only remaining question is the amount of those damages. SUFI argues that it should recover $904,188.70, exclusive of interest. In contrast, the Government argues that portions of SUFI's claim for attorney fees, and its entire claim for interest, should be dismissed outright. However, even if they are not dismissed, the Government submits that SUFI should recover no more than $256,543.74, exclusive of interest. For the reasons below, the Court agrees largely with SUFI's position, except that SUFI cannot recover overhead and profit.

## Analysis

### A. *Affirmative Defenses*

[1] In its post-trial brief, the Government raises two new arguments against SUFI's recovery. First, the Government moves to dismiss a "significant portion of SUFI's claimed fees" because SUFI failed to exhaust its administrative remedies as required by the PSA. Def.'s Post Trial Br. (July 15, 2013), at 54 ("Def.'s Br."). Second, the Government argues that under the terms of the PSA, SUFI released its claim for fees regarding the transition and shutdown work. *Id.* at 56–58. As will be shown, both of these arguments are untimely and therefore cannot succeed.

[2] Each argument constitutes an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (stating that exhaustion is generally regarded as an affirmative defense); RCFC 8(c)(1) (listing release as an affirmative defense). Ordinarily, these defenses are waived if not raised by motion or answer. *Kontrick v. Ryan*, 540 U.S. 443, 459, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). The rationale behind such waiver is strengthened where, as here, the defenses are raised for the first time after trial, as this delay "prejudice[s] both the plaintiffs and the adjudicatory process." *Nager Elec. Co. v. U.S.*, 396 F.2d 977, 982 (Ct.Cl.1968) (concluding that a defendant, by its conduct, can waive its rights under a contractual disputes clause).

[3, 4] Furthermore, even if timely, both arguments would fail on the merits. The Court has already considered and rejected the exhaustion defense, noting that SUFI's administrative exhaustion requirements were excused by the contracting officer's failure "to issue a final decision within a reasonable timeframe." *SUFI CFC I*, 102 Fed.Cl. at 661. The release defense also is meritless. Although the PSA provides that SUFI may not seek further payments from the Air Force "with respect to the sale of the SUFI system," it also states that SUFI "does not waive any rights it may have to collect all damages otherwise available" for breach of contract. PX 61 at 3 (¶ 5). Consequently, both affirmative defenses must fail.

### B. *Attorneys' Fees*

Previously, the Court held that SUFI is entitled to its attorneys' fees and expenses as the direct and foreseeable result "of the Government's 'breach of its contractual undertakings.'" *SUFI CFC II*, 105 Fed.Cl. at 195 (quoting *Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1232 (Fed.Cir.1997)). The Court further explained that the proper measure of attorneys' fees is the "lodestar" method, which multiplies the number of reasonable hours by a reasonable hourly rate. *Id.* at 191. Thus, the issue at trial was the proper number of hours and the appropriate rate.

### 1. *The Hours Worked are Reasonable.*

[5–7] A party seeking attorneys' fees must document and submit evidence of the number of hours worked. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Counsel are "not required to record in great detail how each minute of his time was expended," but should at least "identify the general subject matter of [the] time expenditures." *Id.* at 437 n. 12, 103 S.Ct. 1933. A basic principle guiding the determination of reasonableness is that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary.*" *Id.* at 434, 103 S.Ct. 1933 (emphases in original). Accordingly, the party seeking an award of fees is not entitled to recover fees for "hours that are excessive, redundant, or otherwise unnecessary." *Id.*

[8] SUFI divides the claimed hours, from August 27, 2004 through July 1, 2005, into three categories: (1) claim preparation and transition activities; (2) responding to inquiries from the contracting officer and the DCAA; and (3) settlement efforts. Pl.'s Br. at 21–22. The Government does not dispute the number of hours assigned to the third category. Def.'s Br. at 70. However, the Government does object to the claim as it relates to the first two categories on the grounds that it "is vague, fails to allocate time between different tasks, contains unreasonably large minimum time increments, lacks billing judgment, and does not demonstrate proper allocation of work among staff." *Id.* at 58. Therefore, the Government argues, the Court should apply, "at a minimum, a 20 percent proportionate redistribution of Mr. Claybrook's hours and a 30 percent across-the-board reduction." *Id.* None of these objections is persuasive.

The Government's arguments, as well as the authorities cited in support of them, can be reduced to the simple proposition that a court must make a determination of what is reasonable. *See, e.g., Heller v. D.C.,* 832 F.Supp.2d 32, 49 (D.D.C.2011) (stating that a fee application must have sufficient detail to show the reasonableness of the claimed hours). While the cases cited in the Government's brief resulted in reductions to the claimed fees, they did so only because the original requests were, for a variety of reasons, deemed unreasonable. However, the specific circumstances of those cases do not exist here. *See, e.g., Eureka Inv. Corp. v. Chi. Title Ins. Co.,* 743 F.2d 932, 941 (D.C.Cir.1984) ("Time recordkeeping must be relatively detailed in [actions involving fee-shifting statutes] for several reasons *not applicable to private damages actions.*" (emphasis added)). On the contrary, if anything, the hours requested in this case represent a conservative figure.

At trial, SUFI presented evidence that Crowell & Moring, consistent with its usual billing practice, tracked the number of hours worked on a daily basis and consolidated those entries in an electronic billing system. Rynberk, Tr. 84, 86; Claybrook, Tr. 165–66; *see also* PX 8 (copies of timesheets). According to the assigned charge number, these hours were all associated with the SUFI matter and, more specifically, with the Air Force's material breach. Claybrook, Tr. 165–67, 171–72; PX 8. Additionally, in March 2006, Mr. Claybrook prepared a chart that allocated non-litigation, claim preparation hours to specific claims, excluding hours allocated to the claims denied by the ASBCA. Claybrook, Tr. 167, 171, 176; PX 1 (Attach. A ¶ 6); PX 2; PX 64.

SUFI has met its burden by providing evidence of its claimed hours, and there is nothing in the record to persuade the Court that these hours are "excessive, redundant, or otherwise unnecessary." The claims presented by SUFI were large and complex, totaling over $130,000,000, and involved complicated methods of calculating damages. *See generally SUFI CFC III,* 108 Fed.Cl. at 295. Moreover, in a case such as this, where the law firm is working on a contingency basis and has no guarantee that it will recover its costs, there is ample motivation for the firm to maximize both its efficiency and the likelihood of success. Given these circumstances, it is not unusual that Mr. Claybrook, an experienced attorney in the field of government contracts, elected to perform much of the work himself. Accordingly, the Court is satisfied that the contemporaneous time sheets prepared by Crowell & Moring accurately reflect the work done, and the contin-

gency nature of the hours worked provided sufficient incentive for Crowell & Moring to exercise proper billing judgment.

### 2. The Rates Charged are Reasonable.

[9–11] The other multiplier in the lodestar equation is the reasonable hourly rate. The fee applicant bears the burden of producing satisfactory evidence that its requested rates are reasonable. *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). As long as the requested rates are "in line with those prevailing in the community," they are presumptively reasonable. *Id.* The prevailing market rate is "defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Avera v. Sec'y of Health & Human Servs.,* 515 F.3d 1343, 1348 (Fed.Cir. 2008) (quoting *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541).

[12] First, SUFI presented testimony as to the rates typically charged and collected by Crowell & Moring during the relevant time period. Claybrook, Tr. 142–43. SUFI then presented substantial evidence supporting the reasonableness of those rates. For example, SUFI offered an expert report by Mr. Peter Garvin, an experienced practitioner in government contracts and partner in the Washington, D.C. office of Jones Day. After reviewing the billing rates charged by Crowell & Moring and comparing them with those charged by Jones Day during the same time period, Mr. Garvin concluded that they were comparable. PX 57 at 2. He further stated that "Crowell & Moring is one of the best known law firms in the field of government contracts [and] consistently receives the highest ratings from peers and rating organizations." PX 57 at 9 (¶ 3). SUFI also offered evidence of the substantial experience, education, and credentials of Mr. Claybrook and his associates. *See* Claybrook, Tr. 104–07; PX 48–53 (résumés of Mr. Claybrook, his associates, and paralegals). Finally, SUFI presented evidence of the market conditions in the Washington, D.C. area, both through Mr. Claybrook's testimony and through private media surveys, such as those

conducted by *The National Law Journal, Chambers USA,* and *Of Counsel. See* Claybrook, Tr. 197–205; *see also* PX 26–27, 29–37, PX 41 (charts summarizing numbers from private media surveys). This evidence, viewed as a whole, amply demonstrates that the claimed rates are presumptively reasonable.

The Government's response does not challenge this presumption. Rather, the Government contends that instead of using Crowell & Moring's rates, the fee calculation should be based on the "*Laffey* Matrix." *See* Def.'s Br. at 80–82 (citing *Laffey v. Nw. Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984), *overruled in part by Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir.1988)). This contention misses the mark. Ultimately, the issue is not the validity of the *Laffey* Matrix, but whether the Government can rebut the presumption of reasonableness that attaches to Crowell & Moring's billing rates. Simply put, SUFI has presented evidence that the charged rates are reasonable, and the Government has failed to present evidence to the contrary.

Therefore, based on the Court's determination that Crowell & Moring's rates and hours worked were reasonable, the Court awards SUFI $697,702.50 in fees.

### 3. SUFI May Recover All of Its Claimed Expenses.

[13] SUFI claims $25,486.81 in expenses.[2] The Government and SUFI have stipulated that $15,527.04 of those expenses is recoverable. Pl.'s Br. at 38; Def.'s Br. at 50. The balance of $9,959.77 remains in dispute.

The Government's basic contention is that SUFI cannot prove all of the expenses were reasonably incurred. Specifically, the Government argues that computer library research costs, long-distance telephone charges, facsimile and postage charges, and some travel expenses were insufficiently documented. Def.'s Br. at 93. Consequently, the Government argues, it cannot be determined whether those costs were reasonable, and the claims for those expenses must be rejected. *Id.* at 95.

---

**2.** SUFI originally claimed $25,648.46, but later acknowledged a calculation error of $161.65 and

reduced its claim by that amount. Pl.'s Br. at 3 n.2.

However, the testimony at trial was that Crowell & Moring followed its usual billing practice for these expenses, and clients, including SUFI, regularly accept them as adequate. Rynberk, Tr. 87–88, 90, 92–95; Myers, Tr. 46; PX 23; PX 24. Regarding the computer library research, long-distance telephone, and facsimile and postage charges, Crowell & Moring demonstrated that each event required an attorney to enter the charge number for the specific client, then to itemize the expense on firm billing records. Regarding the travel charges, Crowell & Moring provided, among other evidence, receipts from the same period for the same types of costs. PX 4; Myers, Tr. 49–61; Claybrook, Tr. 158–62.

[14] "As with attorney's fees, the court will not second-guess counsel's decision to incur expenses it thought necessary to properly present its case." *Florida Rock Indus., Inc. v. United States,* 9 Cl.Ct. 285, 291 (1985). In this case, the Court is satisfied by the evidence presented that the claimed expenses were reasonably incurred and properly valued. Accordingly, the Court awards SUFI $25,486.81 in expenses.

#### 4. *Interest is Recoverable Under the PSA from the Date the Work was Performed.*

[15] SUFI claims interest on its award under the PSA, which provides in relevant part:

> The Air Force agrees to the following concerning any claims filed by SUFI with the AF concerning the Contract and this Agreement:
>
> (a) The Air Force will be liable to pay interest on any amounts paid or recovered by settlement or judgment from the earlier of (i) the date of receipt of the claim or (ii) the date damages are actually incurred, until payment.

PX 61 § 4. Neither the validity of this section nor the applicability of the Federal Reserve Board's prime rate is at issue. *SUFI CFC III,* 108 Fed.Cl. at 301 (citing *SUFI ASBCA VIII,* ASBCA No. 55306, 09–1 BCA ¶ 34018 (Nov. 21, 2008)). Rather, the parties' dispute is over which of the two dates specified in the PSA triggered the accrual of interest.

The Government argues that SUFI's contingency fee arrangement means that the charges were not actually incurred at the date the services were performed. Def.'s Br. at 89–90. Thus, the Government posits, the earliest date of accrual would be December 29, 2010, when SUFI submitted its claims for fees and expenses to the contracting officer. *Id.* In support of this argument, the Government cites only one authority, *see id.* at 90 (citing *Bluebonnet Savings Bank, F.S.B. v. United States,* 339 F.3d 1341, 1344–45 (Fed. Cir.2003)), but *Bluebonnet* stands only for the unremarkable proposition that "the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach," 339 F.3d at 1345. Though true as a general principle, that statement offers no assistance in determining which date is correct under these specific circumstances.

A more helpful rule is that fees are incurred either when they are paid or when "there is an 'express or implied agreement that the fee award will be paid over to the legal representative.'" *United Partition Sys., Inc. v. United States,* 95 Fed.Cl. 42, 53 (2010) (quoting *Phillips v. Gen. Servs. Admin.,* 924 F.2d 1577, 1583 (Fed.Cir.1991) (per curiam)). Following that rule, there can be no dispute that SUFI is entitled to interest from the date damage was actually incurred.

#### 5. *SUFI is Not Entitled to an Overhead and Profit Multiplier.*

[16] As a final matter, SUFI seeks a 25 percent "combined overhead and profit rate . . . to be applied to its attorneys' fees and expenses." Pl.'s Br. at 41. SUFI does not, however, provide adequate justification for this claim.

Although the Federal Acquisition Regulation ("FAR") does not control in this instance, it does offer useful guidance. *SUFI CFC II,* 105 Fed.Cl. at 188 & n. 2. Here, the relevant guidance is that awards of overhead and profit are premised on the contractor, through its subcontract management functions, providing some benefit to the Government. *See* FAR 52.215–23 (stating that the Government shall not pay for indirect costs

or profits on work performed by a subcontractor where the contractor "adds no or negligible value to a contract").

In this case, the Court agrees with the Government that Crowell & Moring "was running the show." Def.'s Br. at 88. This is understandable, because, unlike SUFI, whose contract with the Air Force was its first government contract, Myers, Tr. 38, Mr. Claybrook has been practicing government contracts law for "the dominant part" of his career, Claybrook, Tr. 107, and is highly regarded in this field, PX 57 at 9 (¶ 3). Indeed, although Mr. Myers testified that that he "worked closely" with Mr. Claybrook, communicating with him by email, by telephone, and in person, Myers, Tr. 38–39, there is nothing in the record indicating that SUFI added anything more than negligible value to Mr. Claybrook's work. In fact, just a few days before SUFI filed its claims, Mr. Claybrook went to SUFI's corporate office in New Jersey with "all the claims and walked through them with [Mr. Myers] and Mr. Pearson." Myers, Tr. 42. Mr. Myers testified that he thought Crowell & Moring "did a great job ... organizing [the claims] and putting them together." Myers, Tr. 42. The Court agrees with this sentiment, but does not agree with SUFI that it added any material value to this work. Accordingly, SUFI is not entitled to overhead or profit.

### Conclusion

For the reasons set forth above, the Court awards SUFI all of its claimed attorneys' fees and expenses, with interest calculated at the Federal Reserve Board's prime rate. The Court concludes, however, that SUFI has failed to establish its entitlement to a 25 percent profit and overhead rate.

In sum, the Court awards SUFI damages in the amount of $697,702.50 in attorneys' fees and $25,486.81 in expenses, for a total of $723,189.31, plus cumulative interest at the Federal Reserve Board's prime rate, *see* PX 1 Ex. 7, until payment.

IT IS SO ORDERED.



---

**Larry D. TALLACUS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 10–311C

United States Court of Federal Claims.

Filed: October 17, 2013

**Background:** Federal employee brought suit against the United States to recover for alleged violation of the Fair Labor Standards Act (FLSA), and federal government moved to transfer case to the United States District Court for the District of Oregon on theory that the Court of Federal Claims was without jurisdiction to hear FLSA claims.

**Holding:** The Court of Federal Claims, Braden, J., held that detailed remedial scheme provided by the Fair Labor Standards Act (FLSA) did not deprive the Court of Federal Claims of jurisdiction to adjudicate claims asserted by federal employee against the United States under that scheme.

Transfer motion denied.

**1. Federal Courts ⚖=1145**

Court of Federal Claims has no jurisdiction over cause of action if plaintiff has another suit "for or in respect to" that cause of action pending against the United States in another court. 28 U.S.C.A. § 1500.

**2. Federal Courts ⚖=1145**

Court of Federal Claims is barred from exercising jurisdiction if cause of action is based on substantially the same operative facts as those underlying a suit pending against the United States in another court, regardless of the relief sought in each suit. 28 U.S.C.A. § 1500.

**3. Federal Courts ⚖=1145**

Cause of action that federal employee brought under the Fair Labor Standards Act

184 105 FEDERAL CLAIMS REPORTER

ments to an employee's attorney.[4]  Thus, § 5332 is not money-mandating with respect to plaintiff, and plaintiff has failed to state a claim on which relief can be granted.

### IV. Conclusion

The Court grants defendant's Motion to Dismiss.  The Clerk shall dismiss the Complaint and enter judgment for defendant.  The parties shall bear their own costs.



**SUFI NETWORK SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–453C.**

United States Court of Federal Claims.

June 18, 2012.

**Background:** Contractor filed suit against United States, seeking recovery of attorney fees, expenses, and interest, after prevailing on 22 of 28 monetary claims in litigation before Armed Services Board of Contract Appeals (ASBCA), pursuant to disputes clause of task order contract with Air Force Non-Appropriated Funds Purchasing Office (AFNAFPO) to provide telephone services on Air Force bases in Germany.  Parties cross-moved for summary judgment.

**Holdings:** The Court of Federal Claims, Wheeler, J., held that:

(1) attorney fees claim was not precluded under doctrine of res judicata;

(2) attorney fees claim was not precluded by contingency fee arrangement;

(3) attorney fees claim was not per se barred by federal acquisition regulation (FAR);

(4) attorney fees were compensable as equitable adjustment under contract's changes clause; and

(5) contractor was entitled to attorney fees as direct and foreseeable consequence of breach.

Plaintiff's motion granted.

**1. Judgment ⟺470, 540**

Normally, a final judgment in one court is binding on the same parties in a subsequent action before another court as a matter of res judicata;  in such a setting the first judgment ordinarily cannot be collaterally challenged in the second proceeding.

**2. Public Contracts ⟺364(4)**
   **United States ⟺73.20(4)**

Doctrine of res judicata, grounded in principles of comity, extends to the judgments of the Armed Services Board of Contract Appeals (ASBCA).

**3. Judgment ⟺585(1)**

Res judicata is not readily extended to claims that were not before the court in the original proceeding, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial.

**4. Public Contracts ⟺364(4)**
   **United States ⟺73.20(4)**

Armed Services Board of Contract Appeals' (ASBCA) grant of contractor's claim

---

**4.** Section 5 U.S.C. § 5332 provides:
(a)(1) The General Schedule, the symbol for which is "GS", is the basic pay schedule for positions to which this subchapter applies.  Each employee to whom this subchapter applies is entitled to basic pay in accordance with the General Schedule.

(2) The General Schedule is a schedule of annual rates of basic pay, consisting of 15 grades, designated "GS–1" through "GS–15",

consecutively, with 10 rates of pay for each such grade.  The rates of pay of the General Schedule are adjusted in accordance with section 5303.
(b) When payment is made on the basis of an hourly, daily, weekly, or biweekly rate, the rate is computed from the appropriate annual rate of basic pay named by subsection (a) of this section in accordance with the rules prescribed by section 5504(b) of this title.

JA000036

for recovery of non-legal employees' expenses incurred following government's material breach of contract to provide telephone services on Air Force bases did not preclude, under doctrine of res judicata, contractor's attorney fees claim in subsequent action based on same material breach of contract, where ASBCA could not and did not rule conclusively as to contractor's attorney fees claim, but ASBCA instead stated that it "need not rule" as to attorney fees claim.

**5. Public Contracts ⚖️364(4)**

   **United States ⚖️73.20(4)**

   Even assuming that federal procurement regulation disallowing costs of professional and consultant services when contingent upon recovery of costs from government applied to contractor's non-appropriated funds contract to provide telephone services on Air Force bases, contractor's contingent fee arrangement with outside counsel did not preclude award of reasonable attorney fees upon prevailing on breach of contract claim before Armed Services Board of Contract Appeals (ASBCA), pursuant to contract's disputes clause, since adverse ruling against attorney fees award would be manifestly unjust, as contractor was small company that no longer had revenue stream after AFNAFPO's material breach and had limited ability to fund expensive and protracted litigation with government.

**6. Public Contracts ⚖️273**

   **United States ⚖️70(18)**

   Federal acquisition regulation providing that costs of professional and consultant services are allowable when reasonable in relation to services rendered and when not contingent upon recovery of the costs from the government merely provides guidance as to fee recovery, setting attorney fees at the lodestar amount of the hours worked at the normal hourly rate. 48 C.F.R. § 31.205–33(b).

**7. Public Contracts ⚖️273**

   **United States ⚖️70(18)**

   While the federal acquisition regulation, providing that costs of professional and consultant services are allowable when reasonable in relation to services rendered and

when not contingent upon recovery of the costs from the government, may preclude the payment of attorney fees as a percentage of recovery against the government, that cost principle does not prevent the payment of fees calculated on an hourly basis at reasonable hourly rates; thus, even if outside counsel provided services to a client on a contingency basis, counsel and the represented party still may recover fees if they are claimed on an hourly basis rather than a contingency basis. 48 C.F.R. § 31.205–33(b).

**8. Public Contracts ⚖️276**

   **United States ⚖️70(20)**

   When a contractor incurs costs due to (1) formal or constructive changes to the contract, (2) governmental defect or delay, or (3) the government's breach, the contractor is entitled to request an "equitable adjustment" (REA), which is an adjustment to a contract's price or schedule under the contract's "changes" clause in order to compensate a contractor for adverse governmental action.

   See publication Words and Phrases for other judicial constructions and definitions.

**9. Contracts ⚖️318**

   A material breach does not automatically and ipso facto end a contract, but rather, merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it.

**10. Contracts ⚖️321(1)**

   Generally, one party to a contract cannot continue after a material breach by the other party, run up damages, and then suddenly go to court.

**11. Contracts ⚖️261(2)**

   Contract cancellation by one party is a natural outgrowth of material breach by its counterparty, even if not a guaranteed consequence.

**12. Public Contracts ⚖️287**

   **United States ⚖️70(36)**

   Contractor's cancellation of contract to provide telephone services on Air Force bases due to government's material breach of

contract did not deprive contractor of procedural rights under contract relating to events that took place before cancellation, to extent those events affected contractor's substantive contractual rights, and thus, contractor did not waive its rights under contract's "changes" clause by canceling contract.

**13. Public Contracts** ⟜**273**
    **United States** ⟜**70(18)**

Federal acquisition regulation governing costs incurred in preparation of request for equitable adjustment (REA) under a contract's "changes" clause, by disallowing a contractor's recovery of costs incurred in connection with prosecution of claims or appeals against the federal government, does not bar the recovery of costs related to nonjudicial administrative processes that predate the contractor's actual filing of its administrative appeal, such as information exchanges at the contracting officer level. 48 C.F.R. § 31.205–47(f)(1).

**14. Public Contracts** ⟜**416(1)**
    **United States** ⟜**74(12.1)**

Contractor's claim for attorney fees after prevailing on claim against government for materially breaching contract to provide telephone services on Air Force bases was not barred per se by federal acquisition regulation governing costs incurred in preparation of request for equitable adjustment (REA) under contract's "changes" clause, by disallowing costs incurred in connection with prosecution of claims or appeals against government, but not costs related to non-judicial administrative processes pre-dating filing of administrative appeal, where contractor sought to recover attorney fees incurred prior to appealing breach of contract claims to Armed Services Board of Contract Appeals (ASBCA). 48 C.F.R. § 31.205–47(f)(1).

**15. Public Contracts** ⟜**273**
    **United States** ⟜**70(18)**

In applying federal acquisition regulation governing costs incurred in preparation of request for equitable adjustment (REA) under contract's "changes" clause, by disallowing a contractor's recovery of costs incurred in connection with prosecution of claims or appeals against government, but

not barring costs related to non-judicial administrative processes that pre-date the contractor's actual filing of an administrative appeal, Court of Federal Claims distinguishes between allowable contract administration costs and unallowable claim prosecution costs by examining the objective reason why the contractor incurred the cost. 48 C.F.R. § 31.205–47(f)(1).

**16. Public Contracts** ⟜**273**
    **United States** ⟜**70(18)**

Under federal acquisition regulation governing costs incurred in preparation of request for equitable adjustment (REA) under contract's "changes" clause, by disallowing contractor's recovery of costs incurred in connection with prosecution of claims or appeals against government, but not barring costs related to non-judicial administrative processes that pre-date the contractor's filing of an administrative appeal, if a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process and the cost otherwise is reasonable and allocable, then the cost is presumptively allowable even if negotiation eventually fails and the contractor later submits an administrative appeal; on the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of an administrative appeal, then the cost is unallowable. 48 C.F.R. § 31.205–47(f)(1).

**17. Public Contracts** ⟜**273**
    **United States** ⟜**70(18)**

Under federal acquisition regulation governing costs incurred in preparation of request for equitable adjustment (REA) under contract's "changes" clause, by disallowing contractor's recovery of costs incurred in connection with prosecution of claims or appeals against government, but not barring costs related to non-judicial administrative processes that pre-date filing an administrative appeal, there is no bright-line test rendering the contractor's costs automatically allowable just because those costs were incurred before an administrative appeal; rather, the government must receive some benefit from the expenditure of the costs in order for them to be allowable, such as an increase in the likelihood of settlement with-

out litigation or, simply, a greater incentive to negotiate rather than litigate. 48 C.F.R. § 31.205–47(f)(1).

**18. Public Contracts ☞276**
**United States ☞70(20)**

Attorney fees and expenses incurred by a government contractor in preparing a request for an equitable adjustment (REA) under a "changes" clause in the contract are themselves presumptively compensable as an "equitable adjustment" where: (1) contractor incurred the costs due to formal or constructive changes to the contract, governmental defect or delay, or government's breach, (2) contractor incurred the costs in furtherance of information exchange or negotiation with the government, whether or not contractor ultimately succeeded in forestalling administrative appeal, or the government received some other benefit from the expenditure, and (3) contractor incurred the costs before actually filing its administrative appeal.

**19. Public Contracts ☞417**
**United States ☞74(12.1)**

Whether a contractor can satisfy the test for presumptive allowability of a contractor's recovery of attorney fees and expenses incurred in preparation of a request for an equitable adjustment (REA), and whether the government can rebut this presumption, normally are factual inquiries for the contracting officer.

**20. Public Contracts ☞273**
**United States ☞70(18)**

Contractor's attorney fees claim, upon prevailing against government for material breach of contract to provide telephone services on Air Force bases, involved compensable "contract administration costs" rather than noncompensable "claim prosecution costs," within meaning of federal acquisition regulation, as required for contractor's eligibility for recovery of attorney fees as equitable adjustment under contract's "changes" clause, even though contractor appealed its breach of contract claims to Armed Services Board of Contract Appeals (ASBCA), since contractor engaged in regular negotiations and information exchanges with contracting officer at administrative level before appealing to ASBCA.

See publication Words and Phrases for other judicial constructions and definitions.

**21. Public Contracts ☞416(3)**
**United States ☞74(13)**

Under the common law, attorney fees are compensable if they are a direct and foreseeable consequence of the government's breach of its contractual undertakings.

**22. Public Contracts ☞120**
**United States ☞63.2**

The federal acquisition regulations (FAR) are highly relevant as a guide in the absence of other guidance.

**23. Public Contracts ☞416(3)**
**United States ☞74(13)**

Contractor that prevailed against government for material breach of non-appropriated funds (NAFI) contract to provide telephone services on Air Force bases was entitled to award of attorney fees, under common law, since contractor's attorney fees were direct and foreseeable consequence of government's material breach.

---

Frederick W. Claybrook, Jr., with whom was Brian T. McLaughlin, Crowell & Moring LLP, Washington, D.C., for Plaintiff.

Douglas T. Hoffman, with whom were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*OPINION AND ORDER*

WHEELER, Judge.

This case is before the Court on the parties' cross-motions for summary judgment on liability. Plaintiff, SUFI Network Services, Inc. ("SUFI") is seeking the recovery of attorneys' fees, expenses, and interest that it incurred following the Government's material breach of a contract for telephone services performed in Germany. The contract in-

volves an Air Force non-appropriated funds instrumentality in which neither the Contract Disputes Act ("CDA") nor the Federal Acquisition Regulation ("FAR") applies. Due to the lack of other authority, the Court still must examine whether SUFI's legal costs are unallowable if incurred in connection with "the prosecution of claims or appeals against the Federal Government." FAR § 33.205–47(f)(1). The Court also must review the Federal Circuit's decision in *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed.Cir.1995), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 n. 10 (Fed.Cir.1995) (en banc). The *Bill Strong* case remains the leading authority on the allowance of legal costs in government contracts.

For the reasons explained below, the Court concludes that SUFI's legal costs are not precluded by any FAR cost principle or the *Bill Strong* decision, and constitute costs eligible for recovery by equitable adjustment under the contract's "Changes" clause. The Court therefore grants SUFI's February 13, 2012 motion for summary judgment and denies the Government's March 15, 2012 cross-motion for summary judgment.

The parties each argued in their cross-motions that the decision of the Armed Services Board of Contract Appeals ("ASBCA") on attorneys' fees, *SUFI Network Services, Inc.*, ASBCA No. 55306, 09–1 BCA ¶ 34018 (Nov. 21, 2008) ("*SUFI ASBCA VIII* "), had a preclusive effect requiring a ruling in their favor. The Court finds the ASBCA's decision inconclusive on the issue of attorneys'

fees, and cannot say that the Board ever clearly ruled on this issue. Accordingly, the Court grants summary judgment for SUFI, but on a different basis than SUFI argued in its motion.

## Background [1]

The Court provided a more detailed factual background and procedural history of this dispute in its January 17, 2012 opinion denying the Government's motion to dismiss. *See SUFI CFC I*, 102 Fed.Cl. at 658–60. The facts below relate only to the merits of SUFI's claim for attorneys' fees, expenses, and interest.

### 1. The Contract

SUFI and the U.S. Air Force Non–Appropriated Funds Purchasing Office ("AF-NAFPO") entered into a contract on April 26, 1996 for SUFI to install and operate telecommunications systems on Air Force bases in Germany. *SUFI ASBCA VIII*, 09–1 BCA ¶ 34,018, at 168,217–18 ¶ 1 (Nov. 21, 2008). The AFNAFPO materially breached this contract. *See generally SUFI ASBCA II*, 04–2 BCA ¶ 32,714 (Aug. 17, 2004).

Neither the CDA, 41 U.S.C. §§ 601–13 (2006) (current version at 41 U.S.C. §§ 7101–09), nor the FAR applies to this contract. Compl. (Jul. 8, 2011), at 1 ¶ 2.[2] However, the contract incorporates by reference the standard FAR "Changes" clause:

> If any . . . change causes an increase or decrease in the cost of, or the time required for, performance of any part of the

---

1.  In addition to this case (No. 11–453C), another case involving the same parties and operative facts is pending before the court (No. 11–804C). Presently, the parties are briefing cross-motions for judgment on the administrative record in case No. 11–804C. The Court issued a published opinion on January 17, 2012, in which it denied the Government's motion to dismiss this case. *See SUFI Network Servs., Inc. v. United States*, 102 Fed.Cl. 656 (2012). In that opinion, the Court referred to this case as "*SUFI CFC I* " and to case No. 11–804C as "*SUFI CFC II.*" *See id.* at 658 n. 1. However, given the possibility of subsequent opinions in this case on damages and in case No. 11–804C on the parties' cross-motions, the Court believes it is sensible to adopt a revised convention for naming the different cases. Accordingly, the Court hereinafter will refer to its January 17, 2012 opinion as "*SUFI CFC I* " and

to this opinion as "*SUFI CFC II.*" Later opinions will be numbered in sequence. The Court will continue to use the naming convention established in its January 17, 2012 opinion to refer to the eleven reported decisions of the ASBCA. *See id.* at 658 n. 3 ("For clarity, the Court refers to the ASBCA decisions as '*SUFI ASBCA I*' and '*SUFI ASBCA II*,' in sequence through '*SUFI ASBCA XI.*' ").

2.  The FAR does not apply to a government contract with a non-appropriated funds instrumentality ("NAFI"). *See* FAR § 1.104 (2011) ("The FAR applies to all acquisitions as defined in Part 2 of the FAR, except where expressly excluded."); FAR § 2.101 (2011) ("Acquisition means the acquiring by contract with appropriated funds of supplies or services.").

work under this contract . . . the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

FAR § 52.243–1(b) (2011); *see also SUFI ASBCA VIII*, at 168,218 ¶ 2.

### 2. *SUFI's Monetary and Employee Claims*

On August 25, 2004, SUFI notified the AFNAFPO's contracting officer ("CO") that it intended to cancel the contract as a result of the AFNAFPO's material breach. *SUFI ASBCA VIII*, at 168,218 ¶ 6. The parties reached a Partial Settlement Agreement ("PSA") on May 31, 2005, with an effective date of April 1, 2005, pursuant to which SUFI stopped its work under the contract. *Id.* at 168, 218–19 ¶ 7; *see also* Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 11 ¶¶ 13–14. SUFI submitted 28 monetary claims to the CO on July 1, 2005, under both the contract and the PSA. *Id.* at 168,219 ¶ 8.

After the CO failed to issue a final decision for more than six months, the Board docketed SUFI's appeal as a "deemed denial" on January 5, 2006. *Id.* at 168,217. The CO subsequently denied all but one of SUFI's 28 monetary claims. *Id.* at 168,219 ¶ 9. SUFI then amended its complaint to appeal the CO's final decision. Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 11 ¶ 16. On October 13, 2006, the parties executed an agreement (the "October 2006 Agreement") settling ten of SUFI's monetary claims. *See SUFI ASBCA VIII*, at 168,219–21 ¶¶ 13–18. The Board, however, determined that this agreement was unenforceable. *See id.* at 168,221–22.

SUFI ultimately recovered on 22 of its 28 monetary claims. *See generally SUFI ASBCA VIII*, 09–1 BCA ¶ 34,018 (Nov. 21, 2008), *recons. granted in part, SUFI ASBCA IX*, 09–2 BCA ¶ 34,201 (Jul. 15, 2009), *SUFI*

*ASBCA X*, 10–1 BCA ¶ 34,327 (Dec. 14, 2009), and *SUFI ASBCA XI*, 10–1 BCA ¶ 34,-415 (Apr. 5, 2010).[3] The Board awarded SUFI damages, as well as the costs and expenses of SUFI's employees and non-legal consultants incurred as a result of the AF-NAFPO's material breach. *See SUFI ASBCA VIII*, at 168,289–92.

At the time of the Board's decision on SUFI's 28 monetary claims in *SUFI ASBCA VIII*, SUFI had not yet presented the CO with its claim for attorneys' fees and expenses. Def.'s Mem. (Mar. 15, 2012), at 8; Pl.'s Mem. (Feb. 13, 2012), at 4 ¶ 7.[4] Nevertheless, the Board observed:

> Since [counsel] undertook to represent SUFI in its claim preparation and in this litigation on a one-third contingency basis (finding 340) . . . we need not rule on the allowability of their legal fees and expenses. Once this decision is promulgated, [counsel] presumably will be compensated based upon their contingent fee arrangement with SUFI.

*SUFI ASBCA VIII*, at 168,289. Additionally, the Board noted that FAR § 31.205–33(b) (2011) does not govern the parties' non-appropriated funds contract but is "useful in the absence of other guidance." *Id.*

### 3. *SUFI's Fee Claim*

SUFI submitted its attorneys' fees claim to the CO on December 29, 2010. *SUFI CFC I*, 102 Fed.Cl. at 659 (internal citations omitted). In its submission, SUFI "itemized attorneys' fees of $663,131.25 and expenses of $21,576.30, plus interest through the last full month prior to the claim's submission." Pl.'s Mem. (Feb. 13, 2012), at 4 ¶ 9. SUFI also "attached supporting documentation and affidavits." *Id.* However, the CO again failed to issue a final decision for more than six months. *See SUFI CFC I*, 102 Fed.Cl. at 662. On July 8, 2011, SUFI brought its attorneys' fees claim in this Court, including claims for interest and fees relating to the

---

**3.** In case No. 11–804C, SUFI seeks this Court's review of the ASBCA's rulings on twelve of its monetary claims, largely concerning the amount of damages that the Board awarded. *See* Compl. (Nov. 30, 2011), at 6–7 ¶¶ 22–23.

**4.** The Board limited SUFI's recovery on its employee claim only to those costs corresponding to SUFI's 22 successful monetary claims. *See SUFI ASBCA VIII*, at 168,290–91. This Court defers any analogous determination on SUFI's attorneys' fees for subsequent proceedings on damages.

instant action. The Government moved to dismiss for failure to exhaust administrative remedies, but the Court denied the Government's motion on January 17, 2012.

### 4. *The Instant Dispute*

On February 13, 2012, SUFI moved for summary judgment on both liability and damages, pursuant to Court Rule ("RCFC") 56. The Government cross-moved for summary judgment on March 15, 2012. By order dated February 17, 2012, the Court stayed the issue of damages pending this decision on liability.

In their respective cross-motions, each party asserts preclusion arguments pertaining to the Board's decision in *SUFI ASBCA VIII*. SUFI contends that the Board ruled for it on liability but deferred ruling on damages. Pl.'s Mem. (Mar. 29, 2012), at 4. In contrast, the Government contends the Board found that (i) "where a party enters into a contingent fee arrangement such fees are not compensable," Def.'s Mem. (Mar. 15, 2012), at 16; and (ii) therefore, a ruling on damages was "just gratuitous," Def.'s Mem. (Apr. 9, 2012), at 2–3 n. 1.

SUFI asserts entitlement to its attorneys' fees (i) as damages under the contract and PSA, *see* Compl. (Jul. 8, 2011), at 4 ¶¶ 19–22; and (ii) in the alternative, as an equitable adjustment under the Changes clause, *see id.* at 5 ¶¶ 23–25.[5] In turn, the Government challenges SUFI's attorneys' fees claim as unallowable under FAR § 31.205–47(f)(1) (2011) (previous version at FAR § 31.205–33(d)), due to SUFI's eventual prosecution of its monetary claims before the Board. *See* Def.'s Mem. (Apr. 9, 2012), at 5–6; Def.'s Mem. (Mar. 15, 2012), at 18–23.

For the reasons explained below, the Court rejects both parties' preclusion arguments because the ASBCA never clearly decided the attorneys' fees issue. Nonetheless, upon *de novo* review, the Court grants SUFI's motion for summary judgment on liability and denies the Government's cross-motion. The Court need not address SUFI's first theory of entitlement because there is

no genuine dispute that SUFI is entitled to its attorneys' fees claim as an equitable adjustment under the Changes clause of the contract.

### Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see also Arko Exec. Servs., Inc. v. United States,* 553 F.3d 1375, 1378 (Fed.Cir.2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). By contrast, summary judgment is not appropriate where "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In reviewing a motion for summary judgment, the benefit of all factual inferences runs in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). "However, bald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion." *Lathan Co. v. United States,* 20 Cl.Ct. 122, 125 (1990) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed. Cir.1984)). The plain language of RCFC 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

**A.** *Both Parties' Preclusion Arguments Are Unavailing.*

**[1–3]** "Normally, a final judgment in one court is binding on the same parties in a subsequent action before another court as a matter of res judicata; in such a setting the first judgment ordinarily cannot be collater-

---

**5.** The Government agreed in the PSA to pay interest on any subsequent monetary claims that

SUFI brought under the contract. *SUFI CFC I,* 102 Fed.Cl. at 659 (internal citation omitted).

ally challenged in the second proceeding." *Neb. Pub. Power Dist. v. United States*, 590 F.3d 1357, 1363 (Fed.Cir.2010) (en banc). This rule of preclusion, grounded in principles of comity, extends to the judgments of the ASBCA. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 418–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), *superseded by statute on other grounds*, CDA, 41 U.S.C. §§ 601–13 (2006) (current version at 41 U.S.C. §§ 7101–09), *as recognized in, Alliant Techsys., Inc. v. United States*, 186 F.3d 1379 (Fed.Cir.1999) (per curiam). Nevertheless, "[p]recedent cautions that res judicata is not readily extended to claims that were not before the court, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed.Cir.1996).

**[4]** Here, the Government argues that the Board in *SUFI ASBCA VIII* expressly referenced FAR § 31.205–33(b), which purportedly prohibits the award of *any* legal fees to a litigant represented on a contingent fee basis. *See* Def.'s Mem. (Apr. 9, 2012), at 2–3 n. 1; Def.'s Mem. (Mar. 15, 2012), at 16. The Court cannot abide this sweeping characterization and, in any event, will not give it preclusive effect in light of the Board's explicit "we need not rule" language. *SUFI ASBCA VIII*, at 168,289.

SUFI's preclusion argument similarly fails. *See* Pl.'s Mem. (Mar. 29, 2012), at 4. While the Board did grant SUFI's non-legal employees cost claim, it specifically stated "we need not rule" as to SUFI's attorneys' fees claim. *SUFI ASBCA VIII*, at 168,289. Furthermore, the Board expressly referenced both (i) "finding 340," which documented SUFI's contingency fee arrangement; and (ii) FAR § 31.205–33(b), which at least limits a plaintiff's recovery of contingency fees against the Government. *See id.* Mindful that SUFI did not even submit a claim for attorneys' fees to the CO until December 29, 2010, the Court holds that the Board could not and did not rule conclusively in November 2008 as to SUFI's attorneys' fees claim. Accordingly, the Court proceeds to the substance of the contingency fee issue.

**B.** *The Court May Award Attorneys' Fees Where Counsel Represents a Party Against the Government on a Contingency Basis.*

"Costs of professional and consultant services are allowable . . . when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Government." FAR § 31.205–33(b). Here, the Government urges the Court to apply this contingent fee restriction as an absolute bar and, therefore, to deny SUFI's attorneys' fees claim irrespective of its merits. The Court does not accept the Government's position.

**[5]** First and foremost, the FAR and its cost principles provide only guidance here; they do not control the parties' non-appropriated funds contract. *See* FAR §§ 1.104, 2.101 (2011). However, even if the FAR were controlling, SUFI's contingent fee arrangement with outside counsel would "not preclude the award of reasonable attorney's fees." *E.C. Schleyer Pump Co., Inc.*, ASBCA No. 33900, 89–1 BCA ¶ 21,194, at 106,958 (Sep. 6, 1988). After all, SUFI is "a small company" that "no longer had a revenue stream" after the AFNAFPO's material breach. Pl.'s Mem. (Feb. 13, 2012), at 10. Given SUFI's "limited ability to fund expensive and protracted litigation" with the Government, a ruling against an attorneys' fees award would be manifestly unjust. *See E.C. Schleyer*, at 106,958.

**[6, 7]** The better interpretation of FAR § 31.205–33(b) is that it merely provides guidance as to fee recovery, setting attorneys' fees at "the 'lodestar' amount of the hours worked at the normal hourly rate." Pl.'s Mem. (Feb. 13, 2012), at 4; *cf. Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (allowing for an award of reasonable fees, despite a contingency fee arrangement, in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988 (2006)). While FAR § 31.205–33(b) may preclude the payment of attorneys' fees as a percentage of recovery against the Government, that cost principle does not prevent the payment of fees calculated on an hourly basis at reasonable hourly rates.

Even if outside counsel provided services to a client on a contingency basis, counsel and the represented party still may recover fees if they are claimed on an hourly basis rather than a contingency basis. Thus, SUFI's contingency fee arrangement with counsel poses no obstacle to it prevailing on the merits of its attorneys' fees claim.

### C. *SUFI's Fee Claim Is Compensable As an Equitable Adjustment Under the Contract's Changes Clause, Despite SUFI's Eventual Appeal of Its Monetary Claims to the ASBCA.*

[8]  When a contractor incurs costs due to (i) formal or constructive changes to the contract; (ii) governmental defect or delay; or (iii) the Government's breach, the contractor is entitled to request an equitable adjustment ("REA"). *See* Michael W. Clancy, *REA Preparation Costs—Bill Strong Enterprises, Inc. v. Shannon,* 25 Pub. Cont. L.J. 537, 582 (1996) (internal footnotes omitted). An "equitable adjustment" is an adjustment to a contract's price or schedule under a Changes clause to compensate a contractor for adverse governmental action. *See* 4 John Cosgrove McBride & Thomas J. Touhey, *Government Contracts: Law, Administration, Procedure* § 28.280 (Walter Wilson ed., Matthew Bender 2009). REA preparation "normally requires a substantial effort, including contract analysis, factual investigation, legal entitlement analysis, the drafting process, the collection of documentary evidence, and the pricing of the equitable adjustment." Clancy, *supra,* at 582 (internal footnote omitted). Nonetheless, "[c]osts . . . are unallowa-

ble if incurred in connection with . . . the prosecution of claims or appeals against the Federal Government." FAR § 33.205–47(f)(1).

Here, the AFNAFPO materially breached the parties' contract, plausibly entitling SUFI to an equitable adjustment under the Changes clause. However, SUFI ultimately appealed its 28 monetary claims to the ASBCA, recovering on 22 of them.

[9–12]  Thus, at issue is whether SUFI's attorneys' fees claim is itself allowable as an equitable adjustment, or unallowable as costs incurred in connection with the prosecution of SUFI's monetary claims against the Government.[6]  There is no single legal rule to answer this question. Therefore, the Court undertakes a two-step inquiry: (i) a *per se* review for costs that are unallowable under FAR § 33.205–47(f)(1); and (ii) a more robust analysis to distinguish between compensable "contract administration" costs and noncompensable "claim prosecution" costs within the meaning of the seminal *Bill Strong* decision. *See generally* 49 F.3d 1541 (Fed.Cir.1995).

#### 1. *FAR § 33.205–47(f)(1)'s Per Se Bar Does Not Apply to SUFI's Attorneys' Fees Claim.*

[13, 14]  The title of FAR § 31.205–47 (2011) is "Costs related to legal and other proceedings." The FAR limits the scope of "legal proceedings" to "any civil judicial proceeding to which the Government is a party or any criminal proceeding . . . includ[ing]

---

**6.**  "A material breach does not automatically and ipso facto end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it." *Cities Serv. Helex, Inc. v. United States,* 543 F.2d 1306, 1313 (Ct.Cl. 1976) (en banc) (internal footnote omitted). "As a general proposition, one side cannot continue after a material breach by the other . . . run up damages, and then go suddenly to court." *N. Helex Co. v. United States,* 455 F.2d 546, 551 (Ct.Cl.1972). The Government cites to *Cities Service Helex* and *Northern Helex* and, in effect, argues that SUFI waived its rights under the Changes clause due to its cancellation of the contract. Def.'s Mem. (Apr. 9, 2012), at 7; Def.'s Mem. (Mar. 15, 2012), at 23–24. As applied to the present case, however, those precedents are

inapposite. For example, unlike the Department of the Interior in *Cities Service Helex,* the AFNAF-PO did not detrimentally rely upon SUFI's apparent continued performance. In the absence of such detrimental reliance, the Government cannot maintain that because it materially breached its substantive obligations to SUFI under the contract, it can breach its procedural obligations to SUFI under the Changes clause. After all, contract cancellation by one party is a natural outgrowth of material breach by its counterparty, even if not a guaranteed consequence. SUFI's cancellation of the contract does not deprive it of procedural rights under the contract relating to events that took place before cancellation, to the extent those events affected its substantive contractual rights.

appeals from such proceedings." FAR § 9.403 (2011). Therefore, FAR § 33.205–47(f)(1) does not bar the recovery of costs related to non judicial administrative processes that pre-date a contractor's actual filing of its Board appeal, such as information exchanges at the contracting officer level. *See* Clancy, *supra*, at 585–86. Accordingly, there is no *per se* bar to SUFI's recovery of the costs that it incurred before January 5, 2006, the date SUFI appealed its monetary claims to the ASBCA.[7]

### 2. SUFI's Attorneys' Fees Claim Involves Compensable "Contract Administration" Costs Within the Meaning of Bill Strong.

**[15, 16]** In applying FAR § 33.205–47(f)(1), the Court distinguishes between allowable "contract administration" costs and unallowable "claim prosecution" costs by "examin[ing] the objective reason why the contractor incurred the cost." *Bill Strong*, 49 F.3d at 1550.[8] "If a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process," and the cost otherwise is "reasonable and allocable," then the cost is presumptively allowable "even if negotiation eventually fails" and the contractor later submits a Board appeal. *Id.* at 1549–50; *see also* FAR § 31.201–2 (2011). "On the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of" a Board appeal, then the cost is unallowable. *Id.* at 1550.

7. The Court defers any determinations on SUFI's request for attorneys' fees and expenses relating to *this* action until the damages stage.

8. The *Bill Strong* court limited the scope of its interpretive ruling to the former FAR § 31.205–33(d). *See* 49 F.3d at 1544 n. 2. In the instant opinion, the Court holds that *Bill Strong's* framework extends with equal force to FAR § 33.205–47(f)(1), a successor regulation which is substantively comparable to the former FAR § 31.205–33(d).

9. The Government cites *Singer Co. v. United States* for the proposition that "requests for equitable adjustment [are] not performance-related" and bear "no beneficial nexus either to contract production or to contract administration." 568 F.2d 695, 721 (Ct.Cl.1977) (per curiam). The

**[17]** There is no "bright-line test" rendering costs "automatically allowable just because those costs were incurred before" a Board appeal. *Id.* at 1545. The "Government must receive some benefit from the" expenditure of the costs in order for them to be allowable. *Id.* "In the practical environment of government contracts," this benefit may be an increase in "the likelihood of settlement without litigation" or, simply, "a greater incentive to negotiate rather than litigate." *Id.* at 1549–50.[9]

**[18]** To summarize, at this liability stage of the proceedings, attorneys' fees and expenses incurred in preparation of an REA under a Changes clause are themselves presumptively compensable as an equitable adjustment where:

(i) The contractor incurred the costs due to (a) formal or constructive changes to the contract, (b) governmental defect or delay, or (c) the Government's breach, *see* Clancy, *supra*, at 582 (internal footnotes omitted); [10]

(ii) (a) The contractor incurred the costs in furtherance of information exchange or negotiation with the Government, whether or not it ultimately succeeded in forestalling a Board appeal, *Bill Strong*, 49 F.3d at 1549–50, or (b) the Government received some other benefit from the expenditure, *id.* at 1545; and

(iii) Where applicable, the contractor incurred the costs before the actual filing of its Board appeal, FAR

Court rejects the applicability of this proposition in this case. First, unlike in *Singer*, where the Government's underlying liability was uncertain, the AFNAFPO materially breached its contract with SUFI. Second, as the *Bill Strong* court recognized, *see* 49 F.3d at 1547–49, the Defense Procurement Improvement Act, Pub.L. No. 99–145, § 911 (1985), superseded the above language from *Singer* and the subsequent cases that relied upon it. Instead, an REA satisfies the "benefit to the Government requirement" if it furthers negotiation or information exchange with the agency. *See Bill Strong*, 49 F.3d at 1549–50.

10. Whether SUFI's costs are reasonable, and are allocable to the AFNAFPO's material breach, *see* FAR § 31.201–2 (2011), is a question best left for the damages stage of the proceedings.

§ 33.205–47(f)(1);   *see also*   FAR § 9.403 (2011); Clancy, *supra*, at 585–86.

**[19]**  Whether a contractor can satisfy this test for presumptive allowability, and whether the Government can rebut this presumption, normally are factual inquiries for the contracting officer.  *See United States v. Callahan Walker Constr. Co.*, 317 U.S. 56, 61, 63 S.Ct. 113, 87 L.Ed. 49 (1942).  Here, however, the CO failed to make the necessary factual inquiries.  *See SUFI CFC I*, 102 Fed.Cl. at 662.  Therefore, the Court makes them itself.

**[20]**  SUFI easily satisfies this test for presumptive compensation on liability.  In this regard, SUFI already prevailed under *Bill Strong* on its analogous employee claim.  *See SUFI ASBCA VIII*, at 168,289–92; Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 13 ¶ 21.  Also, SUFI engaged in regular negotiations and information exchanges with the CO to execute both the PSA and the ill-fated October 2006 Agreement.  Finally, SUFI subjected its monetary claims to a Defense Contract Audit Agency ("DCAA") audit, and SUFI's counsel responded to the DCAA's questions "on several occasions."  Pl.'s Mem. (Feb. 13, 2012), at 2 ¶ 2. Thus, as a factual matter, the record is replete with support for SUFI's attorneys' fees claim.

In its attempt to rebut SUFI's *prima facie* case, the Government submits five separate arguments.

First, the Government argues that SUFI already had commenced the prosecution of its monetary claims at the time it prepared its REA. Def.'s Mem. (Mar. 15, 2012), at 19–20.  However, as discussed above, (i) claim prosecution did not *per se* commence until SUFI actually appealed its monetary claims to the Board; and (ii) the factual record is filled with instances of negotiation and information exchange at the administrative level sufficient to satisfy *Bill Strong.*

Second, the Government contends that SUFI negotiated with the CO only to engineer the false appearance of continued contract performance. Def.'s Mem. (Mar. 15, 2012), at 20–21.  SUFI, however, executed

the October 2006 Agreement, which would have settled ten of its monetary claims.  *See SUFI ASBCA VIII*, at 168,219–21 ¶¶ 13–18, 168,221–22. Executing a settlement agreement is not indicative of a party engaging in sham negotiations.

Third, the Government submits that SUFI deliberately presented the CO with an "oversized" demand for $130,308,071.53 in order "to ensure" its denial and SUFI's subsequent appeal to the Board.  Def.'s Mem. (Mar. 15, 2012), at 21.  In support of this position, the Government adds that SUFI knew its demand was unrealistic in light of the AFNAF-PO's past rejection of an estimated $10.2 million termination for convenience settlement, which SUFI had proposed in August of 2003.  *Id.* at 21 n. 10; *see also id.* at 10 ¶ 6.  However, SUFI responds that (i) it provided the proposed settlement estimate only upon the AFNAFPO's request; and (ii) the proposal did not relate to all of SUFI's monetary claims.  Pl.'s Mem. (Mar. 29, 2012), at 10.  In light of the Government's policy found in FAR § 33.204 (2011), "to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level," the Court rejects the Government's position.  Penalizing a contractor for a subjectively "oversized" demand, by comparing the demand to a past settlement proposal, would discourage the contractor from proposing early settlement in the first place.

Fourth, the Government notes that SUFI did not wait for a final decision on its monetary claims before appealing to the Board.  Def.'s Mem. (Mar. 15, 2012), at 21–22.  However, SUFI waited more than six months for the CO to issue a final decision before filing its Board appeal as a deemed denial.

Finally, the Government submits that SUFI's monetary claims "swelled" once before the Board from $130,308,071.53 to $162,124,658.89.  Def.'s Mem. (Mar. 15, 2012), at 22; *see also id.* at 11–12 ¶¶ 16–17.  However, SUFI responds that the $162,124,658.89 figure "include[s] interest, as well as revisions to principal based on record evidence and correction of errors."  Pl.'s Mem. (Mar. 29, 2012), at 11.  The Court finds SUFI's explanation credible and, therefore, rejects this argument as well.

For the foregoing reasons, SUFI's attorneys' fees claim involves compensable contract administration costs within the meaning of *Bill Strong.*

D. *The FAR Does Not Control but Provides Necessary Guidance in Applying the Common Law Test That Does Control.*

**[21]** "Because this is a non-appropriated funds contract, the common law applies without modification by the FAR." Pl.'s Mem. (Feb. 13, 2012), at 5; *see also* FAR §§ 1.104, 2.101 (2011). Under the common law, attorneys' fees are compensable if they are "a direct and foreseeable consequence" of the Government's "breach of its contractual undertakings." *Mass. Bay Transp. Auth. v. United States* ("*MBTA*"), 129 F.3d 1226, 1232–33 (Fed.Cir.1997) (Newman, J.); *Pratt v. United States,* 50 Fed.Cl. 469, 482–83 (2001) (collecting citations); *but see* Def.'s Mem. (Apr. 9, 2012), at 11 (limiting *MBTA* to its facts); Def.'s Mem. (Mar. 15, 2012), at 33 (limiting *Pratt* to its facts).

**[22]** Notwithstanding the above, the FAR is highly relevant "as a guide" "in the absence of other guidance." *SUFI ASBCA VIII,* at 168,289; *In re Reidhead Bros. Lumber Mill,* AGBCA No. 2000–126–1, 01–2 BCA ¶ 31,486, at 155,442 (Jun. 29, 2001). In their briefs, both parties apply the common law's *MBTA/Pratt* test almost exclusively by analyzing FAR § 33.205–47(f)(1) and the *Bill Strong* case that interpreted it. *See* Def.'s Mem. (Apr. 9, 2012), at 5–6; Pl.'s Mem. (Mar. 29, 2012), at 9–10; Def.'s Mem. (Mar. 15, 2012), at 18–23, 31; Pl.'s Mem. (Feb. 13, 2012), at 5–9. Similarly, in *SUFI ASBCA VIII,* the Board analyzed SUFI's analogous employee claim exclusively under FAR § 33.205–47(f)(1) and *Bill Strong. See SUFI ASBCA VIII,* at 168,289–92; Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 13 ¶ 21.

Moreover, the FAR would apply if the AFNAFPO were not a NAFI. In light of the Federal Circuit's recent decision in *Slattery v. United States,* that distinction has become markedly less meaningful. *See* 635 F.3d 1298, 1321 (Fed.Cir.2011) (en banc) (dispensing with prior jurisprudence distinguishing between NAFIs and entities receiving appropriated funds for jurisdictional purposes).

**[23]** Accordingly, the FAR does not control the instant dispute. Nevertheless, it provides the Court with necessary guidance in applying the common law's *MBTA/Pratt* test that does control. The Court thus holds that SUFI's attorneys' fees claim is "a direct and foreseeable consequence" of the AF-NAFPO's material breach.

*Conclusion*

For the foregoing reasons, the Court rejects both parties' preclusion arguments pertaining to *SUFI ASBCA VIII.* Upon *de novo* review, the Court holds there is no genuine dispute that SUFI is entitled to its attorneys' fees claim as an equitable adjustment. Therefore, the Court GRANTS SUFI's February 13, 2012 motion for summary judgment on liability and DENIES the Government's March 15, 2012 cross-motion for summary judgment. The parties are requested to submit a joint status report on or before Monday, July 2, 2012 describing their proposed procedures and schedule for resolving the damages portion of this case.

IT IS SO ORDERED.



**MACY ELEVATOR, INC.,
et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 09–515L.**

United States Court of Federal Claims.

June 21, 2012.

**Background:** Landowners brought putative class action alleging that United States effected Fifth Amendment takings of their interests in railroad rights-of-way by approving conversion of railroad line to

was a rogue bidder or that the claims are frivolous, although some assertions come close. Rather, the argument made is that the Agency's review of SAIC's proposal was not arbitrary, capricious or an abuse of discretion. Challenges made and defenses thereto go to the ultimate merits of the protest and to honor the discretion of the Agency. For example, there is no claim that SAIC would not have standing if its claims that the Agency did not understand its proposal or ignored portions of its proposal (allegational prejudice) were to be proven (adjudged prejudice).

Moreover, whether or not SAIC had a substantial chance to be added to the group of awardees requires resolution of issues that are, at minimum, intertwined with, if not identical to, inquiries addressed to the merits of claimed evaluation errors which it is anticipated will be raised in motions for judgment on the AR. This counsels against determining the predicate error alleged at this stage in the proceeding. *Forest Glen Props., LLC v. United States,* 79 Fed.Cl. 669, 678–79 (2007) ("When it appears to a court, however, that the jurisdictional facts are 'inextricably intertwined with the merits,' it may postpone their determination until trial when all relevant evidence may be considered at the same proceeding.") (*citing Beuré-Co. v. United States,* 16 Cl.Ct. 42, 52–53 (1988), *Land v. Dollar,* 330 U.S. 731, 735–39, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) and *Kawa v. United States,* 77 Fed.Cl. 294, 304 n. 4 (2007)); *Oswalt v. United States,* 41 Fed.Appx. 471 (Fed.Cir.2002) (quoting Wright and Miller, 5A Federal Practice and Procedure § 1350 (2d ed. 1990) (unpublished) (finding error in the granting of a motion to dismiss for lack of jurisdiction where the issues were "intertwined with the merits of the case, [then] the decision on jurisdiction should 'await a determination on the merits.' ")).

For all the above stated reasons, it is **ORDERED:**

(1) That the Motions to Dismiss (ECF Nos. 53, 56 & 57) for lack of standing are **DENIED,** without prejudice to consideration of the same or similar issues raised in motions for judgment on the AR pursuant to RCFC 52.1; and

(2) That plaintiff's motion (ECF No. 33) to complete the AR by adding the six awardee proposals is **DENIED,** but those surviving evaluator worksheets, or portions thereof, addressed to plaintiff's proposal shall be added to the AR.



**SUFI NETWORK SERVICES, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 11–453C.**

United States Court of Federal Claims.

Jan. 17, 2012.

**Background:** Contractor filed suit claiming attorney fees, expenses, and interest, after prevailing on 22 of 28 monetary claims in litigation before Armed Services Board of Contract Appeals (ASBCA), pursuant to disputes clause of task order contract with Air Force Non-Appropriated Funds Purchasing Office (AFNAFPO) to provide telephone service in lodging rooms on Air Force bases in Germany. Government moved to dismiss for lack of subject matter jurisdiction and for failure to state claim.

**Holdings:** The Court of Federal Claims, Wheeler, J., held that:

(1) breach of contract disputes with AFNAFPO are within Tucker Act jurisdiction,

(2) and contractor was excused from requirement of exhausting administrative remedies.

Motion denied.

**1. Federal Courts ⟷1076**

Court of Federal Claims has Tucker Act jurisdiction over breach of contract disputes with Non–Appropriated Funds Purchasing Office (AFNAFPO). 28 U.S.C.A. §§ 1346, 1491.

**2. United States ⟷74(8)**

Where the Contract Disputes Act (CDA) does not apply and a cognizable disputes clause envisions a specific contractual remedy, a contractor generally must exhaust that remedy before seeking judicial redress. 41 U.S.C.App.(2006 Ed.) § 601 et seq.

**3. United States ⟷73(15)**

Contracting officer's failure to issue final decision on contractor's claim for attorney fees, expenses, and interest, for successful litigation before Armed Services Board of Contract Appeals (ASBCA) concerning dispute arising from task order contract to provide telephone service for Air Force, excused contractor's duty to exhaust administrative remedies with ASBCA, pursuant to task order contract's disputes clause, since contracting officer materially breached disputes clause by failing to issue final decision within reasonable timeframe.

**4. Administrative Law and Procedure ⟷229**

Administrative exhaustion requirements apply only where there is a meaningful administrative remedy; they do not apply where the agency has breached a contractual disputes clause or where no effective remedy existed in the first place.

**5. Administrative Law and Procedure ⟷229**

Administrative exhaustion requirements are excusable upon clear evidence that an administrative remedy would be inadequate or unavailable.

**6. United States ⟷74(8)**

While the adequacy of an administrative remedy is presumed, a government contractor may rebut the presumption with clear evidence that the administrative remedy would be prejudiced due to procedural flaws.

**7. United States ⟷73(15)**

The test to determine whether an administrative remedy is available is whether a contracting officer's delay in issuing a timely and appropriate decision is unreasonable given the existing facts and circumstances.

———

Frederick W. Claybrook, Jr., with whom was Brian T. McLaughlin, Crowell & Moring LLP, Washington, D.C., for Plaintiff.

Douglas T. Hoffman, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*OPINION AND ORDER*

WHEELER, Judge.

This case involves the claim of Plaintiff, SUFI Network Services, Inc. ("SUFI") for attorneys' fees, expenses and interest following litigation before the Armed Services Board of Contract Appeals ("ASBCA"). The dispute arises from SUFI's April 26, 1996 task order contract with the U.S. Air Force Non–Appropriated Funds Purchasing Office ("AFNAFPO") to provide telephone service in the lodging rooms on Air Force bases in Germany. The contract contained a 1979 version of the standard Disputes clause, providing that the contractor could appeal from a contracting officer's final decision only to the ASBCA. Although SUFI litigated its underlying contract claims at the ASBCA, it brought suit directly in this Court after the contracting officer failed to issue a final decision within a reasonable timeframe on SUFI's subsequent, separate claim for attorneys' fees and expenses.

Defendant filed a motion to dismiss under Rules of the Court ("RCFC") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support of its motion, Defendant argues that the 1979 Disputes clause is valid and enforceable, and SUFI must exhaust its administrative remedies before seeking judicial relief. While

SUFI acknowledges its obligation to exhaust administrative remedies, it asserts that the agency breached the clause by failing to issue a contracting officer's final decision within a reasonable timeframe. Therefore, according to SUFI, the Disputes clause is unenforceable, and SUFI may seek redress directly in this Court. For the reasons explained below, the Court agrees with SUFI and DENIES Defendant's motion.

*Factual Background*[1]

On April 26, 1996, SUFI entered into a task order contract with the AFNAFPO for the installation and operation of telephone systems for lodging facilities at Air Force bases in Germany.[2] *SUFI CFC II,* No. 11–804C, Compl. (Nov. 30, 2011), at 2–3 ¶¶ 8–10. SUFI has stipulated that the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613 (2006) (current version at 41 U.S.C. §§ 7101–7109), does not apply. Compl. (Jul. 8, 2011), at 1 ¶ 2; *see also* Def.'s Mot. (Oct. 6, 2011), at 5.

Prior to SUFI's installation of the telephone systems, the Air Force lodging facilities generally lacked telephone service in the guest rooms. *SUFI CFC II,* No. 11–804C, Compl. (Nov. 30, 2011), at 2–3 ¶ 8. However, many facilities had common telephones in the hallways and lobbies, which allowed for free calling over the Defense Switched Network

("DSN"). *Id.* at 2–3 ¶¶ 8, 12. SUFI satisfactorily installed the telephone systems at each Air Force base for which the AFNAFPO had issued a task order. *Id.* at 3 ¶ 10.

Pursuant to the terms of the contract, SUFI installed the telephone systems at its own cost and provided proprietary long-distance calling services over the systems. *Id.* at 3 ¶ 8. SUFI's remuneration came entirely from telephone charges for off-base calls. *Id.* Disagreements first arose when the Air Force refused to disable or remove the free communal DSN phones in the hallways and lobbies, *id.* at 3 ¶ 12, and they reached a crescendo when the Air Force ordered SUFI to accept calling cards from competing long-distance providers for use over the guest room phones, *id.* at 3–4 ¶ 12. Administrative proceedings ensued, ultimately resulting in eleven reported decisions from the ASBCA.[3]

On August 17, 2004, the ASBCA entered a declaratory judgment that the AFNAFPO was in material breach, entitling SUFI to cancel the contract. *See SUFI ASBCA II,* ASBCA No. 54503, 04–2 BCA ¶ 32714. Shortly thereafter, on August 25, 2004, SUFI notified the contracting officer, Mr. Cedric K. Henson, that it intended to stop work and cancel the contract after "an orderly transition of services." *SUFI CFC II,* No. 11–

---

**1.** The facts in this opinion do not constitute findings of fact by the Court. Rather, the Court takes the facts from the parties' filings in the various legal proceedings pertaining to this matter. The Court is satisfied that the material facts necessary to render its decision, as set forth in this opinion, are not in dispute. The Court refers in this opinion to eleven SUFI decisions by the ASBCA and two SUFI cases pending before the Court. For clarity, the Court refers to the ASBCA decisions as *"SUFI ASBCA I"* and *"SUFI ASBCA II,"* in sequence through *"SUFI ASBCA XI."* Similarly, the Court designates the two pending court cases as *"SUFI CFC I"* and *"SUFI CFC II."* Since these two cases share a common record, *SUFI CFC II,* No. 11–804C, Notice of Related Case (Nov. 30, 2011), at 1, the Court cites liberally to both cases.

**2.** At the time of contracting, SUFI did business under the name "USFI Network Services, Inc." *SUFI CFC II,* No. 11–804C, Compl. (Nov. 30, 2011), at 1–2 ¶ 3. In this opinion, the Court refers to SUFI by its present name. The AFNAFPO is a non-appropriated funds instrumentality ("NAFI"), a classification of administrative entity

with historic significance that no longer affects the Court's analysis. *See Slattery v. United States,* 635 F.3d 1298, 1321 (Fed.Cir.2011) (en banc) ("[T]he jurisdictional foundation of the Tucker Act [28 U.S.C. § 1491(a)(1) (2006) ] is not limited by the appropriation status of the agency's funds or the source of funds by which any judgment may be paid.").

**3.** *See SUFI ASBCA I,* ASBCA No. 54503, 04–1 BCA ¶ 32606 (Apr. 22, 2004); *SUFI ASBCA II,* ASBCA No. 54503, 04–2 BCA ¶ 32714 (Aug. 17, 2004); *SUFI ASBCA III,* ASBCA No. 54503, 04–2 BCA ¶ 32788 (Nov. 1, 2004); *SUFI ASBCA IV,* ASBCA No. 55306, 06–2 BCA ¶ 33444 (Nov. 8, 2006); *SUFI ASBCA V,* ASBCA No. 55306, 07–1 BCA ¶ 33485 (Feb. 7, 2007); *SUFI ASBCA VI,* ASBCA No. 55306, 07–1 BCA ¶ 33535 (Mar. 21, 2007); *SUFI ASBCA VII,* ASBCA No. 55948, 08–1 BCA ¶ 33766 (Jan. 9, 2008); *SUFI ASBCA VIII,* ASBCA No. 55306, 09–1 BCA ¶ 34018 (Nov. 21, 2008); *SUFI ASBCA IX,* ASBCA No. 55306, 09–2 BCA ¶ 34201 (Jul. 15, 2009); *SUFI ASBCA X,* ASBCA No. 55306, 10–1 BCA ¶ 34327 (Dec. 14, 2009); *SUFI ASBCA XI,* ASBCA No. 55306, 10–1 BCA ¶ 34415 (Apr. 5, 2010).

804C, Compl. (Nov. 30, 2011), at 4 ¶ 13. On April 1, 2005, the parties executed a "Partial Settlement Agreement." *Id.* The settlement agreement provided for SUFI to stop work by May 31, 2005, for the Air Force to assume the operation and ownership of SUFI's on-base systems, and for the Government to pay interest on any monetary claims SUFI brought under the contract.[4] *Id.* The Air Force assumed operation and ownership of the on-base systems on June 1, 2005. *Id.*

*Procedural History*

A. *Administrative Proceedings*

SUFI submitted 28 monetary claims to Mr. Henson under the contract and settlement agreement on July 1, 2005. *Id.* at 4 ¶ 14. In a written final decision dated April 17, 2006, Mr. Henson either denied the claims outright or proffered a settlement amount that SUFI rejected. *Id.* SUFI appealed to the ASBCA pursuant to the Disputes clause of the contract. *Id.* The Disputes clause stated as follows:

DISPUTES (1979 DEC)

a. Except as otherwise provided in this contract, any dispute or claim concerning this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall state his decision in writing and mail or otherwise furnish a copy of it to the Contractor. Within 90 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Armed Services Board of Contract Appeals, and the decision of the Board shall be final and conclusive; provided that if no such appeal is filed, the decision of the Contracting Officer shall be final and conclusive. The Contractor shall be afforded an opportunity to be heard and to offer evidence in support of any appeal under this clause. Pending final decision on such a dispute, however, the Contractor shall proceed diligently with the performance of the contract and in accordance with

the decision of the Contracting Officer unless directed to do otherwise by the Contracting Officer.

b. This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph "a" above, provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

Def.'s Mot. (Oct. 6, 2011), at 3.

The ASBCA conducted a 23-day hearing between February 26, 2007 and May 10, 2007 in Falls Church, Virginia and at Ramstein Air Force Base, Germany. *SUFI CFC II,* No. 11-804C, Compl. (Nov. 30, 2011), at 5 ¶ 17. In a series of decisions issued November 21, 2008, July 15, 2009, December 14, 2009, and April 5, 2010, the ASBCA ultimately ruled in favor of SUFI on 22 of its 28 monetary claims, awarding damages, costs for claim preparation, and consultant expenses on the 22 successful claims.[5] *See SUFI ASBCA VIII,* ASBCA No. 55306, 09-1 BCA ¶ 34018, *recons. granted in part,* 09-2 BCA ¶ 34201, *and* 10-1 BCA ¶ 34327, *and* 10-1 BCA ¶ 34415. SUFI also requested attorneys' fees and expenses, but the ASBCA ruled that SUFI's request was not ripe because SUFI had yet to prevail on liability. *SUFI ASBCA VIII,* ASBCA No. 55306, 09-1 BCA ¶ 34018 at 168,289; *SUFI ASBCA IV,* ASBCA No. 55306, 06-2 BCA ¶ 33444 at 165,780.

Consistent with the Disputes clause, SUFI submitted a four-page, single-issue claim for attorneys' fees to Mr. Henson on December 29, 2010, requesting his final decision within 60 days. Pl.'s Mem. (Nov. 7, 2011), at 3; Compl. (Jul. 8, 2011), at 3 ¶ 11; *see also* Pl.'s Mem. Attach. A (Nov. 7, 2011) ("Claim for Attorneys' Fees and Expenses Related to Preparation of Successful Claims"). More than six months passed without any decision from the contracting officer. On July 7, 2011, through agency counsel, the contract-

---

4. The Court need not rule upon SUFI's interest claim at this stage of the proceedings.

5. In SUFI's second complaint, filed on November 30, 2011, SUFI seeks review of the ASBCA's

rulings on twelve of its monetary claims, largely concerning the amount of damages awarded. *See SUFI CFC II,* No. 11-804C, at 6-7 ¶¶ 22-23.

ing officer notified SUFI by email that "it could consider the claim deemed denied in its entirety." Compl. (Jul. 8, 2011), at 1–2, 4 ¶¶ 3, 18.

Mr. Henson had continuously served as the contracting officer from the time SUFI first made its monetary claims. Pl.'s Mem. (Nov. 7, 2011), at 3. He had issued the contracting officer's final decision on those claims and had attended the entire ASBCA hearing in 2007. *Id.*

### B. *Proceedings in this Court*

SUFI filed its first complaint in this Court on July 8, 2011, seeking attorneys' fees, interest and expenses for its successful ASBCA claims and the instant action, as well as interest under the Partial Settlement Agreement. On October 6, 2011, Defendant moved to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6). SUFI filed an opposition brief on November 7, 2011. Defendant filed a reply brief on November 21, 2011.

SUFI filed a second complaint on November 30, 2011, *see* No. 11–804C, seeking review of the ASBCA's merits determinations on its unsuccessful claims, and quantum determinations on various successful claims, under the Wunderlich Act, 41 U.S.C. §§ 321–22 (2006), *superseded by* 41 U.S.C. § 609 (2006) (current version at 41 U.S.C. §§ 7104, 7107), *as recognized in Essex Electro Eng'rs, Inc. v. United States*, 702 F.2d 998, 1002–03 (Fed. Cir.1983); *Todd Constr., L.P. v. United States*, 88 Fed.Cl. 235, 242 n. 2 (2009) (G. Miller, J.); *Parker v. United States*, 77 Fed. Cl. 279, 287 (2007) (Braden, J.). The Court's decision herein is limited to Defendant's motion to dismiss. This issue is fully briefed, and the Court deems oral argument unnecessary.

### *Standard of Review*

In reviewing a motion to dismiss, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [SUFI's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000). SUFI must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accordingly, SUFI must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

### *Discussion*

Defendant has moved to dismiss SUFI's July 8, 2011 complaint pursuant to RCFC 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The Court will address each of these grounds below.

### A. *RCFC 12(b)(1)*

[1] First, Defendant argues that (i) the Disputes clause governs and does not provide a basis for jurisdiction; and, in the alternative, (ii) SUFI lacks an administrative record on the attorneys' fees issue, which generally is a prerequisite for Wunderlich Act review under *United States v. Carlo Bianchi & Company, Inc.* and its progeny. Def.'s Mot. (Oct. 6, 2011), at 3–5, 5 n. 1; *see also* 373 U.S. 709, 717–18, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), *superseded in part by* Remand Act of Aug. 29, 1972, 86 Stat. 652 (codified at 28 U.S.C. § 1491(a)(2) (2006)). However, Defendant fails to account for recent controlling precedent from the U.S. Court of Appeals for the Federal Circuit, recognizing this Court's Tucker Act jurisdiction over breach of contract disputes with NAFIs, like the AFNAF-PO. *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed.Cir.2011) (en banc). Thus,

the Court will not dismiss SUFI's complaint for lack of subject matter jurisdiction.

### B. *RCFC 12(b)(6)*

**[2]** Next, Defendant argues that SUFI "has failed to state a claim upon which relief can be granted" under the Disputes clause. Def.'s Mot. (Oct. 6, 2011), at 5. Where the CDA does not apply and a cognizable disputes clause envisions a specific contractual remedy, a contractor generally must exhaust that remedy before seeking judicial redress. *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1340–41 (Fed.Cir. 2000). Here, the Disputes clause provides for SUFI to appeal only to the ASBCA. Def.'s Mot. (Oct. 6, 2011), at 3 ("[T]he Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Armed Services Board of Contract Appeals.").

**[3, 4]** SUFI acknowledges the duty to exhaust contractual administrative remedies but argues the Court should excuse it from that duty because the contracting officer materially breached the Disputes clause by failing to issue a final decision within a reasonable timeframe. The Court agrees. Administrative exhaustion requirements apply only where there is a meaningful administrative remedy. They do not apply where the agency has breached a contractual disputes clause or where no effective remedy existed in the first place.

**[5–7]** Administrative exhaustion requirements are excusable upon "clear evidence" that an administrative remedy would be "inadequate or unavailable." *See United States v. Anthony Grace & Sons, Inc.,* 384 U.S. 424, 429–30, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966) (quoting *United States v. Joseph A. Holpuch Co.,* 328 U.S. 234, 239–40, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946)); *see also United States v. Blair,* 321 U.S. 730, 736, 64 S.Ct. 820, 88 L.Ed. 1039 (1944). While the adequacy of an administrative remedy is presumed, a contractor may rebut the presumption with clear evidence that the administrative remedy would be prejudicial due to procedural flaws. *Cf. Baltimore Contractors, Inc. v. United States,* 643 F.2d 729, 734–35 (Ct.Cl. 1981) (analogizing the court's "exception[al]"

jurisdiction over a Wunderlich Act claim challenging a board's procedurally "unfair" final decision to the court's authority to excuse administrative exhaustion requirements). Concerning unavailability, this Court's longstanding test is whether a contracting officer's delay in issuing "a timely and appropriate decision" is unreasonable given "the existing facts and circumstances." *Universal Ecsco Corp. v. United States,* 385 F.2d 421, 425 (Ct.Cl.1967); *New York Shipbuilding Corp. v. United States,* 385 F.2d 427, 436 (Ct.Cl.1967).

Defendant attempts to limit *Universal Ecsco* to its unique facts, involving a contracting officer's refusal to issue a final decision in an attempt to extort a favorable settlement. *See* Def.'s Mem. (Nov. 21, 2011), at 6. There is no evidence of such bad faith here. However, the Court need not determine whether to "extend" *Universal Ecsco* to the present facts. *See id.* at 6–7. There are sufficient other authorities for SUFI to establish a plausible claim within the meaning of *Twombly* and *Iqbal,* both on a theory of inadequacy, *see Baltimore Contractors,* 643 F.2d 729, and on a theory of unavailability, *see New Valley Corp. v. United States,* 119 F.3d 1576 (Fed.Cir.1997); *H.B. Zachry Co. v. United States,* 344 F.2d 352 (Ct.Cl.1965); *Oliver–Finnie Co. v. United States,* 279 F.2d 498 (Ct.Cl.1960).

Since Defendant questions the applicability of the latter three authorities in its reply brief, *see* Def.'s Mem. (Nov. 21, 2011), the Court addresses each of them in turn.

#### 1. *New Valley Corporation*

In *New Valley,* an associate administrator for the National Aeronautics and Space Administration ("NASA") failed to reconsider an agency's damages determination despite the contractor's compliance with the reconsideration procedures of the governing disputes clause. 119 F.3d at 1579. After more than four months, the contractor put NASA's head administrator on notice that it would consider the clause's procedures exhausted if he did not respond within nine days. *Id.* Approximately two months later, having received no response, the contractor filed suit in this Court. *Id.* (internal footnote omitted).

The Federal Circuit ultimately characterized the contractor's compliance with the disputes clause as "exhaustion" rather than "excusal," *see id.* at 1580–82, to which Defendant cites with much fanfare. *See* Def.'s Mem. (Nov. 21, 2011), at 4.

In considering "exhaustion" versus "excusal," the Court need not determine how many angels can dance on the head of a pin. Whether characterized as "exhaustion" in the face of agency obstinacy, or "excusal" in the face of unreasonable delay or refusal to take action, the outcome in *New Valley* would have been the same: that relief was inadequate or unavailable at the administrative level. Here, Mr. Henson did not respond to SUFI's multiple requests for a formal status report, and failed to provide even informal indications of claim status, for a period more than twice as long as in *New Valley.* Pl.'s Mem. (Nov. 7, 2011), at 4. As SUFI argues, *see id., New Valley* is on-point and "directly" supports excusing it from administrative exhaustion due to the contracting officer's material breach of the Disputes clause.

### 2. *H.B. Zachry Company*

In *H.B. Zachry,* a contractual disputes clause did not apply to a factual dispute in an underlying labor investigation, *see* 344 F.2d at 357, which resulted in a secondary contractual dispute when the Government withheld payments on account of the labor issue, *id.* at 354–55. The contracting officer disclaimed jurisdiction over the disputed labor facts and refused to issue a final decision on the withheld payments issue from which the contractor could appeal to the ASBCA. *Id.* at 356. The Court of Claims exercised jurisdiction in the first instance. *See id.* at 356–57.

Here, Defendant contends that the *H.B. Zachry* court's reasoning is mere dicta because the disputes clause did not apply to the underlying labor issue. Def.'s Mem. (Nov. 21, 2011), at 4 n. 3. Defendant's contention is unconvincing. After all, the disputes clause *did* apply to the resulting withheld payments issue. If anything, in the present case, Mr. Henson failed to provide a substantiated final decision on the *entire* attorneys' fees issue, not just an underlying element. *H.B. Zachry* provides further authority for the

Court's jurisdiction despite SUFI's failure to exhaust its appeal to the ASBCA.

### 3. *Oliver–Finnie Company*

In *Oliver–Finnie,* a contracting officer failed to issue findings on a contractor's claim for a period of almost fifteen months before the Court of Claims exercised jurisdiction. 279 F.2d at 503. Defendant distinguishes *Oliver–Finnie* from the present facts, stressing the delay there was much longer and that there was no final decision from the contracting officer. Def.'s Mem. (Nov. 21, 2011), at 5. Thus, Defendant argues that pursuing an administrative appeal would have been much more burdensome for the contractor in *Oliver–Finnie* than in the present matter. *Id.*

This reasoning is flawed. Here, agency counsel emailed SUFI a cryptic "deemed denial" on attorneys' fees without any explanation of the bases, and in spite of SUFI's past successes at the ASBCA on the underlying monetary claims. Without knowledge of any basis for the agency's position, appeal to the ASBCA would have been needlessly burdensome for SUFI. Indeed, after waiting more than six months for an unsubstantiated email denial on an issue with which the contracting officer already was "intimately familiar," *see* Pl.'s Mem. (Nov. 7, 2011), at 3, SUFI had even less hope of expecting a forthcoming reasoned decision from the contracting officer at the time of filing than did the contractor in *Oliver–Finnie.* Furthermore, to assign talismanic effect to *any* contracting officer's communication that is characterized as "final," no matter how sparse, would incentivize a race among contractors to file in the Court pre-decision, perversely undermining the very exhaustion norm the Government purports to protect. *Oliver–Finnie* provides even more support for excusing SUFI from administrative exhaustion requirements.

### *Conclusion*

For the foregoing reasons, the Court will not dismiss SUFI's July 8, 2011 complaint for failure to state a claim upon which relief can be granted. Defendant's motion is DENIED.

In accordance with RCFC 12(a)(4)(A)(i), Defendant's answer to SUFI's July 8, 2011

complaint is due on or before February 1, 2012. The parties are directed to submit their Joint Preliminary Status Report ("JPSR"), required by RCFC Appendix A, Rules 4 and 5, on or before February 24, 2012. In this JPSR, the parties specifically should address whether the two SUFI cases should be consolidated. Upon receipt of the JPSR, the Court will schedule a preliminary status conference with counsel for the parties.

IT IS SO ORDERED.



## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 12th day of September, 2014, a copy of the foregoing Brief for Defendant-Appellant, the United States - Replacement, was filed electronically. This filing was served electronically to all parties by operation of the Court's electronic filing system.

___/s/ Douglas T. Hoffman____
Douglas T. Hoffman
Attorney for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 5,684 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

_____/s/ Douglas T. Hoffman_____
Douglas T. Hoffman
Attorney for Defendant-Appellant
September 12, 2014
