No. 2014-5032, -5033

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

SUFI NETWORK SERVICES, INC.,

Plaintiff – Cross-Appellant,

v.

THE UNITED STATES,

Defendant – Appellant.

Appeal from the United States Court of Federal Claims
in 11-CV-453, Judge Thomas C. Wheeler

REPLY AND RESPONSE BRIEF FOR DEFENDANT - APPELLANT – REPLACEMENT

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

DOUGLAS T. HOFFMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-0547
Fax: (202) 514-8624

September 12, 2014 Attorneys for Defendant - Appellant

TABLE OF CONTENTS

SUMMARY OF THE REPLY ARGUMENT ....................................................1

REPLY ARGUMENT ....................................................2

I. The Trial Court Improperly Excused SUFI From Exhausting Its Administrative Remedies ....................................................2

A. Excusal Is Improper When A Contractor Has Not Attempted To Avail Itself Of The Appeal Portion Of Its Administrative Remedy ...............3

B. A Contractor Has Not Exhausted Its Administrative Remedy Where It Has Not Satisfied The Appeal Portion Of Its Administrative Remedy 9

C. Failing To Provide A Timely Final Decision Is Not A Material Breach When The Administrative Remedy Accounts For Such Circumstances ....................................................12

II. The Trial Court Improperly Made Its Award Under The Changes Clause...13

A. The Trial Court's Sole, And Improper, Basis For Award Was An Equitable Adjustment Pursuant To The Contract's Changes Clause, Just As SUFI Requested In Count II Of Its Complaint.......................14

B. The Trial Court Did Not Cite The "ALT I" Changes Clause, But Even If It Had, Award Under The "ALT I" Changes Clause Is Improper...16

C. SUFI Is Correct That Issue Preclusion Applies, But Its Application Means That SUFI May Not Recover Its Attorney Fees And Expenses ....................................................18

III. The Government's Interest Argument Was Timely Raised, The Trial Court Did Not Abuse Its Discretion By Considering The Argument, And SUFI Incurred No Actual Damage With Work Performance ................................22

A. The Government Timely Raised SUFI's Entitlement To Interest, But Even If It Did Not, SUFI Fails To Show The Trial Court Abused Its Discretion ....................................................22

B. SUFI Did Not Actually Incur Damages When Work Was Performed ....................................................25

IV. The Court Improperly Permitted Recovery Of Fees At SUFI's Attorneys' Standard Rates ....................28

A. The Trial Court Erred By Not Acknowledging SUFI's Refusal To Produce Documents Establishing Actual Market Rates ....................29

B. The Government Did Not Object To Testimony Establishing SUFI's Refusal To Produce Documents Containing Actual Market Rates.....30

C. SUFI Is Not Entitled To A Presumption That Its Attorneys' Standard Rates Are Reasonable Because It Negotiated Rates With Its Attorneys ....................31

COUNTER STATEMENT OF ISSUES FOR REVIEW ON CROSS-APPEAL...33

SUMMARY OF THE CROSS-APPEAL RESPONSE ARGUMENT....................33

CROSS-APPEAL RESPONSE ARGUMENT....................34

I. The Trial Court Properly Denied SUFI's Claim For 25 Percent Overhead And Profit On Its Attorney Fees Because Such Claim Was Akin To An Excessive Pass Through Charge Prohibited By FAR 52.215-23 ....................34

II. The Trial Court Correctly Denied SUFI's Overhead And Profit Claim .......36

A. The Trial Court Did Not Err By Not Applying Issue Preclusion To SUFI's Overhead And Profit Claim ....................36

B. Absent Issue Preclusion SUFI's Claimed 25 Percent Is Unsupported40

1. SUFI Did Not Justify Its Overhead Rate ....................41

2. SUFI Did Not Justify Its Profit Rate....................43

III. The Trial Court Properly Looked To FAR 52.215-23 For Guidance Because It Is Consistent With SUFI's Burden To Prove Entitlement To Overhead And Profit And The Quantum Of Any Such Award ....................46

IV. The Trial Court Properly Applied FAR 52.215-23 ....................50

A. SUFI's "Total Contract" Argument Is Waived And Incorrect ...........50

B. SUFI Did Not Add Value To The Work Of Its Attorneys....................51

C. The Trial Court Properly Rejected Mr. Calhoon's Testimony ...........53

CONCLUSION ..........................................................................................54

# TABLE OF AUTHORITIES

Cases

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,

960 F.2d 1020 (Fed. Cir. 1992) ....................23

*Ace Constr., Inc. v. United States*,

70 Fed. Cl. 253 (2006) .................... 47, 49

*Advanced Hydraulics, Inc. v. Otis Elevator Co.*,

525 F.2d 477 (7th Cir. 1975) ....................24

*Bill Strong Enterprises, Inc. v. Shannon*,

49 F.3d 1541 (Fed. Cir.1995)....................17

*Bluebonnet Sav. Bank, F.S.B. v. United States*,

266 F.3d 1348 (Fed. Cir. 2001) ....................47

*Blum v. Stenson*,

465 U.S. 886 (1984).................... 31, 32

*Carolina Power & Light Co. v. United States*,

573 F.3d 1271 (Fed. Cir. 2009) ....................49

*Chiu v. United States*,

948 F.2d 711 (Fed. Cir. 1991)....................28

*C.J. Langenfelder & Son, Inc., v. United States*,

341 F.2d 600 (Ct. Cl. 1965) .................... 11, 12

*Clauss Const.*,

ASBCA No. 53953, 04-1 B.C.A. (CCH) ¶ 32627 (Apr. 29, 2004).....................49

*Energy Nw. v. United States*,

641 F.3d 1300 (Fed. Cir. 2011) ...........................................................................49

*Fluor Enterprises, Inc. v. United States*,

64 Fed. Cl. 461 (2005) .........................................................................................47

*Gardiner, Kamya & Assocs., P.C. v. Jackson*,

467 F.3d 1348 (Fed. Cir. 2006) ...........................................................................24

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,

527 F.3d 1318 (Fed .Cir. 2008) ........................................................... 22, 39, 50

*Greenhill v. United States*,

96 Fed. Cl. 771 (2011) .........................................................................................26

*H.B. Zachry Co. v. United States*,

344 F.2d 352 (Ct. Cl. 1965) ..............................................................................7, 8

*Hensley v. Eckerhart*,

461 U.S. 424 (1983)..............................................................................................29

*Hubbard v. United States*,

480 F.3d 1327 (Fed. Cir. 2007) ...........................................................................27

*Hydrothermal Energy Corp. v. United States*,

26 Cl. Ct. 1091 (1992) ..................................................................... 42, 43

*Innovad Inc. v. Microsoft Corp.*,

260 F.3d 1326 (Fed. Cir. 2001) ............................................................ 37, 38

*Lowder v. Dep't of Homeland Sec.*,

504 F.3d 1378 (Fed. Cir. 2007) ..................................................................23

*Metric Constructors, Inc. v. NASA*,

169 F.3d 747 (Fed. Cir. 1999)......................................................................24

*Missouri v. Jenkins by Agyei*,

491 U.S. 274 (1989).....................................................................................26

*New Valley Corp. v. United States*,

119 F.3d 1576 (Fed. Cir. 1997) ........................................................ 9, 10, 12

*New York Shipbuilding Corp. v. United States*,

385 F.2d 427 (Ct. Cl. 1967) ............................................................ 6, 7, 9, 10

*Oliver-Finnie Co. v. United States*,

279 F.2d 498 (Ct. Cl. 1960) ............................................................... 4, 5, 6

*Paccon, Inc. v. United States*,

399 F.2d 162 (Ct. Cl. 1968) .........................................................................29

*Phillips v. Gen. Servs. Admin.*,

924 F.2d 1577 (Fed. Cir. 1991) ...................................................................26

*Placeway Const. Corp. v. United States*,

920 F.2d 903 (Fed. Cir. 1990)........................................................................9

*Qualcomm Inc. v. Broadcom Corp.*,

548 F.3d 1004 (Fed. Cir. 2008) ....................................................................23

*Scott Timber Co. v. United States*,

97 Fed. Cl. 685 (2011) ...................................................................................18

*Singleton Contracting Corp. v. Harvey*,

395 F.3d 1353 (Fed. Cir. 2005) .............................................................. 41, 47

*SUFI Network Servs., Inc. v. United States*,

108 Fed. Cl. 287 (2012) ......................................................................... 37, 39

*Sys. Fuels, Inc. v. United States*,

666 F.3d 1306 (Fed. Cir. 2012) .............................................................. 47, 49

*Tecon Corp. v. United States*,

411 F.2d 1271 (Ct. Cl. 1969) .........................................................................20

*Textron Def. Sys. v. Widnall*,

143 F.3d 1465 (Fed. Cir. 1998) ....................................................................24

*Thomas v. Dep't of Hous. & Urban Dev.*,

124 F.3d 1439 (Fed. Cir. 1997) .............................................................. 13, 14

*Thomas v. Gen. Servs. Admin.*,

794 F.2d 661 (Fed. Cir. 1986).......................................................................40

*Tip Top Const., Inc. v. Donahoe*,

695 F.3d 1276 (Fed. Cir. 2012) ....................................................................48

*United Partition Sys., Inc. v. United States*,

95 Fed. Cl. 42 (2010) ....................................................................................26

*United States v. Anthony Grace & Sons, Inc.*,

384 U.S. 424 (1966) ........................................................................................3

*Universal Ecsco Corp. v. United States*,

385 F.2d 421 (Ct. Cl. 1967) .......................................................................6, 7

*Veridyne Corp. v. United States.* ,

107 Fed. Cl. 762 (2012) ........................................................................ 48, 49

*W. Alaska Contractors, J.V.*,

ASBCA No. 46033, 95-1 B.C.A. (CCH) ¶ 27392 (Dec. 30, 1994).....................50

*West v. Potter*,

717 F.3d 1030 (D.C. Cir. 2013)......................................................................26

Statutes

28 U.S.C. § 1295(a)(3)........................................................................................ xii

28 U.S.C. § 2412(f)..............................................................................................27

28 U.S.C. § 2522 ................................................................................................ xii

42 U.S.C. § 1988 ..................................................................................................26

Rules

Federal Rule of Appellate Procedure 32(a)(7)(B) ....................................................2

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ..............................................2

Regulations

48 C.F.R. § 15.404-4.......................................................................... 43, 44, 45

48 C.F.R. § 2.101 ..................................................................................16

48 C.F.R. § 31.203 ................................................................................41

48 C.F.R. § 31.205-33........................................................................ 20, 21

48 C.F.R. § 52.215-23.......................................................................... passim

48 C.F.R. § 52.243-1(a)(1) (ALT I).............................................................18

48 C.F.R. Ch. 2, App. A......................................................................5, 6

STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, a related appeal is presently before this Court. Specifically, the Court heard oral argument in SUFI Network Services, Inc. v. United States, 2013-5039, -5040, on February 4, 2014. In that case, the Government appealed the Court of Federal Claims's November 8, 2012 decision granting plaintiff's motion for judgment upon the administrative record and the corresponding November 8, 2012 judgment granting SUFI Network Services, Inc. recovery of $114,138,259.99, plus interest, and reasonable costs pursuant to Rule 54(d). The November 8, 2012 judgment previously appealed relates to the underlying claim, whereas the present appeal relates to the attorney fees and expenses that SUFI allegedly incurred to prepare the underlying claim.

## JURISDICTION

Defendant-appellant appeals from the Court of Federal Claims's October 16, 2013 decision, and the corresponding October 17, 2013 judgment, awarding SUFI Network Services, Inc. $697,702.50 in attorney fees and $25,486.81 in expenses, plus cumulative interest at the Federal Reserve Board's prime rate, until payment. The United States filed a notice of appeal on January 6, 2014, which was timely pursuant to 28 U.S.C. § 2522, RCFC 58.1, and Fed. R. App. P. 4, and this Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

No. 2014-5032, -5033

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

SUFI NETWORK SERVICES, INC.,

Plaintiff - Cross-Appellant,

v.

THE UNITED STATES,

Defendant - Appellant.

Appeal from the United States Court of Federal Claims
in 11-CV-453, Judge Thomas C. Wheeler

REPLY AND RESPONSE BRIEF FOR DEFENDANT – APPELLANT

## SUMMARY OF THE REPLY ARGUMENT

Our opening brief established that the trial court committed four errors: excusing SUFI from exhausting its administrative remedies, granting SUFI summary judgment pursuant to the contract's Changes clause, permitting SUFI to recover interest from the date SUFI's attorneys performed their services, and permitting SUFI to recover amounts based upon its attorneys' standard rates. SUFI's four responses are unpersuasive. First, SUFI was required to exhaust its administrative remedy because excusing SUFI from exhausting an available

administrative remedy was improper, SUFI cannot be held to have constructively exhausted its administrative remedy when it did not attempt to do so, and a failure to timely provide a contracting officer's decision is not material when the administrative remedy provides for such a situation. Second, the Changes clause was the trial court's only basis for award, that basis was improper regardless of the version of the clause relied upon, and issue preclusion would result in no award. Third, we timely raised our interest argument, the trial court did not abuse its discretion in considering it, and SUFI did not actually incur damages when its attorneys performed work. Fourth, the trial court erred in failing to acknowledge SUFI's refusal to produce documents after testimony established their existence and in presuming the reasonableness of standard rates after SUFI refused to produce its (negotiated) actual market rates.

## REPLY ARGUMENT

### I. The Trial Court Improperly Excused SUFI From Exhausting Its Administrative Remedies

There is no dispute that SUFI has not exhausted its administrative remedy. At issue is whether the trial court properly excused SUFI from that requirement because appeal to the Armed Services Board of Contract Appeals (ASBCA) under the parties' Disputes clause was inadequate or unavailable. JA748 at ¶ 2; JA62-63.

SUFI offers two arguments. It posits that excusal was proper because the Government's alleged material breach – failure to provide a timely contracting

officer's final decision – made SUFI's administrative remedy inadequate or unavailable as a matter of law. Additionally, it maintains that the Government's alleged material breach resulted in SUFI having constructively exhausted its administrative remedy as a matter of law. These arguments are unpersuasive for three reasons: (1) excusal is improper when a contractor has not attempted to avail itself of the appeal portion of its administrative remedy, (2) exhaustion cannot be found when a contractor has not satisfied the appeal portion of its administrative remedy, and (3) when an administrative remedy permits appeal without a final decision, the failure to timely provide one is not a material breach.

### A. Excusal Is Improper When A Contractor Has Not Attempted To Avail Itself Of The Appeal Portion Of Its Administrative Remedy

The trial court correctly recognized that to permit excusal from an administrative remedy SUFI must show "'clear evidence' that an administrative remedy would be 'inadequate or unavailable.'" JA62 (citing *United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 429-30 (1966)). SUFI did not demonstrate that its administrative remedy was unavailable because it concedes that "SUFI *could* still have pursued an appeal at the ASBCA, despite the CO's

breach…."[1] SUFI's Resp. Br. (Resp.) 5. Absent showing unavailability, excusing SUFI from exhausting its administrative remedies was legal error.[2]

SUFI counters that no error occurred because SUFI's administrative remedy was unavailable, as a matter law. Resp. 5-6 ("a contractor is excused from pursuing its administrative remedy … when the agency breaches the disputes clause's prescribed administrative process."). SUFI is wrong because as we have shown, absent unavailability the law does not so provide. Indeed, only three of the six cases it relies upon are excusal cases, and those three cases are inapposite.

In SUFI's first "excusal" case, *Oliver-Finnie Co. v. United States,* the contracting officer failed to respond to two claims before the contractor filed in the Court of Claims. 279 F.2d 498, 503 (Ct. Cl. 1960). The court found the contracting officer's delay and non-response to the contractor's two claims unreasonable, concluding that "defendant cannot be heard to complain that the plaintiff should have suspended proceedings in this court … when defendant's own

---

[1] Emphasis in quotations is original unless otherwise noted.

[2] SUFI does not argue that the ASBCA was "inadequate." That is because it successfully appealed the deemed denial of its related $130,308,071.53 claim to the ASBCA in January 2006. In that matter, the ASBCA issued 11 decisions, including decisions responding to SUFI's three reconsideration requests, and awarded SUFI $10.9 million. The trial court was aware of SUFI's history before the ASBCA and the tribunal's adequacy. *SUFI Network Servs., Inc. v. United States*, 108 Fed. Cl. 287 (2012), *appeal docketed*, No. 13-5040 (Fed. Cir. Jan. 15, 2013).

action or lack thereof prompted [the contractor] to bypass the normal administrative sequence and commence this suit." *Id*. This court finding is inapt to this case for two reasons.

First, the specifics of the administrative remedy in *Oliver* are unknown because the actual clause is neither quoted nor discussed. *Id*. Although it is clear that the contractor appealed to the Secretary of the Army 11 days after "the successor contracting officer issued his findings of fact," it is unclear if this remedy was exclusive – like SUFI's – or also permitted filing at the court. It is also unclear whether *Oliver's* remedy permitted the contractor to proceed with a deemed denial, as SUFI could have here. JA748 at ¶ 2; 48 C.F.R. Ch. 2, App. A ("[T]he contractor may file a notice of appeal … citing the failure of the contracting officer to issue a decision.").

Second, even if *Oliver's* administrative remedy were identical to SUFI's – that is, appeal to the Secretary of the Army was exclusive, and findings of fact were not required to proceed past the contracting officer – *Oliver* is still inapt. The contractor in *Oliver* had no contracting officer response when it filed with the court; SUFI had a denial. *Oliver-Finnie Co.*, 279 F.2d at 503; JA60-61. Moreover, the delay in *Oliver* (one year and three months for the revised claim and one year and six months for the original claim) is almost three times as long as the present case (denied in just over six months). *Id*.

The trial court's reliance upon *Oliver* is similarly puzzling. JA63. It states that "SUFI had even less hope of expecting a forthcoming reasoned decision from the contracting officer at the time of filing than did the contractor in *Oliver-Finnie*." *Id*. But SUFI's "hope" is irrelevant; the issue is whether SUFI could proceed to the ASBCA – not whether SUFI could expect a "reasoned decision…." *Id*. Similarly, the trial court's concern that "assign[ing] talismanic effect to *any* contracting officer's communication that is characterized as 'final,' no matter how sparse, would incentivize … contractors to file in the Court pre-decision[]" and "perversely undermin[e] the very exhaustion norm the Government purports to protect[]" is misguided. *Id*. As our opening brief explained, SUFI's Disputes clause only permits appeal to the ASBCA – a tribunal with rules that allow contractors lacking a final decision to appeal. 48 C.F.R. Ch. 2, App. A. Thus, contrary to the trial court's presentation, the contractor's obligation to appeal to only the ASBCA is the same before and after a final decision is issued.

For SUFI's second "excusal" case, *Universal Ecsco Corp. v. United States*, the trial court wisely chose "not [to] determine whether to 'extend' *Universal Ecsco* to the present facts." 385 F.2d 421 (Ct. Cl. 1967); JA62. In *Universal* the court allowed a contractor to proceed on two claims despite its failure to exhaust. *Universal Escso Corp.*, 385 F.2d at 425 (citing *New York Shipbuilding Corp. v. United States*, 385 F.2d 427, 436 (Ct. Cl. 1967)). The contractor's two claims

accrued on May 12, 1961, and August 3, 1962. *Id*. at 424. On February 12, 1964, the parties reached an oral agreement on the claims, and on September 25, 1964, a written version of the agreement was sent to the contractor. *Id*. at 425. The contractor refused to sign the agreement because amounts it owed on another contract would have offset its recovery. *Id*. Over four months later, on February 1, 1965, the contracting officer told the contractor that if it did not sign the agreement, "he could not recommend any amount for payment …." *Id*. The contracting officer also stated that he could not "recommend any payment so long as plaintiff refused to release [one of the claims]." *Id*. In other words, the final decision was used as leverage to extort a favorable settlement.

*Universal* is properly decided, but inapplicable. A contracting officer withholding a final decision to extort a favorable settlement is improper. Moreover, *Universal's* plaintiff waited almost three years for its shortest claim and still had no decision. *Id*. at 424-25. Given that SUFI had its denial in about six months, JA60-61, and that there was "no evidence of … bad faith[,]" the trial court's refusal to extend *Universal Esco* was proper. JA62.

SUFI's third "excusal" case, *H. B. Zachry Co. v. United States*, a case involving amounts contingent upon whether certain labor laws applied to a contractor's truck drivers, is similarly unhelpful. 344 F.2d 352 (Ct. Cl. 1965). Most fundamentally, the administrative remedy's terms are unknown, other than it

contemplated a final decision and appeal to the ASBCA. *Id*. at 356. The plaintiff believed that a final decision was necessary for appeal, but that is unclear without contract terms.[3] *Id*. In any event, *H.B. Zachry* is inapposite for three reasons: (1) the court did not even reach whether the matter fell under the disputes clause, making the language SUFI relies upon dicta; (2) "the contracting officer … rendered no decision in the case"; and (3) there was uncertainty about whether the ASBCA had jurisdiction to hear the labor-related matters. *Id*. at 357 ("Even if we were to hold that the issues were within the provisions of the disputes clause of the contracts and were appealable to the board of contract appeals…."). In this case, SUFI's claim fell under its Disputes clause, SUFI had a denial, and the ASBCA's jurisdiction was unquestionable.

The trial court purported to distinguish *H.B. Zachry* by finding here that the Air Force's contracting officer "failed to provide a substantiated final decision on the *entire* attorneys' fees issue, not just an underlying element." JA63. That response is confounding because SUFI had a denial and did not require "a substantiated final decision" to proceed to the ASBCA.

---

[3] If the disputes clause in *H.B. Zachry* did require a final decision for appeal to the ASBCA, that would be an additional distinguishing feature because, as SUFI concedes, appeal to the ASBCA was available to SUFI without a decision.

### B. A Contractor Has Not Exhausted Its Administrative Remedy Where It Has Not Satisfied The Appeal Portion Of Its Administrative Remedy

"Generally, exhaustion of administrative remedies should occur before a case is ripe for judicial review." *Placeway Const. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990). SUFI concedes non-exhaustion, and the trial court did not find exhaustion – it instead excused SUFI from exhaustion. Resp. 5; JA62. Having conceded non-exhaustion, SUFI argues constructive exhaustion. Resp. 6 ("or may be considered to have exhausted that remedy, when the agency breaches the disputes clause[]"). Such a holding would be legal error because no precedent permits finding constructive exhaustion when a contractor has not attempted to satisfy the appeal portion of its administrative remedy. Although SUFI presents three exhaustion cases, they are *actual* exhaustion cases and do not support SUFI's proposition that a Government breach results in constructive exhaustion. *Id*.

SUFI argues that *New Valley Corp. v. United States* and *New York Shipbuilding Corp. v. United States* permit constructive exhaustion because the "disputes clauses … were just the same, requiring an administrative remedy as 'final' agency action and contemplating judicial action only for limited review of the administrative decision…." 119 F.3d 1576 (Fed. Cir. 1997); 385 F.2d 427 (Ct. Cl. 1967); Resp. 9. Even if the "disputes clauses … were just the same[]" in these

cases, which they are not, the facts are distinguishable.[4] In *New Valley* the contractor exhausted its two-step administrative remedy by submitting its claim to NASA's Associate Administrator for Space Flight and then appealing to NASA's Administrator and New Valley's President. *New Valley Corp.*, 119 F.3d at 1580-82. Likewise, in *New York Shipbuilding* the contractor submitted its claim to the first level of review, received an unsatisfactory decision, and then appealed to the Maritime Administrator.[5] *New York Shipbuilding Corp.*, 385 F.2d at 436-37. In

---

[4] Although not essential to the Court's decision, SUFI's presentation of the disputes clauses of *New Valley* and *New York Shipbuilding* is misleading. Both cases have two-step administrative remedies, but the *New Valley* remedy permits proceeding past the first step of the remedy to the appellate step after 60 days have passed (and without a decision). In contrast, the *New York Shipbuilding* remedy required a decision to undertake the appellate step. As the trial court recognized, SUFI's two-step remedy allowed it to proceed past the first step, and undertake the required follow-on appellate step, without a decision. *SUFI Network Servs., Inc.*, 108 Fed. Cl. at 295 ("SUFI appealed to the ASBCA from the deemed denial of its claims, since the contracting officer had failed to issue a final decision."); JA46 ("SUFI … fil[ed] its Board appeal as a deemed denial.").

[5] The court in *N.Y. Shipbuilding* ultimately found the entire administrative remedy inadequate or unavailable because the Government – for the first level of review – "improper[ly] attempt[ed] to have the wrong officer decide the dispute (and then only in summary fashion)[,]" and – for the second level of review – had an unjustified six-month "delay in the creation of the board of appeals." *New York Shipbuilding Corp.*, 385 F.2d at 436-37. That finding, however, does not change the fact that the contractor attempted to satisfy the initial and appellate portion of the prescribed administrative remedy.

stark contrast to both cases, SUFI admits it "*could* still have pursued an appeal at the ASBCA," but did not. Resp. 5.

In SUFI's final exhaustion case, *C.J. Langenfelder & Son, Inc., v. United States*, the court found the agency's attempt to make the contractor perform its administrative remedies a second time an unreasonable delay. 341 F.2d 600, 603-605 (Ct. Cl. 1965). In *C.J.*, the contracting officer granted part of the claim. *Id*. at 603. The contractor, pursuant to its administrative remedy, appealed that decision to the Administrator of the Federal Aviation Agency (AFAA). *Id*. Eleven months later, the contracting officer's determination was overruled. *Id*. Thus, having exhausted the appeal portion of its administrative remedy, and armed with the AFAA's favorable appeal decision, the contractor submitted a second claim (for $160,964) to the contracting officer. *Id*. Approximately 10 months later, a submission "on behalf of the contracting officer" was made to the agency's Contract Appeals Panel requesting that the AFAA decision be reopened. *Id*. Approximately three months later, the AFAA granted the request and referred the case for a full rehearing. *Id*. Thus, the agency made the contractor wait 13 months (after having already waited 11 months for the AFAA's decision) for a decision that essentially made the contractor restart its administrative remedy *after* it had already successfully exhausted its administrative remedies. Unsurprisingly, the contractor filed suit in the Court of Claims. The court, after finding that the agency

could not "reopen[] the settled question of liability in the guise of an impermissible rehearing[,]" found that the contractor should not have to exhaust its administrative remedy a second time. *Id*. at 605 (citations omitted). Unlike *C.J.*, we ask only that SUFI exhaust the appeal portion of its administrative remedy a first time.

The important distinction between "excusal" and "exhaustion" was completely lost on the trial court. JA63 ("In considering 'exhaustion' versus 'excusal,' the Court need not determine how many angels can dance on the head of a pin."). The trial court reasoned that under either construct "the outcome in *New Valley* would have been the same: that relief was inadequate or unavailable at the administrative level." *Id*. That is incorrect. In *New Valley*, the contractor attempted both steps of its administrative remedy, thereby permitting the court to make findings (necessary for excusal) on the adequacy and availability of *both steps* of the remedy. In stark contrast, SUFI skipped the appeal portion of its remedy without *any* evidence of inadequacy or unavailability. Indeed, SUFI concedes availability, and adequacy is established by SUFI having already recovered $10.9 million, in identical circumstances, under the same contract.

C. Failing To Provide A Timely Final Decision Is Not A Material Breach When The Administrative Remedy Accounts For Such Circumstances

SUFI errantly argues that we "do[] *not* challenge the CFC's determination that the CO 'materially breached the Disputes clause by failing to issue a final

decision within a reasonable timeframe.'" Resp. 5. For all the reasons presented above, and in our opening brief, the contracting officer's failure to timely issue a final decision is not a material breach. "A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." *Thomas v. Dep't of Hous. & Urban Dev.*, 124 F.3d 1439, 1442 (Fed. Cir. 1997) (citing 5 Arthur L. Corbin, *Corbin on Contracts* § 1104 (1964)). Where, as here, the administrative remedy's exclusive appellate tribunal (the ASBCA) explicitly permits contractors to proceed without a decision, and the contractor has already successfully availed itself of the appellate step of its administrative remedy without a decision, such decision is not "a matter of vital importance, or … the essence of the contract." *Id*.

Because SUFI did not exhaust its administrative remedy before filing its complaint, and excusal is not warranted, SUFI did not state a claim upon which relief could be granted. Thus, the trial court erred by failing to dismiss pursuant to rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).

## II. The Trial Court Improperly Made Its Award Under The Changes Clause

Our opening brief established that the trial court's sole basis for SUFI's recovery – an equitable adjustment under the contract's Changes clause – was improper. SUFI responds that the trial court actually made its award under a breach theory, that it relied upon the "ALT I" changes clause (although the Court

did not include "ALT I" in its citation), and that issue preclusion applies. SUFI's three arguments are meritless.[6]

A. The Trial Court's Sole, And Improper, Basis For Award Was An Equitable Adjustment Pursuant To The Contract's Changes Clause, Just As SUFI Requested In Count II Of Its Complaint

The trial court's analysis of whether SUFI was entitled to recover its attorney fees began and ended with its analysis of SUFI's right to do so "Under the Contract's Changes Clause." JA 44. On that basis alone, the court concluded SUFI could recover its attorney fees. JA42 ("SUFI is entitled to its attorneys' fees claim as an equitable adjustment under the Changes clause of the contract."); JA44 ("C. SUFI's Fee Claim Is Compensable As an Equitable Adjustment Under the Contract's Changes Clause …"); *id*. ("at issue is whether SUFI's attorneys' fees claim is itself allowable as an equitable adjustment[]"); JA47 ("SUFI is entitled to its attorneys' fees claim as an equitable adjustment."). Indeed, the trial court said it would not address SUFI's breach claim:

> SUFI asserts entitlement to its attorneys' fees (i) as damages under the contract and PSA, *see* Compl. (Jul. 8, 2011), at 4 ¶¶ 19-22; and (ii) in the alternative, as an equitable adjustment under the Changes clause, *see id*. at 5 ¶¶ 23-25.

---

[6] SUFI's assertion that our argument in this regard means we "*do[] not contest that SUFI can recover its attorney costs*[,]" is absurd and warrants no further comment. Resp. 11. For all the reasons described here, and in our opening brief, we do challenge the recovery of these fees.

. . .

> The Court *need not address* SUFI's first theory of entitlement because there is no genuine dispute that SUFI is entitled to its attorneys' fees claim as an equitable adjustment under the Changes clause of the contract.

JA42 (emphasis added).

In our opening brief, we showed that the Changes clause does not permit a claim for the types of costs SUFI claims here. *See* Gov't. Br. 12-17. SUFI provides no direct response. Instead, SUFI argues that despite the trial court's explicit refusal to consider SUFI's breach claim, "the CFC grounded its ruling on breach…." Resp. 12. SUFI is incorrect, as the trial court's analysis makes plain. The court observed at the outset that SUFI's complaint presented two distinct bases for entitlement: Count I for beach damages, and Count II for an equitable adjustment under the Changes clause. JA42. SUFI recovered pursuant to Count II, after the trial court declined to address Count I, despite the fact that Count II received no treatment in the parties' cross-motions for summary judgment. JA259 at n.16. SUFI now argues that although Count II explicitly requested an "equitable adjustment" under the Changes clause, Count II was implicitly identical to its Count I claim for breach damages. Resp. 13 ("courts and commentators sometimes now state that a government breach entitles the contractor to an 'equitable adjustment' under the contract[]"). We do not dispute that "SUFI sought the identical damages" under both Counts, but that does not mean that the

two independent bases of recovery somehow merge such that this Court may view an explicit award pursuant to Count II as an implicit award pursuant to Count I. If the trial court had intended recovery pursuant to Count I, it would have addressed that basis. JA42.[7]

B. The Trial Court Did Not Cite The "ALT I" Changes Clause, But Even If It Had, Award Under The "ALT I" Changes Clause Is Improper

SUFI argues that we cite the wrong Changes clause and that award under the "ALT I" Changes clause – in tandem with the Disputes clause – is proper. SUFI is wrong on both fronts. We cite the clause that the trial court relied upon; if it had relied upon the "ALT I" clause, it would have made that distinction in its opinion. JA41. But even if SUFI were now able to rely upon a different clause than that cited by the trial court, the "ALT I" clause can only be used when "the requirement is for services … and no supplies are to be furnished…."[8] Because SUFI provided supplies, using the "ALT I" Changes clause is improper. JA73 ("SUFI eventually provided the cabling, wiring, telephone equipment, and other materials and

---

[7] To be sure, in its last paragraph of analysis, the trial court touched base with breach theory, stating, in conclusory fashion that "SUFI's attorneys' fees claim is 'a direct and foreseeable consequence' of the AFNAFPO's material breach." JA 47. But that hardly mattered as the trial court had already eschewed breach analysis; and, any analysis supporting that conclusion depended upon the erroneous idea that SUFI could recover under the Changes clause.

[8] "Supplies" is defined as "all property except land or interest in land." 48 C.F.R. § 2.101.

services to supply telephones in the rooms of lodgings at Air Force bases in Germany and to run and maintain the telephone services.”).

Nonetheless, SUFI argues, without legal citation, that “[i]n such a circumstance [presumably, the applicability of ALT I], breach damages can also properly be described as an equitable adjustment under the combined working of the Changes and Disputes clause….” Resp. 14. It is unclear, however, what special circumstance could make the Government liable for claim preparation attorney fees as a consequence of the Changes clause. *Cf. Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 n. 10 (Fed.Cir.1995) (en banc). SUFI’s theory is built on an oil and water mixture of principles ranging from the scope of the Disputes clause (to cover breaches) to causation, to the fact that constructive changes are cognizable under the Changes clause. But there is no alchemy of the sort SUFI seeks among these disparate ideas and no logical conclusion that flows from their existence – let alone one that would entitle SUFI to an equitable adjustment for attorney fees. Rather, SUFI’s conclusion is a product of its own unfounded, conclusory assertions that “claim preparation is part of the ‘services to be performed’ under the contract” and that the Government’s breach “require[s] claim preparation.” Resp. 14. This conclusion departs from

settled law concerning the payment of attorney fees and, not surprisingly, distorts the reach of SUFI's contract enroute.[9]

In sum, the claim preparation services of SUFI's attorneys are unrelated to providing a telephone system, are not the "services to be performed[]" under the contract, and thus, are not compensable under the Changes clause.[10] JA73 at ¶ 6; 48 C.F.R. § 52.243–1(a)(1) (ALT I); *Scott Timber Co. v. United States*, 97 Fed. Cl. 685, 707 (2011) ("claim-preparation costs are not generally recoverable") *reversed on other grounds by* 692 F.3d 1365 (Fed. Cir. 2012).

### C. SUFI Is Correct That Issue Preclusion Applies, But Its Application Means That SUFI May Not Recover Its Attorney Fees And Expenses

As presented in our opening brief, when SUFI submitted its $130,308.071.53 claim it "did not include any claim preparation costs for SUFI's

---

[9] SUFI argues that "breach damages and equitable adjustments flow from a contract which contains 'any disputes' language like the SUFI Contract's Disputes clause." Resp. 14. We presume that means that if SUFI wanted to submit a claim for breach damages, it had to submit a claim. But it does not follow that the Disputes clause alone, or in combination with the Changes clause, permits recovery for attorney fees. Indeed, SUFI's inability to cite one case where these two clauses, alone or in combination, resulted in the contractor recovering claim-preparation attorney fees, suggests that the clauses do not contemplate such recovery.

[10] Indeed, the only contractor reimbursement under the contract is pursuant to the Contractor Fees clause. JA73 at ¶ 6; JA252-53 ("The Contractor's return on investment … will be a percentage of the charges (dollar amount) applied to the transient guests' billing for using the telephone service.").

*attorneys* (attorney fee claim), though it did include claim preparation costs for SUFI *employees* (employee fee claim)." Gov't. Br. 3 (citing JA2000). Both parties, before the trial court, presented issue preclusion arguments that were unambiguously "reject[ed] … because the ASBCA never clearly decided the attorneys' fees issue." JA42. The parties' positions before the trial court and this Court can be summarized as follows: SUFI argued that the ASBCA implicitly granted SUFI's attorney fee claim by explicitly granting SUFI's employee fee claim and that only the quantum of SUFI's attorney fee claim remained at issue; we maintained that the ASBCA explicitly denied SUFI's attorney fee claim (making resolution of quantum unnecessary) and explicitly granted its employee fee claim.

The ASBCA explicitly resolved SUFI's attorney fee claim by stating

> Since Mr. Claybrook undertook to represent SUFI in its claim preparation and in this litigation on a one-third contingency basis (finding 340), and no other basis is disclosed for other SUFI attorneys, we need not rule on the allowability of their legal fees and expenses. Once this decision is promulgated, Messrs. Claybrook et al. presumably will be compensated based upon their contingent fee arrangement with SUFI.

JA3326. Although the ASBCA said "we need not rule[,]" as explained below, it looked to the FAR principle that provides that "professional and consultant service

… not [be] contingent upon recovery….” 48 C.F.R. § 31.205-33(b).[11] SUFI disagrees, positing that the ASBCA's explicit employee-fee grant was also an implicit grant of SUFI's attorney fee claim. SUFI's view is incorrect.

First, SUFI's view makes finding of fact 340 superfluous. That ASBCA finding states: "Mr. Claybrook represented SUFI in preparing its 1 July 2005 claim and in litigating this appeal on a one-third contingent fee basis…." JA3326. This finding was included because it was essential to, and explicitly referenced in, the ASBCA decision. *Id*. SUFI's interpretation errantly suggests that the ASBCA had no purpose in including or citing finding of fact 340. *Tecon Corp. v. United States*, 411 F.2d 1271, 1272 (Ct. Cl. 1969) ("This case was referred to [the board] with directions to make recommendation for conclusions of law…. The commissioner has done so in an opinion … wherein such facts as are necessary to the opinion are set forth.").

---

[11] Under that principle, the fees of a party that enters a contingent-fee arrangement are not compensable. 48 C.F.R. § 31.205-33(b) (''Costs of professional and consultant services are allowable … when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Government.''). The trial court erred again when it adopted SUFI's interpretation of this unambiguous language (that should provide guidance on this contract, although not controlling). It held that the language, rather than meaning what it says, "merely provides guidance as to fee recovery, setting attorneys' fees at 'the 'lodestar' amount of the hours worked at the normal hourly rate.''' JA43.

Second, SUFI's view does not account for the ASBCA's quote of 48 C.F.R. 31.205-33 including the regulation's "contingent" language. JA3326. The ASBCA quoted 48 C.F.R. 31.205-33(b), stating

> Costs of professional and consultant services are allowable subject to this paragraph … when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Government (but see … 31.205-47).

*Id*. The "contingent" language, although unnecessary to resolve SUFI's employee claim, was essential to resolve SUFI's attorney fee claim, and that is why it is included. JA3326-27.

In sum, both parties analyzed the ASBCA's decision and made preclusion arguments that were rejected. Of course, the tribunal best suited to know what the ASBCA decided is the ASBCA. That SUFI is unwilling to return to the tribunal that it maintains resolved entitlement in its favor evidences its uncertainty about that position. Thus, although SUFI's issue preclusion argument provides no basis for awarding SUFI's attorney fee claim, it does underline the trial court's error in excusing SUFI from exhausting its administrative remedy. The remedy that SUFI was excused from would have placed the parties before the ASBCA – the tribunal best suited to decide the parties' preclusion arguments.

## III. The Government's Interest Argument Was Timely Raised, The Trial Court Did Not Abuse Its Discretion By Considering The Argument, And SUFI Incurred No Actual Damage With Work Performance

Our opening brief established that the trial court improperly permitted SUFI to recover interest from the date SUFI's attorneys performed their work because such recovery is contrary to the Partial Settlement Agreement's (PSA) explicit terms. Gov't. Br. 17-21. SUFI responds that such argument was untimely and that SUFI "actually incurred" damages pursuant to the parties' PSA on the same day that work was performed. SUFI is wrong because the interest argument was timely, the trial court did not abuse its discretion because SUFI cannot establish equitable estoppel, and SUFI did not incur any actual damage when work was performed.

### A. The Government Timely Raised SUFI's Entitlement To Interest, But Even If It Did Not, SUFI Fails To Show The Trial Court Abused Its Discretion

SUFI contends that the Government waived its right to contest the specific date from which SUFI demanded interest, even though "the government generally denied SUFI's entitlement to interest." Resp. 21. The only legal basis SUFI offers is the principle that new ideas will not be decided in the first instance on appeal. Resp. at 22 (citing *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed .Cir. 2008)).

The short answer, of course, is we are not challenging this in the first instance on appeal. We raised it before the trial court. And, presumably because we broadly challenged SUFI's claim for interest, the trial court did "not deem it necessary or appropriate" to discuss SUFI's waiver argument. JA108; JA317; JA2751; *see Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007) ("failure to discuss particular contentions in a case … does not mean that the tribunal did not consider them").

Thus, to make this challenge, SUFI must demonstrate the trial court abused its discretion by considering our position. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019 (Fed. Cir. 2008) ("equitable defense of waiver [is reviewed] for an abuse of discretion.") (citation omitted). SUFI cannot demonstrate the necessary elements, specifically, any misleading statement or conduct, SUFI's reliance, and material prejudice. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992). SUFI makes a weak pass at that burden, arguing only that it "could have introduced fuller evidence of its fee payments" and that we "foreclosed SUFI's negotiators of the PSA from testifying" about the PSA's language. Resp. 24; *id*. at n.15; *id*. at 24. These arguments fail.

SUFI's fee-payment argument relates to the factual issue of quantum of damages that the trial court could still undertake. Thus, this argument fails because prejudice is not shown by having lost the *opportunity* to put on evidence; it is

shown by the *loss of* evidence. *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 482 (7th Cir. 1975) ("Since Anderson is dead, the crucial witness on this question is unavailable, and Otis is advised that there are no records. Hence, Advanced's delay … has sorely prejudiced Otis…."). SUFI does not argue that "fuller evidence of its fee payments" is lost. Resp. 24.

SUFI's negotiation-testimony argument – that testimony by the "negotiators of the PSA" would have aided the court in interpreting the PSA – fails because the allegedly helpful testimony is not lost. *Advanced Hydraulics, Inc.*, 525 F.2d at 482. But even if it were lost, SUFI's argument is contrary to law because "[c]ontract interpretation is a question of law over which [this Court] exercise[s] complete and independent review." *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998). Thus, if this Court determines the language at issue is clear, that ends the matter and the evidence is immaterial. If the Court finds the contract is ambiguous, presumably the matter could be returned for further fact finding by the trial judge. *See Gardiner, Kamya & Assocs., P.C. v. Jackson*, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (when the language can reasonably be interpreted in more than one way, "determin[ing] whether there is an ambiguity is a question of law"); *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999).

B. SUFI Did Not Actually Incur Damages When Work Was Performed

Our opening brief established that the hourly charges at issue were not "damages [that] are actually incurred" under the PSA when work was performed because the charges were subject to a contingent-fee arrangement that delayed payment. Gov't. Br. 17. SUFI responds with three meritless arguments.

First, SUFI argues that "[w]hen SUFI actually paid … pursuant to its contingency agreement is beside the point[,]" because "SUFI incurred the *obligation* for payment of the fees at the same time as the hours were worked[,]" and "[t]hat is when the *damages* were incurred…." Resp. 25. This conclusory analysis simply assumes what SUFI must prove. The PSA, for the award of interest from a certain date, requires that SUFI show that "damages are actually incurred" on that date. JA1980. SUFI cannot baldly equate "obligation" with "damages [that] are actually incurred" to argue that actual payment is irrelevant. SUFI's only, and wholly inadequate, justification for equating "obligation" with "damages [that] are actually incurred" is the definition of "incur."[12] Resp. 25. But under the PSA, "incur" is not the end of the inquiry. SUFI must demonstrate that it

[12] We do not dispute SUFI's definition of "incur" – other than to note that the definition's parenthetical merely provides two examples, and is not an exhaustive list of, potentially-incurred items. Resp. 25.

incurred *actual damages*, and the PSA – the sole basis for SUFI's recovery – does not equate *actual damages* with a mere *obligation*.

Second, SUFI argues that the trial court got it right based upon precedent interpreting the Equal Access to Justice Act (EAJA). Resp. 26-27. This analysis is flawed. Most fundamentally, courts having examined "incurred" to determine *liability* for attorney fees under EAJA does not establish that SUFI and the Air Force intended an identical interpretation of "incurred" to determine *interest accrual* under the PSA.[13] Indeed, the three EAJA cases that SUFI cites are silent on when attorney fees are "incurred" for purposes of interest accrual.[14] This makes sense because EAJA-award interest occurs only when "the United States appeals an award of costs or fees" and the accrual period is set by the statute. 28 U.S.C.

---

[13] SUFI's response goes beyond the statutory fee-shifting EAJA cases cited by the trial court to two statutory fee-shifting Title VII cases. Resp. 27 n.16. These cases are even further afield than SUFI's EAJA cases because they stand only for the proposition that when recovering attorney fees pursuant to Title VII, it is permissible for a court to compensate for delay by adding interest. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *West v. Potter*, 717 F.3d 1030, 1033-34 (D.C. Cir. 2013). Here, SUFI's only basis for interest is the PSA and Title VII is unhelpful for interpreting the PSA's terms because Title VII does not include the term "incur," or any variation thereof. 42 U.S.C. § 1988.

[14] *Greenhill v. United States*, 96 Fed. Cl. 771, 776 (2011) (discussing "incurred" for EAJA liability, no interest claim); *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991) ("conclude[ing] that Phillips incurred attorney fees within the meaning of the EAJA[,]" no interest claim); *United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 53 (2010) ("A plaintiff 'incurs' fees and expenses for the purposes of EAJA[,]" no interest claim).

§ 2412(f) ("the date of the award through the day before the date of the mandate of affirmance.").

Third, SUFI argues that there is a "conceptual problem[]" with our position inasmuch as SUFI's attorney fees are calculated using the lodestar method. The relevance there, SUFI asserts, is that "the lodestar method is a construct that relies on the actual hours worked." Resp. 27. "Thus," SUFI concludes, "the date the work was performed is the only reasonable, logical date to use in calculating interest under this construct…." *Id*. Expressed differently, SUFI posits that no matter what the PSA's terms say about calculating interest, interest must be calculated from the date the work was performed because SUFI used the lodestar method.

As support for this theory, SUFI relies upon two statutory fee-shifting EAJA cases involving the method for making cost-of-living adjustments (COLA) to EAJA's statutory-maximum hourly rate. *Id*. These cases are inapposite because they do not inform calculating *interest* under the *PSA*. But even if they did, they do not hold that courts can only consider "when the work is *performed*" and must ignore "when the fee is paid." *Id*. To the contrary, in *Hubbard v. United States*, this Court stated that "most of the attorney fees presumably were incurred *and paid in that year or before*…." 480 F.3d 1327, 1334 (Fed. Cir. 2007) (emphasis added). Similarly, in *Chiu v. United States*, this Court understood that the plaintiff had paid

his attorney fees and explicitly stated that "[i]f he did not, then he himself has suffered no economic loss from delay in reimbursement." 948 F.2d 711, 722 n.8 (Fed. Cir. 1991). Thus, like *Chiu*, until SUFI paid its attorney fees, it "suffered no economic loss from delay in reimbursement." *Id*.

The trial court committed legal error by misinterpreting the unambiguous PSA to permit interest accrual from the date SUFI's attorneys performed their work, rather than from the date of SUFI's claim.

## IV. The Court Improperly Permitted Recovery Of Fees At SUFI's Attorneys' Standard Rates

Our opening brief established SUFI's admission that documents proving *actual* market rates between SUFI and its attorneys existed, and that SUFI refused to produce them on grounds of privilege and undue burden. The trial court erred in not using the *Laffey* rates after failing to acknowledge SUFI's flagrant refusal to produce the rates that it *actually* paid its attorneys. This error was precipitated by presuming SUFI's attorneys' standard rates were reasonable despite the gaping hole in SUFI's proof. JA769 at ¶¶ 5, 7, 8; JA3016 at 12-19.

SUFI does not respond to this argument. Instead, SUFI reframes our argument – that reliance upon a presumption of reasonableness is inapt when a plaintiff fails to produce documents establishing the *actual* market rates – as a complaint that "SUFI put in only oral testimony about the fact that it had paid

C&M's standard rates…." Resp. 28. Next, SUFI argues that we did not preserve an objection to the testimony (that we had no objection to – we objected to SUFI's discovery failure). Finally, SUFI posits that even if we preserved the objection (to testimony), it was unfounded. At bottom, SUFI's feigned confusion about the contours of our argument leaves it unchallenged. Even so, we respond below.

### A. The Trial Court Erred By Not Acknowledging SUFI's Refusal To Produce Documents Establishing Actual Market Rates

SUFI had the burden to establish the reasonableness of its claimed rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the evidence necessary to do so was the hourly-rate agreement between SUFI and its attorneys (before transitioning to a contingent-fee arrangement), and the bills SUFI paid under that agreement. SUFI possessed this evidence, and SUFI's refusal to produce it – claiming privilege and undue burden – should have been subject to an adverse inference. JA2764 at l.19-JA2765 at l.5 ("The first part of the case when we received the material breach, all that was done on an hourly basis."); JA2765 at ll.15-19 ("After 2004 it was all contingency-based. Prior to that we had paid on an hourly basis."); JA2946 at l.7-JA2947 at l.5; JA2763 at ll.9-14; JA3016 at ll.12-19 ("I think we considered that part of the overly broad and unduly burdensome part."); *Paccon, Inc. v. United States*, 399 F.2d 162, 172 (Ct. Cl. 1968).

SUFI's response – that the trial court relied on other evidence – is unavailing. Resp. 28-30. If SUFI never agreed to pay its attorneys' standard hourly rates, then the following evidence that the trial court relied upon is inconsequential: (1) rates typically charged by SUFI's attorneys; (2) expert testimony that SUFI's attorneys' rates were comparable to his firm's rates; (3) SUFI's attorneys' credentials; and (4) market conditions in Washington, D.C.[15] If SUFI had agreed to pay (and paid) its attorneys' standard hourly rates, such agreement (and payment) would be in the record. Thus, its absence negates the presumption of reasonableness that was the foundation of the trial court decision.

B. The Government Did Not Object To Testimony Establishing SUFI's Refusal To Produce Documents Containing Actual Market Rates

SUFI correctly presents that it introduced "evidence that SUFI had paid C&M's standard rates prior to entering into a contingency fee arrangement[,]" and that we "elicited testimony from Mr. Myers" on that topic at trial. Resp. 31-32. This testimony went unchallenged because it establishes that documentation proving the *actual* hourly rate (or *actual* market rate) that SUFI agreed to pay – and did pay – its attorneys, exists, is within SUFI's control, and was not produced.

Even though SUFI should have provided these records with its claim, we took the additional step of requesting them. SUFI argues that our document

---

[15] SUFI is also mistaken that this evidence went unchallenged. JA526-27.

request "was so broad as literally to cover every document within C&M's possession, and that SUFI had objected to its overbreadth," but that does not matter because "[a]n objection to part of a request must specify the part and permit inspection of the rest." Resp. 32; RCFC 34(b)(2)(C). Thus, we were not obligated to chase the records that SUFI needed to satisfy its burden.

In sum, we proved that: records exist establishing the actual market rate between SUFI and its attorneys, we requested the records, and SUFI refused to produce them. Expert reports, credentials, and market conditions are hollow where a plaintiff refuses to produce records that would have definitively established what it agreed to, and actually paid, its attorneys.[16]

C. SUFI Is Not Entitled To A Presumption That Its Attorneys' Standard Rates Are Reasonable Because It Negotiated Rates With Its Attorneys

The cornerstone of the trial court's finding that SUFI should recover its attorneys' standard rates is that if "the requested rates are 'in line with those prevailing in the community,' they are presumptively reasonable." JA20 (citing *Blum v. Stenson*, 465 U.S. 886, 896 [*sic*, 895] n.11 (1984). SUFI argues that the

[16] SUFI, after positing that a "best evidence" objection was there to be made, explains how this non-existent objection would be unfounded. Resp. 34-36. Because we did not intend to make the objection, we do not defend it.

trial court's reading of *Blum* is "wholly consistent[] with the *Blum* guidelines, which require application of prevailing rates…."[17] Resp. 36 n.20. We disagree.

*Blum* properly recognizes that the hourly rates set by a court are not "market rates." *Blum*, 465 at 895 n.11 ("§ 1988 fee determination[s] [are] made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee … is paid by the losing party."). Despite preferring market rates, the Supreme Court recognizes the "inherent difficult[y]" in setting them because "[m]arket prices … are determined by supply and demand." *Id*. In other words, the Supreme Court in *Blum* used rates "in line with those prevailing in the community" only because it lacked evidence of an actual "market rate." *Id*.

The trial court should have faced no such difficulty here because SUFI had negotiated, agreed to pay, and paid its attorneys hourly rates. JA2764 at l.19-JA2765 at l.5; JA2765 at ll.15-19. If SUFI had produced the records containing these hourly rates, the trial court would have had the rates that the Supreme Court prefers – actual market rates. *Blum*, 465 at 895 n.11. Thus, the trial court default to standard rates, after we established SUFI's refusal to produce existing records of actual market rates (that SUFI negotiated), was reversible error.

---

[17] SUFI also cites *Kattan* and *Laffey*. Resp. 36 n.20. These cases, like *Blum*, do not involve a plaintiff refusing to produce records establishing the hourly rates that plaintiff negotiated, agreed to pay, and paid, its attorneys.

## COUNTER STATEMENT OF ISSUES FOR REVIEW ON CROSS-APPEAL

1. Whether SUFI's claim for 25 percent overhead and profit is akin to an excessive pass through charge prohibited by 48 C.F.R. § 52.215-23 .

2. Whether SUFI's claim for 25 percent overhead and profit was subject to issue preclusion, and whether SUFI's 25 percent rate is supported by the record.

3. Whether 48 C.F.R. § 52.215-23 is consistent with SUFI's burden to prove entitlement to, and the quantum of, any overhead and profit award.

4. Whether 48 C.F.R. § 52.215-23 was properly applied.

## SUMMARY OF THE CROSS-APPEAL RESPONSE ARGUMENT

The trial court properly found that SUFI's claim for 25 percent overhead and profit (or burden) on its attorney fees was akin to an excessive pass-through charge because SUFI did not add value to its attorneys' claim preparation. SUFI alleges three meritless errors. First, the trial court properly declined to find issue preclusion because the issue was not fully litigated or identical, and SUFI's 25 percent burden is unsupported. Second, the trial court properly considered 48 C.F.R. § 52.215-23 (or FAR 52.215-23) as guidance because there is no legal presumption of entitlement to overhead and profit, and the burden of proof does not shift to the Government when proving quantum of any overhead and profit. Third, the trial court correctly applied FAR 52.215-23 because its "total contract"

theory is waived and incorrect, SUFI added no value to its attorneys' efforts, and the testimony of SUFI's expert was properly refected.

## CROSS-APPEAL RESPONSE ARGUMENT

### I. The Trial Court Properly Denied SUFI's Claim For 25 Percent Overhead And Profit On Its Attorney Fees Because Such Claim Was Akin To An Excessive Pass Through Charge Prohibited By FAR 52.215-23

The trial court properly found that SUFI did not add sufficient value to the claim preparation activities of its attorneys, thereby making SUFI's claim for 25 percent overhead and profit akin to an excessive pass-through charge. JA21-22. After recognizing that FAR 52.215-23 did not control, the trial court found that it provided "useful" guidance "that awards of overhead and profit are premised on the contractor, through its subcontract management functions, providing some benefit to the Government." JA21 (citing FAR 52.215-23). It then found that SUFI provided no benefit. JA22. Both findings are correct.

"The Government will not pay excessive pass-through charges." FAR 52.215-23(b). An excessive pass-through charge for a contractor "that adds no or negligible value to a contract …, means a charge to the Government … that is for indirect costs or profit/fee on work performed by a subcontractor…." *Id.* at (a). A contractor "add[s] no or negligible value to a contract" when it cannot "demonstrate … that its effort added value to the contract or subcontract in accomplishing the work performed under the contract…." *Id*. Because SUFI

added "no or negligible value" to its attorneys' claim preparation work, its claimed 25 percent "for indirect costs or profit/fee on [that] work" is an excessive pass-through charge that the trial court properly declined to award. *Id*. at (a), (b).

To show value SUFI had to demonstrate that it "perform[ed] subcontract management functions that the Contracting Officer determines are a benefit to the Government (*e.g.*, processing orders of parts or services, maintaining inventory, reducing delivery lead times, managing multiple sources for contract requirements, coordinating deliveries, performing quality assurance functions)." *Id*. at (a). SUFI made no such showing at trial because SUFI's attorneys prepared its claim. JA2787 at ll.6-15; JA2798 at ll.17-19; JA2761 at ll.21 – JA2762 at ll.4; JA2797 at ll.18-21; *id*. at ll.22-25; JA2798 at ll.9-16. To be sure, certain SUFI employees provided assistance, but it was not a management function beneficial to the Government, and SUFI has been compensated for the extra-work efforts and associated out-of-pocket costs of its employees.[18] *See, e.g.,* JA2528, JA2559-61, 2566. Although the rate of overhead and profit is on appeal – because the trial

---

[18] Even if SUFI had expertise enabling it to perform a beneficial subcontract management function – which it did not – it had no incentive to use this hypothetical expertise to increase its attorneys' efficiency. SUFI's contingent fee arrangement with its attorneys – though impossible to verify based upon SUFI's refusal to provide the agreement – likely results in SUFI (rather than its attorneys) recovering the bulk of any SUFI recovery in this action. Expressed differently, SUFI would *benefit* from outside time expenditures by its attorneys because it only paid expenses and stood to recover some percentage of the claimed attorney fees.

court improperly made factual findings that overturned findings by the proper trier of fact, the ASBCA – SUFI has recovered, and may recover more, for the extra-work efforts and associated out-of-pocket costs of its employees. JA3269-70.

Despite SUFI's assertions to the contrary, such recovery for its employees does not automatically result in it making a similar recovery on its attorney fees.

## II. The Trial Court Correctly Denied SUFI's Overhead And Profit Claim

The first of SUFI's three cross-appeal arguments is that the trial court erred by not "award[ing] SUFI the same overhead and profit it had applied in *SUFI CFC III* to other direct charges for the identical type of work…." Resp. 41. SUFI is incorrect because issue preclusion does not apply, and, in the absence of such evidence, the Court had no basis to award SUFI's 25 percent rate for overhead and profit rate (or burden).

### A. The Trial Court Did Not Err By Not Applying Issue Preclusion To SUFI's Overhead And Profit Claim

Stripped to its essence, SUFI argues that once a tribunal has awarded overhead and profit on *any* claimed out-of-pocket cost, that tribunal (and subsequent tribunals deciding this factual damages issue) must award overhead and profit at the same rate on *every* out-of-pocket cost claimed without regard to the similarity of the expenses. Resp. 41-43. That is not the law.

Specific to issue preclusion, this Court has repeatedly held that the doctrine

> operates only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action.

*Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001) (citations omitted). Issue preclusion is improper here because we have not "had a full and fair opportunity to litigate the issue" and "the issue is [not] identical…." *Id*.

A full and fair opportunity to litigate includes appeal. *Innovad Inc.*, 260 F.3d at 1334. Because the appellate process is not complete for *SUFI Network Servs., Inc. v. United States*, 108 Fed. Cl. 287 (2012), *appeal docketed*, No. 13-5040 (Fed. Cir. Jan. 15, 2013), SUFI may not use that case to establish issue preclusion. *Innovad Inc.*, 260 F.3d at 1334. Indeed, we have appealed the specific finding that SUFI relies upon. As we have explained in the related case, the Court of Federal Claims was not acting as a trial court; it was conducting an appellate-style review pursuant to the Wunderlich Act.[19] Thus, it was not permitted to substitute its own finding for the ASBCA's factual finding on what burden to apply to out-of-pocket costs. *SUFI Network Servs., Inc.*, 108 Fed. Cl. at 300-01.

---

[19] In an effort to distinguish between the different postures, when discussing actions by the Court of Federal Claims in its review pursuant to the Wunderlich Act we refer to the "Court of Federal Claims." When discussing actions by the Court of Federal Claims in its actions on this case, we refer to the "trial court."

But even if the relied-upon factual findings were not on appeal, "the issue is [not] identical…." *Innovad Inc.*, 260 F.3d at 1334. The trial court decided a distinct issue because SUFI's attorney fees are neither "exactly the same in kind and subject matter as Mr. Stephens' consultant services" nor "the same in substance as [SUFI's] employee/consultant claim preparation…." Resp. 43.

Regarding Mr. Stephens' consultant services, SUFI provides no context. First, the ASBCA applied a 25 percent burden to Mr. Stephens' consultant costs for two counts (IX, $50 and XII, $25); this ASBCA-applied burden totaled $18.75 on $75 in consulting fees. JA3328. The Court of Federal Claims applied a burden to four more counts (VIII, $25, XVIII, $75, XIX, $25, and IX, $50) that totaled $43.75 on $175 in consulting fees. *Id*. Second, although technically a consultant, Mr. Stephens was a former SUFI employee – so SUFI's supervision of his services was only natural. Third, Mr. Stephens' burdened hourly rate was approximately $90 per hour; the burdened rate of SUFI's lead attorney (during the same period) was $668.75.[20] JA934. In sum, the trial court correctly found that SUFI's attorney fees are not "exactly the same in kind and subject matter as Mr. Stephens' consultant services…." Resp. 43.

---

[20] The disparate rates contributed to Mr. Stephens' burdened consulting fees totaling only $312.50 while SUFI's burdened attorney fees totaled approximately $872,000. JA3328; JA941.

Regarding employee claim preparation, this argument is waived. Although SUFI argued issue preclusion before the trial court, its argument was that "[t]he Board awarded 25% profit on some of SUFI's claim preparation consultant costs, and this Court in *SUFI CFC III* awarded overhead and profit on claim preparation direct costs at a 25% combined rate. 108 Fed. Cl. at 300-01." JA373. SUFI did not argue that the Court of Federal Claims' use of SUFI's burdened rates to award employee claim preparation was akin to awarding a 25 percent burden. Thus, such argument is waived. *Golden Bridge Tech., Inc.*, 527 F.3d at 1323.

But even if SUFI's employee claim preparation argument is not waived, SUFI does not place its employee claim preparation in a context establishing that there was any SUFI overhead associated with attorney work. First, SUFI's relationship with its attorneys was different than its relationship with its employees. The Court of Federal Claims' finding that SUFI oversaw its *employees* does not necessitate a finding that SUFI provided valuable oversight for its *attorneys*. SUFI provided no evidence that it agreed to yield one-third of its award to its attorneys *and* provide legal supervision. JA3326 at ¶ 340. Indeed, SUFI would not even provide the fee agreement. Second, the type of work being performed by SUFI's employees was different than the work of SUFI's attorneys, as reflected in their pay. SUFI's employees earned – using the fully-burdened rates that SUFI argues – between $68 and $90 per hour. JA2559. These amounts

are between $600.75 and $578.75 less per hour than SUFI's lead attorney, whose burdened rate was $668.75 per hour during the same timeframe. JA910. In sum, the trial court correctly found that SUFI's attorney fees were not "the same in substance as the employee/consultant claim preparation" because the relationships and types of work (as shown by the hourly rates) were different. Resp. 43; JA22.

The factual differences between the claim preparation work performed by Mr. Stephens (SUFI's consultant) and that performed by SUFI's attorneys, and the differences between the claim preparation work performed by SUFI's employees and its attorneys, makes SUFI's assertion of issue preclusion baseless. *Thomas v. Gen. Servs. Admin.*, 794 F.2d 661, 664 (Fed. Cir. 1986) ("Since four of the incidents … are completely identical with four of the incidents alleged in the prior suspension case … those issues are identical.").

B. <u>Absent Issue Preclusion SUFI's Claimed 25 Percent Is Unsupported</u>

If the trial court had reached quantum, it could have awarded neither overhead nor profit. For overhead, SUFI had not delineated what portion of its combined 25 percent rate was overhead and had not demonstrated how it arrived at its claimed overhead rate. Similarly, for profit, SUFI had not explained what part of its combined 25 percent rate was profit and had not justified its claimed 25 percent rate against relevant factors.

1. SUFI Did Not Justify Its Overhead Rate

Overhead costs, or indirect costs, "are those remaining [after identification of direct costs] to be allocated to intermediate or two or more final cost objectives." 48 C.F.R. § 31.203(b). Indirect costs are allocated to a base period, which is "the cost accounting period during which such costs are incurred and accumulated for allocation to work performed in that period." 48 C.F.R. § 31.203(g). The overhead rate is the ratio of indirect costs to direct costs for the base period. For example, if a contractor had $1000 in direct costs and $100 in allocable indirect costs for a base period, then the contractor's overhead rate for that period is ten percent. This is a matter of simple logic and definition that is well-established in the accounting field and is what SUFI refers to when using the term "overhead." *Singleton Contracting Corp. v. Harvey*, 395 F.3d 1353, 1357 (Fed. Cir. 2005) ("[T]his calculation starts with the contractor's total indirect costs for each fiscal year of the contract's performance and divides that amount by the contractor's total direct costs for that year to yield an 'overhead rate.'"). Thus, SUFI cannot just select an overhead rate to apply to its direct costs; it must be calculated for the relevant base period.[21]

[21] If the contract were subject to the FAR the base period would "be the contractor's fiscal year…." 48 C.F.R. § 31.203(g)(2).

SUFI failed to demonstrate that the overhead rate it sought before the trial court bore any relationship to its direct costs. Most fundamentally, SUFI did not identify what portion of its combined 25 percent overhead and profit rate encompassed overhead. JA941; JA2794 at ll.23-25; JA3028 at l.23-JA3029 at l.3; JA3137 at l.11 – JA3138 at l.17. But even if it had associated a portion of its 25 percent combined rate that was applicable to overhead, it would still have to support this rate. JA3137 at l.11 – JA3138 at l.17. In fact, for SUFI "to [have] prove[n] it was entitled to receive indirect costs equal to [a percentage] of direct labor costs, [SUFI] was obliged to show that [its claimed percentage] was consistent with its 'actual cost experience during that period, together with supporting cost data.'" *Hydrothermal Energy Corp. v. United States*, 26 Cl. Ct. 1091, 1104 (1992). Because SUFI did not "present[] any cost evidence to support its indirect costs[,]" the trial court could not have "even attempt[ed] to estimate whether these costs were reasonable or even allocable, *i.e.*, beneficial to the contract or necessary to the overall operation of plaintiff's business." *Id*.

Rather than provide the necessary support, SUFI pointed to inapposite contract provisions. JA1971-72 at ¶¶ 3.11.1, 3.11.2; JA2796 at ll.7-11. Section 3.11.2 is irrelevant because it relates to facility renovations, not claim submission. *Id*. Section 3.11.1 allows SUFI to submit a bid that may include *up to* a 25-percent cost markup for additional work, it does not require the acceptance of the

25-percent cost markup, it does not require that the work be done, and it does not define what the 25-percent cost markup is comprised of. JA1971 at ¶ 3.11.1; JA2795 at ll.11-13; JA2795 at l.24-JA2796 at l.6; JA2796 at l.13-JA2797 at l.12. What is more, the Defense Contracting Auditing Agency Audit (DCAA) Report could not find support for SUFI's 25 percent rate, stating that it was "unable to determine the reasonableness of the below claimed [amount]. The contractor utilized a rate of 25%...." JA2518-19. And, SUFI could not explain what costs are included in SUFI's overhead rate, what SUFI's overhead rate is, or even whether SUFI's overhead rate had been calculated. JA2795 at ll.1-10. As found in *Hydrothermal Energy Corp.*, "[g]iven the contract and regulatory terms, it would be improper for this court to make an award based on the provisional [percentage] rate when the court has *no sound reason* to believe that the provisional rate reflected the contractor's actual allowable costs." *Hydrothermal Energy Corp.*, 26 Cl. Ct. at 1104 (emphasis added). Accordingly, if the trial court had reached the quantum of SUFI's overhead rate, SUFI would have failed to meet its burden.

2. <u>SUFI Did Not Justify Its Profit Rate</u>

Profit "do[es] not represent net income to contractors[,]" but instead, a component of total payment "that contractors may receive *for contract performance* over and above allowable costs." 48 C.F.R. § 15.404-4(a)(1) (emphasis added). Furthermore, profit serves as a "financial reward[] sufficient to

stimulate" and "motivate[e] … efficient and effective *contract performance*." *Id*. at (a)(1)-(2) (emphasis added). To summarize, when contract performance is no longer envisioned, profit becomes unnecessary. By August 27, 2004 (the date of the first time entry of SUFI's claimed fees), SUFI had canceled the contract. JA1974; JA1978. Given these points, motivating efficient and effective contract performance was not required and profit had no further role as a financial reward.

But even if profit did have some prospective purpose, a contractor's profit rate – like its overhead rate – is not a percentage of the contractor's choosing that may be unmoored from the contract's realities. JA3137 at l.11-JA3138 at l.10. SUFI claim preparation, even if the trial court had found it to be contract performance, was neither "the same type and mix of work as the basic contract[,]" nor "of relatively small dollar value compared to the total contract value[,]" such that the contracting officer would have been permitted to "use the basic contract's profit or fee rate…." 48 C.F.R. § 15.404-4(c)(6). As an initial matter, we established that the contract did not have any predetermined profit rate (let alone the SUFI-proffered 25 percent burden) because SUFI did not identify what portion of its claimed 25 percent burden comprised profit. JA941; JA3029 at ll.4-7; JA3028 at ll.18-22. But even if the trial court had found that the contract had a predetermined rate, if the Government had contemplated SUFI recovering profit on its claimed attorney fees and expenses, the amount of profit still would have been

analyzed pursuant to the profit-analysis factors of 48 C.F.R. § 15.404-4(d). JA3137 at l.11-JA3138 at l.10.

Applying the FAR's six common profit-analysis factors affirms that SUFI should not profit from its claimed attorney fees and expenses. The six common profit-analysis factors include (i) contractor effort, (ii) contract cost risk, (v) cost-control and other past accomplishments, and three that are facially inapplicable.[22] 48 C.F.R. § 15.404-4(d)(1)(i)-(vi). Regarding factor (i), contractor effort, this factor "measures the complexity of the work and the resources required of the prospective contractor for contract performance[,]" with more "profit opportunity … under contracts requiring a high degree of professional and managerial skill" for "contractors whose skills, facilities, and technical assets can be expected to lead to efficient and economical contract performance." 48 C.F.R. § 15.404-4(d)(1)(i). This factor undermines any profit for claim preparation because this was SUFI's first government contract and first claim. JA2757 at l.21-JA2758 at l.1; JA2829 at l.24-JA2830 at l.22. Consequently, SUFI had absolutely no "skills … to lead to efficient and economical contract performance." 48 C.F.R. § 15.404-4(d)(1)(i). Regarding factor (ii), contract cost risk, this factor "measures the degree of cost

[22] The factors that are facially inapplicable are (iii) Federal socioeconomic programs, (iv) capital investments, and (vi) independent development. 48 C.F.R. § 15.404-4(d)(1)(iii), (iv), (vi).

responsibility and associated risk that the prospective contractor will assume as a result of the contract type….” *Id*. at (ii)(a). This factor undercuts any profit for SUFI because SUFI, based upon its contingent fee arrangement with counsel, had no “cost responsibility and associated risk….” *Id*; JA43; JA2947 at ll.13-20. Finally, factor (v), cost-control and other past accomplishments, detracts from SUFI’s profit claim because SUFI’s inexperience in the Government contract field offers no past accomplishments, and SUFI’s abrogation of any role in supervising its attorneys, could not serve to control costs prospectively. JA2829 at l.24-JA2830 at l.22; JA2787 at ll.12-15; JA2797 at l.18-JA2798 at l.16.

## III. The Trial Court Properly Looked To FAR 52.215-23 For Guidance Because It Is Consistent With SUFI’s Burden To Prove Entitlement To Overhead And Profit And The Quantum Of Any Such Award

The second of SUFI’s three cross-appeal arguments is that the trial court could not look to FAR 52.215-23 for guidance. In SUFI’s view the clause is inconsistent with “the breach law … that *all* out-of-pockets the prime incurred as a result of the breach must presumptively be burdened with overhead and profit.” Resp. 44-45. SUFI also contends that because it made a *prima facie* case by providing an overhead rate, “the ‘burden then shifts to the government to present rebuttal evidence or argument showing that the contractor did not suffer … any loss….’” Resp. 45 (citations omitted). SUFI misunderstands the law.

Damages must be shown with reasonable certainty, and that showing requires evidence "sufficient to enable a court or jury to make a fair and reasonable approximation." *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (internal quotations omitted). SUFI cannot credibly argue that it has provided such evidence when it has proven neither its overhead, nor its profit rate. SUFI must establish these rates, and also demonstrate that courts have awarded overhead and profit on the types of fees – in this case attorney fees – for which it seeks recovery. *Singleton Contracting Corp. v. Harvey*, 395 F.3d 1353, 1357 (Fed. Cir. 2005) (overhead rate is the ratio of indirect costs to direct costs for the base period); *Fluor Enterprises, Inc. v. United States*, 64 Fed. Cl. 461, 473 n.14 (2005) ("[p]rofit … do[es] not necessarily represent net income to contractors. Rather, [it] represent[s] that element of the potential total remuneration that contractors may receive *for contract performance* over and above allowable costs") (emphasis added); *Sys. Fuels, Inc. v. United States*, 666 F.3d 1306, 1312 (Fed. Cir. 2012) ("Therefore, because the record fully supports Plaintiffs' proof of overhead costs…."); *Ace Constr., Inc. v. United States*, 70 Fed. Cl. 253, 279 (Fed. Cl. 2006) *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007) (granting 10 percent profit because the work was not subcontract work and "was of the same nature as the other work ACE was performing under the contract"). SUFI has failed to do so, and no

"presumptive[] … burden[]" permits such failure. Resp. 45. A look at two cases that SUFI relies upon cements SUFI's misunderstanding.

SUFI relies upon *Tip Top Const., Inc. v. Donahoe*, but SUFI misapprehends the case. 695 F.3d 1276 (Fed. Cir. 2012). *Tip Top* is inapposite because the contractor's consultant in *Tip Top* prepared, and negotiated, an estimate for a Postal-Service-issued modification under the changes clause. *Tip Top Const., Inc.*, 695 F.3d at 1278-79. Moreover, this Court found that negotiations took place because "[t]he contracting officer, in his letter of January 15, 2010, expressly left open" negotiations over price. *Id*. at 1284. In sum, this Court rejected the board's disallowance of the costs and found that costs incurred to negotiate price for a Postal-Service-issued modification are "genuine contract administration costs." *Id*. Because SUFI was not administering the contract pursuant to a Government-issued modification, but instead preparing its claim, *Tip Top* is inapposite. What is more, even if *Tip Top* could be read as SUFI posits, the contractor in *Tip Top* did not seek – and the Court did not award – overhead and profit on the fees its attorney generated for negotiations. *Id*. at 1279, 1285. Thus, the fees most akin to the fees for which SUFI seeks burden were awarded *without* burden.

SUFI also relies upon *Veridyne Corp. v. United States*. 107 Fed. Cl. 762 (2012). In *Veridyne*, the Government recovered *one* layer of overhead – DCAA's. *Veridyne Corp.*, 107 Fed. Cl. at 766, 769. This is in stark contrast to SUFI seeking

*two* layers of overhead – its attorneys' overhead, and then SUFI's overhead. We assume that SUFI's confusion is because DCAA adds an overhead factor (1.22), whereas SUFI's attorneys' overhead is built into the hourly rates. *Id*. at 766; JA3085 at l.13-JA3086 at l.13. To be clear, for the Government to have recovered what SUFI seeks here, it would have had to have added DCAA's overhead factor (corresponding to the overhead of SUFI's attorneys) and then added a *second* overhead factor for the agency (corresponding to SUFI's claimed overhead). Because *Veridyne* does not show that the Maritime Administration added its overhead (a *second* layer) atop DCAA's (a *first* layer) before submitting the expense for the Court's review, it is unhelpful to SUFI's argument. *Id*. at 769.[23]

---

[23] The remaining cases that SUFI relies upon do not establish a "presumptive[] … burden[,]" that SUFI proved its rates, or that awarding overhead and profit on attorney fees for claim preparation is proper. Resp. 45 n.22. *Energy Nw. v. United States*, 641 F.3d 1300, 1309 (Fed. Cir. 2011) (plaintiff "is entitled to prove the amount of the associated cost (including both direct and indirect costs)"); *Sys. Fuels, Inc. v. United States*, 666 F.3d 1306, 1312 (Fed. Cir. 2012) ("Therefore, because the record fully supports Plaintiffs' proof of overhead costs…."); *Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1277 (Fed. Cir. 2009) ("[T]he record shows that overhead and indirect costs awarded to Progress Energy were, as a whole, properly allocated."); *Ace Constr., Inc. v. United States*, 70 Fed. Cl. 253, 279-81 (2006) *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007) (granting construction contractor field overhead of 8.2 percent, home-office overhead of 5.8 percent, profit of 10 percent, and bond expenses of 0.65 percent); *Clauss Const.*, ASBCA No. 53953, 04-1 B.C.A. (CCH) ¶ 32627 (Apr. 29, 2004) (ASBCA using construction contractor's audited 13.7 percent overhead rate and government-calculated 9.15 percent profit rate); *W. Alaska Contractors, J.V.*, ASBCA No.

## IV. The Trial Court Properly Applied FAR 52.215-23

The third of SUFI's three cross-appeal arguments is that the trial court misapplied FAR 52.215-23. Resp. 46. SUFI is incorrect because its "total contract" theory is waived and incorrect, SUFI did not add value to the efforts of its attorneys, and the testimony of its alleged expert was properly given no weight.

### A. SUFI's "Total Contract" Argument Is Waived And Incorrect

Our opening post-trial brief explained that "[b]ecause SUFI added 'no or negligible value' to the claim preparation performed by [SUFI's attorneys], its claimed 25 percent 'for indirect costs or profit/fee on work' performed by [SUFI's attorneys] is an excessive pass-through charge…." JA477 (citing FAR 52.215-23(a), (b)). SUFI replied by disputing "the factual basis … that SUFI did not add any value to the claim preparation work…." JA576-77. SUFI did not posit its "*total contract*" theory. *Id*.; Resp. 47. Thus, such argument is waived. *Golden Bridge Tech., Inc.*, 527 F.3d at 1323.

Even if not waived, the argument lacks merit. Resp. 47. The portion of the clause that SUFI relies upon states

> (c) Reporting. Required reporting of performance of work by the Contractor or a subcontractor. The Contractor shall notify the Contracting Officer in writing if--

---

46033, 95-1 B.C.A. (CCH) ¶ 27392 (Dec. 30, 1994) (ASBCA using a DCAA-audited 26.6 percent overhead rate and a 10 percent "jury-verdict" profit rate).

> (1) The Contractor changes the amount of subcontract effort after award such that it exceeds 70 percent of the total cost of work to be performed under the contract, task order, or delivery order. The notification shall identify the revised cost of the subcontract effort and shall include verification that the Contractor will provide added value; or ….

FAR 52.215-23(c). In other words, when a contractor's performance changes such that a subcontractor's performance "under the contract, task order, or delivery order[]" exceeds 70 percent, then the contractor "shall notify the Contracting Officer in writing" and "verif[y] that the Contractor will provide added value…." *Id*. Contrary to SUFI's interpretation, it does not follow that a contracting officer can only find excessive pass-through charges after the notification requirement has been triggered. Furthermore, SUFI's assertion that the clause is actually a three-part test is contradicted by the very portion of the clause that SUFI relies upon. Resp. 48. Indeed, the "work to be performed" is not limited to the entire contract because the clause states that it can be the "contract, task order, or delivery order." FAR 52.215-23(c). Thus, the fact that SUFI added nothing to the work of its attorneys is a proper basis to find the award of any burden – let alone at 25 percent – an excessive pass-through charge. *Id*. at (a).

B. <u>SUFI Did Not Add Value To The Work Of Its Attorneys</u>

At bottom, SUFI had to demonstrate "[a]dded value" to the work of its attorneys by showing that it "perform[ed] subcontract management functions that

the contracting officer determines are a benefit to the Government….” FAR 52.215-23. Examples of management functions contemplated by the clause include “processing orders of parts or services, maintaining inventory, reducing delivery lead times, managing multiple sources for contract requirements, coordinating deliveries, [and] performing quality assurance functions[].” SUFI did none of these things. That is why SUFI tries to change the inquiry to whether “SUFI did *not* simply stand on the sidelines and let [its attorneys] handle all the relevant tasks without assistance or oversight.” Resp. 49. That is not the inquiry.

But even if that were the inquiry, SUFI’s assertion of what the uncontested record shows does not demonstrate error. SUFI asserts that its lead attorney traveled to Germany and met with DCAA auditors, its employees assisted its attorneys with claim preparation, its managing director reviewed drafts of the claim and met with DCAA auditors, and that its CEO attended a one-day overview of the claim and signed expense-checks. Resp. 49-50 (¶¶ 1-6). But amounts for the following activities have already been awarded: travel, meeting with DCAA auditors (for attorneys), and employee claim preparation. Thus, SUFI seeks about $180,000 because the managing director reviewed some draft claims and met with DCAA, and the CEO reviewed the final claim and signed some checks. The record, even as SUFI presents it, permits only a finding that SUFI added no relevant value.

C. The Trial Court Properly Rejected Mr. Calhoon's Testimony

SUFI further argues that the Court may look to SUFI's accounting expert as further evidence that SUFI's attorney fees "require overhead and profit to be added…." Resp. 51. This is incorrect because the relevant portion of Mr. Calhoon's report states

> Because the attorney fees and expenses incurred by SUFI are direct costs *no different than any other direct cost claimed by SUFI* incurred in connection with its claims, indirect costs [overhead] and profit at a rate of 25% are also applicable and recoverable under standard accounting practices.

JA1955 (emphasis added). Thus, the report does not explain why SUFI's attorney fees and expenses are direct costs "no different than any other direct cost claimed by SUFI[,]" it just says they are. *Id*. That alone makes the report inconsequential, but it becomes stunningly so upon learning that Mr. Calhoon reached this conclusion "based on the discussion that [he] had with Mr. Claybrook on how [he] should think of the attorney's fees as if they were incurred just like any other service provider in preparation of claims like a consultant or SUFI employees' travel costs, et cetera…." JA3097 at ll.3-8. The trial court properly gave Mr. Calhoon's testimony no weight.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the Court of Federal Claims and remand with instructions to dismiss the complaint pursuant to RCFC 12(b)(6).

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ Douglas T. Hoffman
DOUGLAS T. HOFFMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-0547
Fax: (202) 514-8624

September 12, 2014 Attorneys for Defendant - Appellant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 12th day of September, 2014, a copy of the foregoing Reply and Response Brief for Defendant-Appellant, the United States – Replacement, was filed electronically. This filing was served electronically to all parties by operation of the Court's electronic filing system.

/s/ Douglas T. Hoffman
Douglas T. Hoffman
Attorney for Defendant-Appellant

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 12,856 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Douglas T. Hoffman
Douglas T. Hoffman
Attorney for Defendant-Appellant
September 12, 2014